1          **UNITED STATES DISTRICT COURT**

2       **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3      **HONORABLE VIRGINIA A. PHILLIPS, U.S. CHIEF DISTRICT JUDGE**

4

5   **UNITED STATES OF AMERICA,**          )
                                           )
6                    **Plaintiff,**        )
                                           )
7         **vs.**                          )   **Case No. CR 19-642 VAP**
                                           )
8   **IMAAD SHAH ZUBERI,**                 )
                                           )
9                    **Defendant.**        )
    _____)

10

11            **REPORTER'S TRANSCRIPT OF PROCEEDINGS**
                      **CHANGE OF PLEA**
12             **FRIDAY, NOVEMBER 22, 2019**
                       **2:09 P.M.**
13             **LOS ANGELES, CALIFORNIA**

14

15

16

17

18

19

20

21

22   _____

23       **MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR**
              FEDERAL OFFICIAL COURT REPORTER
24            350 WEST 1ST STREET, ROOM 4455
              LOS ANGELES, CALIFORNIA  90012
25                    (213) 894-2305

1        **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4        NICOLA T. HANNA
         United States Attorney
5        BY:  DANIEL J. O'BRIEN
         BY:  ELISA FERNANDEZ
6             Assistant United States Attorneys
         United States Courthouse
7        312 North Spring Street
         Los Angeles, California  90012
8

9    **FOR THE DEFENDANT:**

10
         BROWNE, GEORGE & ROSS, LLP
11       BY:  THOMAS P. O'BRIEN
              Attorney at Law
12       801 South Figueroa Street, Suite 2000
         Los Angeles, California  90017
13
         HOCHMAN, SALKIN, TOSCHER & PEREZ
14       BY:  EVAN J. DAVIS
              Attorney at Law
15       9150 Wilshire Boulevard, Suite 300
         Beverly Hills, California  90012
16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

```
 1              FRIDAY, NOVEMBER 22, 2019; 2:09 P.M.

 2                  LOS ANGELES, CALIFORNIA

 3                          -oOo-

 4              THE COURTROOM DEPUTY:  Calling Item No. 2 on the

 5   Court's calendar, LA Criminal 19-00642 VAP, United States of

 6   America vs. Imaad Shah Zuberi.

 7              Counsel, would you please state your appearances for

 8   the record.

 9              MR. DANIEL O'BRIEN:  Good afternoon, Your Honor.

10   Daniel O'Brien and Elisa Fernandez appearing on behalf of the

11   United States.

12              THE COURT:  Thank you.  Good afternoon.

13              MR. THOMAS O'BRIEN:  Good afternoon, Your Honor.

14   Tom O'Brien and Evan Davis appearing on behalf of our client,

15   Imaad Zuberi, who is present before the Court.

16              THE COURT:  Thank you.  Good afternoon.

17              MR. DAVIS:  Good afternoon.

18              THE COURT:  This matter is on the Court's calendar

19   on the ex parte application which is opposed by the defense to

20   continue the change of plea hearing which originally was

21   scheduled for this afternoon.

22              I am inclined to deny the motion.  Obviously, we

23   wouldn't go forward this afternoon but set it on the calendar

24   at the earliest convenient date for both sides.

25              Mr. O'Brien, I take it you don't want to argue with
```

1  that?

2          MR. DANIEL O'BRIEN:  Um, I don't want to argue with

3  that.  Um, so if I understand, um, the Court is making

4  available for defendant's change of plea a different date than

5  what was originally scheduled for today.

6          THE COURT:  Well, I could do it this afternoon.  I

7  haven't -- I mean, I haven't prepared because of the trial I

8  was in and the ex parte application.  But I could go forward

9  with it this afternoon.  I have a few matters on at 2:30, and I

10  can do it right after that.

11          MR. DANIEL O'BRIEN:  If the Court was going to put

12  it over to another day, what date would the Court --

13          THE COURT:  It would be next week.  Well, I have

14  jury duty next week.  But I am hoping that I'd be available on

15  Tuesday.  I have to obviously show up on Monday, unless my jury

16  is still deliberating, in which case I'm going to have to go to

17  the Court in the morning and throw myself on their mercy.

18          MR. DANIEL O'BRIEN:  Can I have a moment with

19  defense counsel, Your Honor?

20          THE COURT:  Certainly.

21          (Off-the-record discussion among counsel.)

22          MR. DANIEL O'BRIEN:  Your Honor, I think we're

23  prepared to go forward at 2:30.

24          THE COURT:  All right.  Thank you very much.  We'll

25  see you back in about -- I can't -- the glare on the courtroom

1    clock at this time -- about 15 minutes.  Thank you.

2              MR. THOMAS O'BRIEN:  Thank you, Your Honor.

3              THE COURTROOM DEPUTY:  This court now stands in

4    recess.

5              (Break taken.)

6              THE COURTROOM DEPUTY:  Recalling Item No. 2 on the

7    Court's calendar, LA Criminal 19-00642 VAP, United States of

8    America vs. Imaad Shah Zuberi.

9              Counsel, would you please state your appearances for

10   the record.

11             MR. DANIEL O'BRIEN:  Daniel O'Brien and

12   Lisa Fernandez appearing on behalf of the United States,

13   Your Honor.

14             THE COURT:  Thank you.  Good afternoon.

15             MR. THOMAS O'BRIEN:  Tom O'Brien and Evan Davis on

16   behalf of our client, Imaad Zuberi, who is present before the

17   Court.  Good afternoon.

18             THE COURT:  Thank you.  Good afternoon.

19             All right.  So this is a change of plea to three

20   counts in an Information.  Correct?

21             MR. THOMAS O'BRIEN:  Yes, Your Honor.

22             THE COURT:  All right.  Would you and your client

23   stand at the lectern, please?

24             And has the Government complied with the

25   requirements of the Crime Victims' Rights Act as to this

1   proceeding?

2           MR. DANIEL O'BRIEN:  Your Honor, the only victim in

3   which the Government believes restitution is owed in this case

4   is the Government, Your Honor.  So the Government is in

5   compliance, yes.

6           THE COURT:  All right.  Thank you.

7           Mr. Zuberi, good afternoon.

8           THE DEFENDANT:  Hi, Your Honor.

9           THE COURT:  You are charged in Count 1 of the

10  Information with a violation of Title 22, United States Code,

11  Sections 612 and 618(a)(2), in violation of the Federal

12  Agents -- Foreign Agents Registration Act.  And in Count 2,

13  you're charged with a violation of Title 26, United States

14  Code, Section 7201, tax evasion.  In Count 3, a violation of

15  Title 52, United States Code, Sections 30116, 30118, 30121, and

16  30122, 30109(d), a violation of the Federal Election Campaign

17  Act, offenses aggregating more than $25,000.  All of these are

18  felonies.

19          Do you understand what you're charged with?

20          THE DEFENDANT:  Yes, sir -- yes, Your Honor, I do.

21          THE COURT:  All right.  So I understand that you --

22  oh.  And before I go into the plea agreement, you have the

23  right under the Federal Rules of Criminal Procedure to have

24  this case proceed against you by way of an Indictment returned

25  by a grand jury.  I understand that you have waived or given up

1    that right.  Is that correct?

2              THE DEFENDANT:  That is correct.

3              THE COURT:  And I understand that you have signed a

4    written plea agreement that your attorneys negotiated on your

5    behalf with the United States Attorney's Office.  So you are

6    here this afternoon because you want to withdraw your earlier

7    pleas --

8              Well, let's see.  Was he arraigned on an

9    indictment --

10             MR. THOMAS O'BRIEN:  Information.

11             THE COURT:  On an Information.

12             So you want to withdraw your earlier plea of not

13   guilty in order to enter a plea of guilty to these three

14   charges.  Is that right?

15             THE DEFENDANT:  That's correct.

16             THE COURT:  All right.  I'm going to begin by asking

17   my courtroom clerk to swear you in as a witness.  That means

18   that your answers to my questions will be made under penalty of

19   perjury.  And if you answer untruthfully, you could later be

20   prosecuted for the separate crime of perjury.  Do you

21   understand?

22             THE DEFENDANT:  Yes.

23             THE COURT:  If you can't hear me or if you don't

24   understand any of my questions, please let me know.  I'll be

25   happy to re-ask the question.  If you need time to consult with

```
 1    your lawyers before we continue, again, just let me know and
 2    you'll have the time to do that.
 3               THE DEFENDANT:  Thank you.
 4               THE COURT:  You're welcome.
 5               THE COURTROOM DEPUTY:  Mr. Zuberi, please raise your
 6    right hand.
 7               Do you solemnly swear that any answers you shall
 8    make to questions put to you by this Court shall be the truth,
 9    the whole truth, and nothing but the truth, so help you God?
10               THE DEFENDANT:  Yes.
11               THE COURTROOM DEPUTY:  Thank you.
12               Is Imaad Shah Zuberi your true and correct name?
13               THE DEFENDANT:  Yes.
14               THE COURTROOM DEPUTY:  Mr. Zuberi, at this time, do
15    you wish to withdraw or take back your earlier entered pleas of
16    not guilty to Count 1, Count 2, and Count 3 of the Information?
17               THE DEFENDANT:  Yes.
18               THE COURTROOM DEPUTY:  Mr. Zuberi, how do you now
19    intend to plead to Count 1 of the Information, guilty or not
20    guilty?
21               THE DEFENDANT:  Guilty.
22               THE COURTROOM DEPUTY:  How do you now intend to
23    plead to Count 2 of the Information, guilty or not guilty?
24               THE DEFENDANT:  Guilty.
25               THE COURTROOM DEPUTY:  And how do you now intend to
```

1  plead to Count 3 of the Information, guilty or not guilty?

2          THE DEFENDANT:  Guilty as well.

3          THE COURTROOM DEPUTY:  Thank you.

4          THE COURT:  All right.  Mr. O'Brien, the plea

5  agreement was signed by your client and Mr. Davis on October

6  the 6th and by you on October the 7th.  Did he -- did your

7  client sign the plea agreement in your presence?

8          MR. THOMAS O'BRIEN:  He signed it in the presence of

9  Mr. Davis who is a co-counsel, Your Honor.

10          THE COURT:  Mr. Davis, before your client signed the

11  plea agreement, did you go over all the contents of it with

12  him?

13          MR. DAVIS:  Yes, Your Honor, repeatedly.

14          THE COURT:  All right.  And does the plea agreement

15  represent the entire disposition of this case so far as you and

16  your client and the U.S. Attorney's Office are concerned?

17          MR. DAVIS:  In the Central District of California,

18  yes, Your Honor.

19          THE COURT:  Have there been any other promises,

20  representations, or guarantees made to you or your client other

21  than what's in the plea agreement?

22          MR. DAVIS:  Again, not in this district, Your Honor.

23          THE COURT:  All right.  Thank you.

24          Mr. Zuberi, was one of your lawyers with you when

25  you signed the plea agreement?

1            THE DEFENDANT:  Yes.

2            THE COURT:  Did you discuss everything in the plea

3    agreement with him before you signed it?

4            THE DEFENDANT:  Yes.  Yes, I did.

5            THE COURT:  Did you have a chance to ask your

6    attorney all of your questions about the plea agreement?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Did he answer your questions to your

9    satisfaction?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Does the plea agreement cover everything

12    you've been told about your case and what's happening in your

13    case?

14            THE DEFENDANT:  Correct.

15            THE COURT:  Has anybody promised you anything,

16    guaranteed you anything, told you anything about your case

17    other than what's in the plea agreement?

18            THE DEFENDANT:  No.

19            THE COURT:  So the plea agreement covers everything?

20            THE DEFENDANT:  Correct.

21            THE COURT:  And, Mr. O'Brien, is this the written

22    plea agreement the Government extended to the defendant and his

23    counsel?

24            MR. DANIEL O'BRIEN:  Yes, Your Honor.

25            THE COURT:  Other than what's in the written plea

1    agreement, has the Government made any other promises,

2    representations, or guarantees to the defendant or his counsel?

3           MR. DANIEL O'BRIEN:  No, Your Honor.

4           THE COURT:  Thank you.

5           Mr. Zuberi, how old are you, and how far -- can you

6    describe your education for me?

7           THE DEFENDANT:  Graduate degree, and I am 49.

8           THE COURT:  Are you a citizen of the United States?

9           THE DEFENDANT:  Yes, I am.

10          THE COURT:  Have you received a copy of the

11   Information, the charges against you?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Have you thoroughly discussed the

14   charges in the Information and your case in general with your

15   lawyers before coming here this afternoon?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand that the three

18   offenses in the Information to which you're offering your plea

19   of guilty are felonies?

20          THE DEFENDANT:  Yes.

21          THE COURT:  If I accept your guilty pleas today,

22   that means you'll be judged guilty of a felony.  A person who

23   is judged guilty of a felony loses a number of rights,

24   including the right to vote, the right to sit on a jury, the

25   right to hold public office, and the right to own or possess a

**UNITED STATES DISTRICT COURT**

1    firearm and ammunition of any kind.  Do you understand that?

2              THE DEFENDANT:  Yes, I do.

3              THE COURT:  Under the laws and the Constitution of

4    the United States, you have a number of rights that are

5    guaranteed to you in connection with your case.

6              First of all, you have the right to be represented

7    by an attorney at all stages of the case.  If you can't afford

8    to hire an attorney, the Court will appoint one to represent

9    you at no cost to you.

10             You have the right to a speedy and public trial

11   where the Government would have the burden of proving your

12   guilt beyond a reasonable doubt.  In other words, the defendant

13   never has to prove his or her innocence.  It's always the

14   Government's burden to prove guilt beyond a reasonable doubt.

15             At trial, you have the right to see and hear all the

16   evidence that the Government presents against you and to

17   confront and cross-examine any witness the Government calls to

18   testify against you.

19             You have the privilege against self-incrimination,

20   in other words, the right to remain silent.  And that means

21   that you cannot be forced to testify against your self-interest

22   at trial.

23             You have the right to put on a defense, to put on

24   evidence, to call witnesses to testify on your behalf, to use

25   the Court's subpoena power to make witnesses come into court

1    and testify on your behalf, and you have the right to testify

2    at trial if you voluntarily decide to do so.

3              If you're convicted after a trial, you have the

4    right to appeal your conviction and your sentence to a higher

5    court, a Court of Appeals.

6              Do you understand each of those rights?

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  Do you have any questions, either for me

9    or your lawyer, about any of these rights?

10             THE DEFENDANT:  No.

11             THE COURT:  All right.  By pleading guilty and under

12   the plea agreement that you signed, you're giving up almost all

13   of those rights.

14             You're not giving up your right to be represented by

15   a lawyer.  That's the first right I mentioned.  But you'd be

16   giving up all the others, including, to a very large extent,

17   your right to appeal your conviction and your sentence.

18             So as to your appeal rights as to your sentence, in

19   paragraph 27 of the plea agreement that you signed, you've

20   agreed that, with the exception of an appeal based on a claim

21   that your guilty plea was involuntary, you're giving up any

22   right to appeal your convictions on these three offenses.  Do

23   you understand what that means?

24             THE DEFENDANT:  Yes, I do.

25             THE COURT:  All right.  Have you discussed your --

1   have you discussed that with your lawyers?

2           THE DEFENDANT:  Yes.

3           THE COURT:  All right.  As to appealing your

4   sentence -- first of all, have you and your lawyers discussed

5   the United States Sentencing Guidelines?

6           THE DEFENDANT:  Yes.

7           THE COURT:  All right.  And how they might apply in

8   your case?

9           THE DEFENDANT:  Correct.

10          THE COURT:  All right.  So as you know, under the

11  Guidelines, there are two considerations that, when applied,

12  yield a recommended sentencing range.  One is the seriousness

13  of the offense or the offense level, and the other is the

14  defendant's criminal history category, which depends on what

15  you've been convicted of in the past.

16          So the agreement in your case is that, so long as I

17  sentence you within the range in the Guidelines based on an

18  offense level of 32 and what I calculate to be the correct

19  criminal history category for you, then you're giving up -- if

20  you are sentenced within that range, you are giving up your

21  right to appeal the way I calculated the sentence, the length

22  of the sentence, any term of probation or supervised release,

23  and certain conditions set -- certain conditions of

24  supervision, including the drug testing and alcohol testing

25  conditions.

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Have you and your -- have you discussed

4    with your lawyer what you're giving up in terms of your right

5    to appeal your sentence?

6          THE DEFENDANT:  I -- yes.

7          THE COURT:  Do you have any questions about your

8    appeal rights?

9          THE DEFENDANT:  No.

10         THE COURT:  All right.  Going back to all the rights

11   I described to you a moment ago, your right to a jury trial and

12   so forth, do you want to give up those rights in order to plead

13   guilty?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Have you -- have you and your lawyers

16   discussed the nature of the charges against you and possible

17   defenses that might apply?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Has your -- are you on parole or

20   probation with any other court at this time?

21         THE DEFENDANT:  No.

22         THE COURT:  And have you been advised about the

23   longest possible sentence you could receive under the law for

24   these three offenses?

25         THE DEFENDANT:  Yes.

1          THE COURT:  I'm going to ask the attorney for the

2  Government to state that on the record and also the definition

3  of supervised release.  And there are two other special

4  conditions with respect to restitution, I think.

5          MR. DANIEL O'BRIEN:  Okay.

6          THE COURT:  If you could state all those for the

7  record.

8          MR. DANIEL O'BRIEN:  Okay.  So the penalties are set

9  forth in pages 7 through 8 of the plea agreement.

10         And the maximum penalty the Court can impose for a

11 violation of Title 22, United States Code, Sections 612 and

12 618(a)(2), which is the Foreign Agent Registration Act

13 violation, is five years' imprisonment, a three-year period of

14 supervised release, a fine of $250,000 or twice the gross gain

15 or gross loss resulting from the offense, whichever is

16 greatest, and a mandatory special assessment of $100.

17         The maximum sentence the Court can impose for a

18 violation of Title 26, United States Code, Section 7201, which

19 is the tax evasion charge, is five years' imprisonment, a

20 three-year period of supervised release, a fine of $250,000 or

21 twice the gross gain or gross loss resulting from the offense,

22 whichever is greatest, and a mandatory special assessment of

23 $100.

24         The maximum sentence the Court can impose for a

25 violation of Title 52, United States Code, Sections 30116,

1   30118, 30121, 30122, and 30109(d)(1), which are the Federal

2   Election Campaign Act violations, is five years' imprisonment,

3   a three-year period of supervised release, a fine of $250,000

4   or twice the gross gain or gross loss resulting from the

5   offense, whichever is greatest, and a mandatory special

6   assessment of $100.

7         Therefore, the total maximum penalty the Court can

8   impose in this case is 15 years' imprisonment, a three-year

9   period of supervised release, a fine of $750,000 or twice the

10  gross gain or gross loss resulting from the offenses, whichever

11  is greatest, and a mandatory special assessment of $300.

12        There's a provision that addresses restitution in

13  this case that begins on page 8 of this plea agreement.  On

14  page 9, there is a rather -- an exceptional agreement that the

15  parties have entered into, and I want to state that on the

16  record as well.

17        The defendant acknowledges in the plea agreement on

18  page 8 that the Court may order the defendant to pay

19  restitution in the form of any additional taxes, interests, and

20  penalties that defendant owes to the United States based upon

21  the count of conviction, that is, the tax offense, and any

22  relevant conduct and also that the Court must order the

23  defendant to pay the costs of prosecution which may be in

24  addition to the statutory maximum fine stated above.

25        Um, I also want to interject at this time that the

1  plea agreement makes reference to a closing agreement with the

2  Internal Revenue Service that the defendant has executed.  That

3  is a separate agreement to address the scope of the tax

4  restitution that should be applied in this case as well as

5  penalties and interest.

6            On page 9, the exceptional provision that I

7  mentioned to the Court pertains to, um, the Federal Election

8  Campaign Act violation and restitution in that case.

9            Um, in cases of this sort where, um, campaign

10  contributions have been made in violation of the law, typically

11  the various election campaigns refund, um, such contributions

12  or disgorge them in some cases back to the contributor.  In

13  other cases they sometimes wish to apply these -- this

14  disgorgement to charities, things of that sort.

15            But the parties have entered into a plea agreement

16  here to treat these disgorgements basically as we treat bribery

17  situations, that these amounts should be disgorged to the

18  United States Government.  And there is a provision that sets

19  forth how those payments should be compiled by the Clerk of

20  Court and ultimately distributed to the Federal Election

21  Commission.

22            THE COURT:  Thank you.

23            All right.  Mr. Zuberi, did you understand what the

24  attorney for the Government just stated?

25            THE DEFENDANT:  Yes.

1       THE COURT:  All right.  And you understand it?

2       THE DEFENDANT:  Correct.

3       THE COURT:  You read it and understand it?  All

4  right.

5       There are two other provisions in the plea agreement

6  I want to ask you about.  And they are in paragraphs -- I'm

7  referring to the waiver of venue and the statute of

8  limitations.

9       Oh, I'm sorry.  All right.  So on page 14,

10  paragraph 25 of your plea agreement, you have given up the --

11  you are giving up the right to challenge your prosecution on

12  the basis of the statute of limitations, that is, the timing --

13  the timeliness of the charges.  Do you understand that?

14       THE DEFENDANT:  Yes, I -- yes.

15       THE COURT:  Have you discussed that with your

16  lawyer?

17       THE DEFENDANT:  Yes.

18       THE COURT:  In the next paragraph, paragraph 26, you

19  have given up your right to challenge the location in which

20  these charges are being brought -- the district in which these

21  charges are being brought.  Do you understand that?

22       THE DEFENDANT:  Yes.

23       THE COURT:  And again, have you discussed that with

24  your lawyer?

25       THE DEFENDANT:  Yes.

1          THE COURT:  All right.  In the federal system, we

2    don't have parole.  So if you're sentenced to prison, you will

3    not be released early on parole.

4          Instead, when you have finished serving a sentence,

5    you are released on what we call supervision or supervised

6    release.  It means you're supervised by a probation officer.

7    And there are rules and restrictions that apply; for example,

8    as to what kind of work you can do, where you can live, showing

9    up for drug testing, and so forth.  If you violate any of those

10   conditions, you can be returned to prison.  Do you understand

11   that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  All right.  And you told me earlier that

14   you and your lawyers have discussed the Sentencing Guidelines

15   in general?

16          THE DEFENDANT:  Correct.

17          THE COURT:  And how they might apply in your case?

18          THE DEFENDANT:  Yes.

19          THE COURT:  So federal judges are required to

20   consider a number of things in deciding what is a reasonable

21   sentence.  The Sentencing Guidelines are only one of those

22   things.

23          After today, you will be interviewed by a U.S.

24   probation officer who will do an investigation into your

25   background and into this offense, these offenses, and then will

1    prepare a written report.  You have the right to read that

2    report and to discuss it with your lawyers before you're

3    sentenced.

4          After the report's been issued and you've discussed

5    it with your lawyers, then your lawyers and the lawyer for the

6    Government will each file their sentencing briefs with the

7    Court, making their arguments or recommendations as to your

8    sentence.

9          I consider all of those things before I make a

10   decision.  But it's important that you understand that it's the

11   judge who decides what your sentence should be.  It's not the

12   lawyers and it's not probation.

13         Do you understand that?

14         THE DEFENDANT:  Correct.  I do.

15         THE COURT:  All right.  And in most cases, the judge

16   has the authority to impose a sentence that's either longer

17   than what's called for under the Sentencing Guidelines or

18   shorter.  But if your sentence is different than what you hoped

19   for or expected, you will still be bound by your guilty plea.

20   You won't have the right to withdraw it.

21         Do you understand that?

22         THE DEFENDANT:  Correct.

23         THE COURT:  Has anyone made any threats against you

24   or anyone in your family or anyone else in order to get you to

25   plead guilty?

```
1                    THE DEFENDANT:  No.
2                    THE COURT:  Other than the written plea agreement
3    you signed, other than what we've discussed here in open court,
4    and other than a general discussion with your lawyer about the
5    Sentencing Guidelines, has anyone promised you exactly what
6    sentence you would receive if you pled guilty?
7                    THE DEFENDANT:  No.
8                    THE COURT:  Has anyone told you exactly what
9    sentence you would get?
10                   THE DEFENDANT:  No, Your Honor.
11                   THE COURT:  Has anyone promised you anything of any
12   kind in order to get you to plead guilty?
13                   THE DEFENDANT:  No.
14                   THE COURT:  Do you feel that you understand
15   everything we have discussed here this afternoon?
16                   THE DEFENDANT:  I believe so, Your Honor.
17                   THE COURT:  All right.  Do you have any questions at
18   this point?
19                   THE DEFENDANT:  No.
20                   THE COURT:  All right.  Do you feel that you
21   understand the consequences to you of pleading guilty to these
22   charges?
23                   THE DEFENDANT:  I believe so.
24                   THE COURT:  Do you feel that you are competent and
25   able to make the decision to plead guilty?
```

```
 1              THE DEFENDANT:  Yes, I think so.
 2              THE COURT:  Well, do you have any hesitation about
 3   whether you're competent?
 4              THE DEFENDANT:  No.  No.
 5              THE COURT:  All right.  And is your decision to
 6   plead guilty to these charges entirely voluntary on your part?
 7              THE DEFENDANT:  Yes.
 8              THE COURT:  All right.  You have the right,
 9   Mr. Zuberi, to have the charges against you read out loud to
10   you now.  Do you wish to have them read to you at this time?
11              THE DEFENDANT:  No.
12              THE COURT:  You've read them before?
13              THE DEFENDANT:  Correct.
14              THE COURT:  You understand exactly what you're
15   charged with?
16              THE DEFENDANT:  Yes, Your Honor.
17              THE COURT:  All right.  How do you plead to Count 1
18   in the Information, charging you with a violation of Title 22,
19   United States Code, Section 612 and 618(a)(2), guilty or not
20   guilty?
21              THE DEFENDANT:  Guilty.
22              THE COURT:  And how do you plead to Count 2,
23   charging you with a violation of Title 26, United States Code,
24   Section 7201, tax evasion, guilty or not guilty?
25              THE DEFENDANT:  Guilty.
```

```
1              THE COURT:  And how do you plead to Count 3,
2    charging you with a violation of Title 52, United States Code,
3    Section 30116, Section 30118, 30121, 30122, and 30109(d),
4    guilty or not guilty?
5              THE DEFENDANT:  Guilty, Your Honor.
6              THE COURT:  All right.  Are you pleading guilty
7    because you did the things that you're charged with here?
8              THE DEFENDANT:  Yes.
9              THE COURT:  All right.  I'm going to ask the
10   attorney for the Government to state on the record what the
11   elements are for each offense.  In other words, the Government
12   has to prove each of these elements beyond a reasonable doubt
13   at trial.
14             Go ahead, Mr. O'Brien.
15             MR. DANIEL O'BRIEN:  So the elements of the offenses
16   are set forth in pages 6 through 7 of the plea agreement.
17             And the elements as to the Foreign Agent
18   Registration Act offense is that the Government must prove:
19             First, the defendant acted in the United States as
20   an agent of a foreign government or foreign national;
21             Second, defendant was required to file a
22   Registration Statement with the U.S. Attorney General within
23   ten days of becoming such an agent;
24             Third, defendant either filed or caused to be filed
25   a Registration Statement, knowing that the statement contained
```

1    materially false information, omitted material fact required to

2    be stated in the Registration Statement, or withheld material

3    facts or documents necessary to make the statement not

4    misleading, and defendant acted willfully.

5              The elements that the Government must prove with

6    respect to the tax evasion charge are:

7              First, a substantial income tax was due in addition

8    to that declared on defendant's tax return, the defendant

9    attempted to evade or defeat this additional tax, and defendant

10   acted willfully.

11             The elements the Government must prove in the

12   Federal Election Campaign Act offenses charged are:

13             First, defendant solicited, aided, caused to be

14   made, or made Federal Election Campaign Act contributions in

15   excess of quantitative limits from foreign nationals or

16   entities in the name of another person or through conduits;

17             Second, the defendant knew the contributions were

18   unlawful and acted willfully; and

19             Third, the aggregate value of the illegal

20   contributions exceeded $25,000 within a calendar year.

21             THE COURT:  Do you understand what the elements are

22   of each offense?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Thank you.

25             Next I'm going to ask the attorney for the

 1   Government to state on the record the facts it believes it

 2   would be able to prove to satisfy those elements if your case

 3   went to trial.  Of course, as I've said, the Government has to

 4   prove the facts beyond a reasonable doubt.

 5              So please listen carefully.  If you agree with his

 6   statement of facts, it will become the factual basis for your

 7   guilty plea.

 8              If there's anything in it that you disagree with or

 9   object to, you'll have the chance to tell me that.

10              Thank you.

11              Go ahead.

12              MR. DANIEL O'BRIEN:  Your Honor, the factual basis

13   is set forth in Exhibit B of the plea agreement.  It's several

14   pages long, but I would like the Court to indulge me and just

15   let me read it into the record.

16              THE COURT:  Of course.

17              MR. DANIEL O'BRIEN:  Thank you.

18              With respect to the FARA violations, the factual

19   basis reads:

20              Between November 28, 2013, through March 5, 2014,

21   defendant meant -- met with high-ranking officials of the

22   Government of Sri Lanka and negotiated an agreement whereby

23   Avenue Ventures, or a special purpose country -- company,

24   excuse me, created by Avenue Ventures would engage in lobbying

25   and public relations efforts to rehabilitate Sri Lanka's image

in the United States.  This proposed lobbying and public
relations effort focused on modifying U.S. Government policies,
particularly through the issuance of congressional resolutions
and improving public perception relating to Sri Lanka's alleged
persecution of its minority Tamil population.

On April 26, 2014, WR Group entered into a contract
effective May 1st, 2014, with the Central Bank of Sri Lanka.
The Sri Lanka-WR Group contract described -- I'm going to refer
to WR Group as "WR" -- WR Services as, quote, "Strategic advice
related to commercial and public policy considerations relating
to the United States and other parties" and identification of
consultants or other legal or non-legal advisors to Sri Lanka
and Central Bank as may effectuate Sri Lanka's commercial and
diplomatic objectives.  In return, the Sri Lanka-WR contract
required the payment of $8-and-a-half million in accordance
with the following schedule:  $3-and-a-half million on May 1st,
2014, and five payments of $1 million per month from June
through October 2014.

The defendant knowingly and willfully acted as an
unregistered agent of Sri Lanka by taking the following
actions:

Between April 26, 2014, through July 14, 2014,
defendant directed Person P. to sign the Sri Lanka-WR contract,
create Beltway Government Strategies, which I'll refer to as
"Beltway," and later WR to engage in lobbying and public

relations services, open bank accounts for those companies,
sign contracts on behalf of Beltway with various lobbyists and
public relations firms, and directed who Person P. was to pay
or not pay on behalf of Beltway and WR, all to insulate and
conceal defendant's own involvement with Beltway and WR.  In
reality, Beltway and WR acted as alter egos of defendant, and
efforts undertaken by these entities were directed by
defendant.

From December 2013 through October 2014, defendant
knowingly and willfully acted as an unregistered agent of the
Government of Sri Lanka.  Defendant solicited on behalf of
Sri Lanka members of the U.S. Congress to accept
all-expenses-paid trips to Sri Lanka, authored e-mails and
wrote proposals for Sri Lanka setting forth the strategy of the
campaign, interviewed, recommended, and negotiated contracts
with lobbyists for the Government of Sri Lanka, and coordinated
and participated in a series of meetings in Washington, DC,
between a government of Sri Lanka delegation and members of the
U.S. Congress and their staff.

On May 9th, 2014, and June 18th, 2014, Sri Lanka
wired $3-and-a-half million and $1 million, respectively, into
defendant's personal bank account for services related to the
Sri Lanka-WR contract.  On each of July 18, 2014, and
September 10, 2014, Sri Lanka wired $1 million into a WR bank
account.  At defendant's direction, Person P. transferred the

1   majority of these funds into accounts controlled by defendant,

2   which the defendant then used for his personal benefit.

3          Defendant knowingly and willfully failed to register

4   under FARA, as required by law.  Instead, on June 2nd, 2014, he

5   caused Person P. to file a FARA Registration Statement

6   identifying Beltway as an agent of its principal, Sri Lanka,

7   when, in fact, he was the agent of Sri Lanka.  The Registration

8   Statement contained material false statements and omitted

9   material facts.  On August 14, 2014, defendant caused Person P.

10  to file a supplemental statement on behalf of Beltway which

11  also contained materially false statements and omitted material

12  facts.  At defendant's direction, these two 2014 FARA

13  registration filings failed to report any of the money Beltway

14  received from Sri Lanka, the money disbursed to companies under

15  defendant's control, or the money disbursed to subcontractors

16  that had engaged in the Sri Lanka lobbying and public relations

17  effort.

18         Defendant knew that he personally was legally

19  required to file with the Attorney General a Registration

20  Statement pursuant to FARA because he had acted as an agent of

21  a foreign principal, specifically Sri Lanka.  Defendant also

22  knew that it was unlawful to file a FARA Registration Statement

23  containing materially false statements or material omissions of

24  fact.

25         Defendant knowingly and willfully filed -- failed to

1    file a FARA Registration Statement as required by law.

2    Instead, on August 14, 2014, defendant filed with the Attorney

3    General a short-form FARA Registration Statement and affirmed

4    the truth and accuracy of the statement under penalty of

5    perjury.  Defendant knowingly and willfully filed the

6    short-form FARA registration that contained materially false

7    statements and omitted material facts.

8              In particular, defendant represented in Section 7

9    that he was merely a consultant of Beltway when, in truth,

10   defendant directed all of the activities of Beltway.  In

11   addition, defendant represented in Section 14 that he merely

12   received a salary from Beltway that was, quote, "not based

13   solely on services rendered to the foreign principal," end

14   quote.  In fact, defendant received not a salary from Beltway

15   but $6-and-a-half million from the foreign principal, the

16   government of Sri Lanka, in return for lobbying and public

17   relations services rendered to Sri Lanka.

18             Finally, in Section 15, defendant represented that,

19   for the period beginning 60 days prior to the date of his

20   obligation to register to the time of the short form, he had

21   not made any contributions of money or other things of value

22   from his own funds on his own behalf in connection with any

23   election to political office or in connection with any primary

24   election, convention, or caucus held to select candidates for

25   any political office.

1          In truth, between February 26, 2014, and August 14,

2    2014, defendant made dozens of contributions of money from his

3    own funds in connection with elections to political office or

4    primary elections to select candidates for public office.

5    Defendant knowingly and willfully made these material false

6    statements and material omissions on the short-form FARA

7    Registration Statement.

8          On September 9, 2015, defendant filed a FARA

9    Registration Statement and an attached supplemental statement

10   for himself personally which also contained materially false

11   statements and omitted material facts.  In the filing,

12   defendant willfully and falsely claimed that he provided no

13   services to Sri Lanka after September 2014.  In fact, on

14   October 15th, 2014, defendant reported to Sri Lankan officials

15   a pledge from a United States Congressman to visit Sri Lanka in

16   January 2015.  In addition, on December 4, 2014, defendant

17   promised a Sri Lanka official that he would, quote, "extend the

18   current contract up to March 2015 at no cost to the government

19   of Sri Lanka," end quote.

20         Defendant's September 2015 filing was accompanied by

21   a letter from his attorney that falsely described his

22   involvement as merely providing business consulting services to

23   Sri Lanka and funding to Beltway for public affairs consulting

24   purposes.  The letter falsely stated that FARA registration was

25   not required because defendant engaged in non-political work in

1    furtherance of commerce.  In fact, defendant was the primary

2    organizer of played -- paid political efforts to mold the

3    opinion of members of Congress and Obama Administration

4    officials, all at the direction and control of, and to the

5    benefit of, Sri Lanka.

6              With respect to the tax violations, the factual

7    basis is much shorter.  And it reads as follows:

8              On April 15, 2015, defendant caused the electronic

9    filing of an IRS Form 1040 U.S. Individual Income Tax Return

10   for the 2014 calendar year for himself and his spouse.  Line 22

11   of the tax return showed total income of $558,233, in line 44

12   of the tax return showed a tax amount of $238,105.

13             The total income and tax amounts were understated

14   because the return failed to account for payments of

15   $3-and-a-half million and $1 million wired into defendant's

16   personal bank account and two payments of $1 million each wired

17   into a WR bank account by Sri Lanka for services rendered in

18   accordance with the Sri Lanka-WR contract.

19             These amounts, less any unclaimed business expenses,

20   should have flowed through to defendant's tax return as

21   business income.  As a result, Mr. Zuberi owed substantially

22   more federal income tax for the 2014 calendar year than was

23   declared due on his income tax return for 2014.

24             When defendant caused the tax return to be

25   electronically filed, he knew that the Sri Lankan wire

1    transfers were not included in the information provided to the

2    tax return preparer or prepare the return -- to -- to prepare

3    the return and, as a result, that more tax was owed than was

4    declared due on his income tax return.

5            By filing this false return, defendant attempted to

6    evade and defeat this additional tax and he did so willfully

7    and that he knew federal tax law required that he file accurate

8    tax returns and report accurate tax due amounts and he

9    intentionally and voluntarily caused the filing of a tax return

10   that he knew contained understated tax due amounts.

11           Defendant received gross income in 2012 that

12   required him to file income -- an income tax return with the

13   IRS.  Defendant willfully failed to file a tax return for 2012,

14   despite knowing of his obligation to file.

15           Defendant knowingly and willfully attempted to evade

16   and defeat an income tax by providing inaccurate tax numbers to

17   his tax return preparer for 2013 and 2015 that resulted in

18   substantial income tax due and owing from the defendant in

19   addition to that declared in his income tax return.

20           The total amount of tax loss for the 2012 through

21   2015 tax years is between $3-and-a-half million and

22   $9-and-a-half million.

23           Finally, the factual basis for the Federal Election

24   Campaign Act violations.

25           During the calendar year 2015, defendant knowingly

1    and willfully made contributions in the name of other

2    individuals, reimbursed contributions made by other

3    individuals, and received reimbursements from other individuals

4    for contributions he made in an amount aggregating $25,000 and

5    more in connection with federal elections.

6           Defendant knowingly and willfully made campaign

7    contributions in the name of other individuals by making online

8    contributions with credit cards belonging to himself and his

9    spouse.  Defendant knew that the names of the other individuals

10   were not the true sources of the money used for the

11   contributions because he used his own money as the whole or

12   partial source of those contributions.  Defendant also knew

13   that it was unlawful to make these contributions in the names

14   of other individuals using his own money.

15          Defendant knowingly and willfully solicited and

16   reimbursed conduit contributions for campaign contributions

17   they had made.  Defendant knew that it was unlawful to make

18   conduit contributions or reimburse the contributions of others.

19          Defendant knowingly and willfully solicited and

20   accepted reimbursements from other individuals for campaign

21   contributions Defendant Zuberi had made.

22          From 2012 through 2016, defendant made or solicited

23   more than $250,000 but less than $1-and-a-half million in

24   campaign contributions, in violation of the Federal Election

25   Campaign Act.

```
 1                THE COURT:  Thank you.

 2                Mr. Zuberi, do you agree with that statement of

 3     facts?

 4                THE DEFENDANT:  Yes.

 5                THE COURT:  Do you have any -- anything in it that

 6     you object to or disagree with?

 7                THE DEFENDANT:  No.

 8                THE COURT:  And do you agree that if your case went

 9     to trial, the Government could prove those facts beyond a

10     reasonable doubt?

11                THE DEFENDANT:  Yes.

12                THE COURT:  Thank you.

13                Mr. O'Brien, do you join in agreeing that the

14     Government has the evidence to prove the facts just stated

15     beyond a reasonable doubt?

16                MR. DANIEL O'BRIEN:  Yes, Your Honor.

17                THE COURT:  That Mr. O'Brien, I'm sorry.

18                MR. THOMAS O'BRIEN:  I do as well, Your Honor.

19                MR. DANIEL O'BRIEN:  I'm sorry.  I'm sorry.

20                THE COURT:  Mr. Tom O'Brien.

21                MR. DANIEL O'BRIEN:  Other Mr. O'Brien.

22                MR. THOMAS O'BRIEN:  Yes, Your Honor.

23                THE COURT:  All right.  Mr. Zuberi, are you under

24     the care of any physician or other medical professional at this

25     time for any injury, illness, or condition?
```

1          THE DEFENDANT:  Regular doctor, family doctor.

2          THE COURT:  All right.  Are you taking anything in

3   particular for your health that I should be aware of?

4          THE DEFENDANT:  No.

5          THE COURT:  Are you taking any medications

6   regularly, either prescription or over the counter?

7          THE DEFENDANT:  Allergies and diabetes and so forth.

8          THE COURT:  All right.  So what do you take for the

9   diabetes?  Do you take any medications?

10          THE DEFENDANT:  Metformin and Glucophage.

11          THE COURT:  All right.  Any other prescription

12   medications that you take?

13          THE DEFENDANT:  Allergies.

14          THE COURT:  All right.  Is that hay fever sorts of

15   allergies?

16          THE DEFENDANT:  Yes.  Pollen, hay fever.

17          THE COURT:  Are you receiving any psychiatric or

18   psychological care of any kind?

19          THE DEFENDANT:  No.

20          THE COURT:  All right.  In the last 24 hours, apart

21   from the medications that you've told me about, have you had

22   anything alcoholic to drink or taken any medicine, pills, or

23   drugs?

24          THE DEFENDANT:  No.  Just sometimes sleeping pills.

25          THE COURT:  All right.  Did you take one last night?

```
1              THE DEFENDANT:  Yes, because I was nervous for
2    today.
3              THE COURT:  Do you know the name of the medication
4    you took?
5              THE DEFENDANT:  Lunesta.
6              THE COURT:  All right.  Is that interfering with
7    your ability to think clearly today?
8              THE DEFENDANT:  No.
9              THE COURT:  Is it interfering with your ability to
10   understand everything that's happened here?
11             THE DEFENDANT:  Yes, Your Honor.
12             THE COURT:  It is interfering with that?
13             THE DEFENDANT:  It is not.
14             THE COURT:  It is not.  All right.  Thank you.
15             THE DEFENDANT:  Sorry.
16             THE COURT:  That's all right.
17             Do you understand, if I accept your guilty plea, the
18   only thing left in your case would be sentencing, there won't
19   be a trial?
20             THE DEFENDANT:  Yes, Your Honor.
21             THE COURT:  Do you know of any reason why I should
22   not accept your guilty plea?
23             THE DEFENDANT:  Uh, I -- I don't.
24             THE COURT:  Thank you.
25             And, Mr. Tom O'Brien, has your competent -- has your
```

1  client been competent and able to cooperate with you?

2           MR. THOMAS O'BRIEN:  He has been, Your Honor.

3           THE COURT:  And have you discussed the facts of the

4  case in detail with him?

5           MR. THOMAS O'BRIEN:  I have.

6           THE COURT:  Are you satisfied there are no

7  meritorious defenses that might apply?

8           MR. THOMAS O'BRIEN:  Yes, Your Honor.

9           THE COURT:  Are you satisfied your client's

10 constitutional rights have been observed?

11          MR. THOMAS O'BRIEN:  I am, Your Honor.

12          THE COURT:  Are you -- have you advised your client

13 about the legality or admissibility of any statement,

14 confession, or other evidence in the Government's possession?

15          MR. THOMAS O'BRIEN:  Yes, Your Honor.

16          THE COURT:  Is your client pleading guilty because

17 of any illegally obtained evidence in the Government's

18 possession that you're aware of?

19          MR. THOMAS O'BRIEN:  No.

20          THE COURT:  Are you of the opinion that your client

21 understands the nature of these proceedings and the

22 consequences of his guilty plea?

23          MR. THOMAS O'BRIEN:  I am, Your Honor.

24          THE COURT:  Has he told you anything about

25 medication, drugs, or other substances or factors that might

1    affect his actions or judgment today?

2              MR. THOMAS O'BRIEN:  No, Your Honor.

3              THE COURT:  Other than the proceedings in open

4    court, a general discussion -- I'm sorry -- the proceedings in

5    court, the contents of the plea agreement, and a general

6    discussion of the Sentencing Guidelines and the 3553(a)

7    factors, have you conveyed any promise of a particular sentence

8    to your client?

9              MR. THOMAS O'BRIEN:  I have not.  No members of the

10   legal team.

11             THE COURT:  Thank you.

12             And based on your analysis of the law, after your

13   own investigation of the facts, and after consulting with your

14   client, do you believe it's in his best interest to plead

15   guilty to these charges?

16             MR. THOMAS O'BRIEN:  I do, Your Honor.

17             THE COURT:  Thank you.

18             And, Mr. Zuberi, do you feel that you've had enough

19   time to discuss your case in general and your decision to plead

20   guilty with your lawyers?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Are you satisfied that your lawyers have

23   fully considered any defenses that might apply in your case?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Are you satisfied with the

UNITED STATES DISTRICT COURT

1    representation they've provided you and the advice they've

2    given you?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Please listen carefully.  I'm going to

5    make certain findings.  If I say anything that you don't

6    understand or that you disagree with, please interrupt me right

7    away.

8              The Court has questioned the defendant and his

9    counsel on the offer of the defendant's plea of guilty to

10   Counts 1, 2, and 3 of the Information, all felonies, and the

11   defendant and his counsel having represented to the Court that

12   they've thoroughly discussed all aspects of the charges and any

13   defenses that might apply; the Court having observed the

14   defendant while he answered the Court's questions and having

15   observed his good demeanor and manner while doing so, as well

16   as his intelligence, and having observed that he does not

17   appear to be under the influence of any medicine, drug, or

18   other substance or factor that might affect his actions or

19   judgment in any manner.

20             Therefore, the Court finds that the defendant's

21   offer of his plea of guilty to Counts 1, 2, and 3 of the

22   Information have a factual basis, are free of any coercive

23   influence of any kind, are voluntarily made with full knowledge

24   of the charges against him and the consequences of his guilty

25   plea, that no promises of any kind have been made to him by

```
1    anyone and no coercion or threats of any kind have been exerted
2    upon him in any manner.
3              So it is ordered that the pleas of guilty to
4    Counts 1, 2, and 3 of the Information are accepted and entered
5    into the Court's record today's date.
6              And a date for sentencing?
7              THE COURTROOM DEPUTY:  Yes, Your Honor.  February
8    the 10th, 2020, at 9:00 a.m.
9              THE COURT:  All right.  Is that agreeable to both
10   sides?
11             MR. THOMAS O'BRIEN:  Yes, Your Honor.
12             THE COURT:  All right.  Please remember that your
13   sentencing briefs are due three weeks before the date of
14   sentencing.
15             MR. THOMAS O'BRIEN:  Yes, Your Honor.
16             THE COURT:  All right.  And the plea agreement is
17   incorporated into the record.
18             Mr. Zuberi, you are ordered to appear back here
19   on -- February 10th, is it?
20             MR. THOMAS O'BRIEN:  Yes.
21             THE COURTROOM DEPUTY:  Yes, Your Honor.
22             THE COURT:  February 10th at 9:00 a.m. to this
23   courtroom for sentencing.  In the meantime, you must continue
24   to comply with all of the conditions of your pretrial release.
25             MR. THOMAS O'BRIEN:  Thank you, Your Honor.
```

**UNITED STATES DISTRICT COURT**

1          THE COURT:  All right.  Thank you very much.

2          MR. DANIEL O'BRIEN:  Thank you, Your Honor.

3          (Proceedings concluded at 3:16 p.m.)

**UNITED STATES DISTRICT COURT**

```
1              CERTIFICATE OF OFFICIAL REPORTER

2

3    COUNTY OF LOS ANGELES   )
                             )
4    STATE OF CALIFORNIA     )

5

6              I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

7    REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8    CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9    TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17              DATED THIS 27TH DAY OF NOVEMBER, 2019.

18

19

20                        /S/ MYRA L. PONCE
                 _____
21                MYRA L. PONCE, CSR NO. 11544, CRR, RDR
                      FEDERAL OFFICIAL COURT REPORTER
22

23

24

25
```

**UNITED STATES DISTRICT COURT**