NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
DANIEL J. O'BRIEN (Cal. Bar No. 141720)
Assistant United States Attorney
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2468
     Facsimile: (213) 894-2927
     E-mail:    daniel.obrien@usdoj.gov
ELISA FERNANDEZ (Cal. Bar No. 172004)
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>              v.<br><br>IMAAD SHAH ZUBERI,<br><br>         Defendant. | No. CR 19-642-VAP<br><br>GOVERNMENT'S RESPONSE TO MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Daniel J. O'Brien, hereby files its response to defendant Imaad Shah Zuberi's motion to strike (dkt. 44).

///

///

///

This response is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the court may permit.

Dated: January 10, 2020            Respectfully submitted,

                                   NICOLA T. HANNA
                                   United States Attorney

                                   BRANDON D. FOX
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                         /s/
                                   DANIEL J. O'BRIEN
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

I.   INTRODUCTION................................................1

II.  ARGUMENT....................................................3

     A.   No Legal Authority Prohibits a Litigant From Filing
          Separate Briefs on Separate Issues That the Parties
          Expressly Agreed to Litigate...........................3

     B.   Nothing Prohibits a Party From Filing in Advance of a
          Deadline...............................................6

     C.   The Government Has Produced, and Will Continue to
          Produce, Evidence to the Defense Relevant to
          Sentencing Issues Prior to Any Filing..................8

     D.   Defendant's Witness Tampering Arguments Are Spurious
          and Offer No Legitimate Basis to Strike the
          Government's Brief....................................10

     E.   Defendant's Requested Relief Would Undermine Justice
          and Conceal Pertinent Facts Relevant to Sentencing....10

III. CONCLUSION.................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

In his motion to strike, defendant Imaad Shah Zuberi ("defendant") moves to conceal from the Court and the public salient facts relevant to sentencing issues, <u>which he himself agreed to litigate as part of his negotiated plea agreement</u>.  Defendant provides no legal basis for this extraordinary request, which would impede the court's ability to fashion an appropriate sentence and undermine the cause of justice.

Defendant's motion to strike argues five primary points: (1) the government filed on oversized brief (which the government concedes and now seeks leave to amend so as to comport with the local rules); (2) the government cannot file separate briefs on specific issues the parties agreed to litigate; (3) the government should be barred from "premature" filings until after the presentence report ("PSR") is released and defendant chooses to object to its findings; (4) the government has produced "very little" discovery on the sentencing issues; and (5) the government is attempting to create publicity so as to influence witness testimony.  While the government acknowledges an error in oversight in filing an oversized brief and now seeks leave to file an amended brief within the 25-page limit, none of defendant's remaining claims have any merit.

Defendant cites no authority for the proposition that a litigant can only file one brief with the court.  The local rules contemplate the filing of multiple pleadings and motions and common practice typically results in the filing of separate motions when a party

seeks different sorts of relief.[1]  Here, in paragraph 22 of the plea agreement, the parties agreed to litigate several discrete issues at sentencing.  In reliance on this provision, the government agreed to the non-prosecution of certain viable offenses, including obstruction of justice, and/or voluntarily chose not to pursue various charges.  It is unfair for the defendant to stifle the government's attempts to litigate these issues at sentencing by insisting on a one-motion-only policy not required by any provision of law.

Defendant's only citation with respect to his "premature" filing theory actually supports the government's position.  The court's webpage does not require the government to delay filings until after the PSR.  It only establishes a filing deadline of 21 days prior to sentencing, with which the government has complied.  Defendant attempts to fault the government for diligently filing its position, which actually gives defendant more time than he would normally have to rebut the government's arguments.

Contrary to defendant's claims, the government has provided the defense hundreds of pages of evidence related to the outstanding sentencing issues well in advance of its filing and has also engaged in an extraordinary amount of labor to organize and distill such evidence to avoid subjecting the defense to unnecessary work.

The suggestion that the government's filing is intended to influence witnesses' willingness to cooperate and their testimony is particularly galling given that it was the defendant who <u>paid these witnesses</u> to procure their silence or false testimony.  Defendant

---

[1] The Section of the Local Rules referenced by defendant repeatedly refer to the filing of "pleadings" and "motions" in the plural and litigants do not typically file a combined motion to suppress, sever, in limine, etc.

offers no legal authority or other cogent argument to strike the brief on this theory.  Absent a court order, courtrooms and court filings are open to the public.  As much as defendant may prefer otherwise, witnesses should be presented with facts rather than kept in the dark, and the public is entitled to know about defendant's criminal conduct.

**II. ARGUMENT**

    **A. No Legal Authority Prohibits a Litigant From Filing Separate Briefs on Separate Issues That the Parties Expressly Agreed to Litigate**

Failing to cite any particular authority, defendant contends that the government should be barred from filing separate briefs on specific issues the parties expressly agreed to litigate.  Nothing in the federal rules, local rules, or case law -- let alone notions of fundamental fairness -- supports such an argument.

In the plea agreement, the parties expressly agreed to litigate several discrete issues at sentencing.  (Dkt. 5, ¶ 22.)  Defendant also acknowledged that the government would submit "sentencing recommendation<u>s</u>" and was permitted to supply any and all relevant information not just to the Probation and Pretrial Services Office, but to the court as well.  (<u>Id.</u> at ¶ 35.)  Defendant argues that the government's decision to litigate some of these diverse issues in separate briefs is "novel," but it is designed to address the unusual circumstances of this case in an organized and clear manner.

As the court is aware from the information, plea agreement, and the defense motion to delay his change of plea, this is a very complex case involving allegations that defendant committed literally scores of crimes, of several different varieties, over a lengthy time.  Defendant's Federal Election Campaign Act ("FECA") offenses

3

exceed 100 violations, totaling nearly a million dollars, over a five-year period, involving dozens of individuals, entities, and campaigns.  Rather than a simple conduit contribution scheme, the crimes involve defendant paying for contributions in the names of others, defendant's receipt of reimbursements, defendant reimbursing others, and contributions funded by from foreign individuals and entities.  Defendant's Foreign Agent Registration Act ("FARA") violations involve working as an agent for several different countries and foreign nationals over the course of four years.  Defendant's tax offenses involve the failure to report income derived from a variety of endeavors, including fraudulent FECA contribution schemes, a fraudulent investment scheme, legitimate foreign consulting work, and unlawful FARA-related activities.  Defendant's obstruction involved bribing six witnesses to silence them over a period of two years.

Conversely, defendant's admissions in the plea agreement were significantly limited in scope.  Defendant only pleaded guilty to (a) a single FARA violation for lobbying work on behalf of Sri Lanka, (b) an unspecified subset of the FECA violations alleged in the information, and (c) tax evasion resulting in a loss to the government somewhere in the very broad range of $3,500,000 to $9,500,000.  As is his right, defendant has disputed the scope of his FECA offenses, the foreign conduit aspect of his FECA contributions, the scope of his criminal tax violations, whether the unreported income was derived from criminal activity (including the commission of various frauds), and his obstruction of justice.

The dichotomy between the conduct alleged by the government and what defendant is prepared to admit leaves several factual

4

disagreements that the parties stipulated to litigate at sentencing. To silence the government on these issues, particularly where defendant expressly agreed to litigate them in exchange for significant concessions from the government, would undermine fundamental notions of fair play.

Contrary to defendant's suppositions and rhetoric, the government does not intend to file a "300-page sentencing brief" broken into nine segments. Some issues, such as the scope of FECA violations and the foreign sources of FECA funding, can be logically combined into one pleading. Other issues appear relevant only to the court's consideration of the 3553(a) sentencing factors and/or do not rise to the level of complexity that would warrant substantial briefing. The government anticipates filing four additional position papers,[2] none of which would seek the filing of an oversized brief, to summarize the evidence relevant to the following issues:

(1) The scope of defendant's FECA violations, specifically dollar amounts and foreign sources;

(2) The scope of defendant's FARA violations, including facts related to Bahrain, Turkey, Libya, Ukraine, and Pakistan, and defendant's impending failure to comply with the terms of the plea agreement that requires corrective registration filings;

(3) The scope of defendant's tax violations, including facts demonstrating that the unreported income was derived from fraud and FARA violations, and facts showing that the evasion involved sophisticated means; and

(4) A sentencing position that addresses the pertinent 3553(a) factors pertinent to defendant's offense

---

[2] The government could alternatively present information to the court by declaration, given that the local rules set no page limits with respect to declarations, exhibits, or evidence submitted to the court. However, there is value in argument presented in a memorandum of points and authorities: it connects dots and establishes themes that demonstrate the evidence's significance to sentencing and it applies these facts to the law.

5

conduct, uncharged conduct pertinent to defendant's character, and acceptance of responsibility.

The filing of these briefs does not suggest "limitless sentencing briefing," as they each address different guideline issues or other factual disputes relevant to sentencing. Moreover, the court can always entertain a motion to strike, as it has done so here, and make a determination that, where the parties stipulated to debating these issues at sentencing rather than trial, and the government sets forth a reasonable briefing format given the circumstances of the case, that such briefing is appropriate and permissible. Indeed, the court is already in possession of the government's obstruction brief. It can readily determine whether such argument is relevant and helpful to its consideration of the case, or whether, as the defense claims, it all constitutes "a waste of time and resources."

**B. Nothing Prohibits a Party From Filing in Advance of a Deadline**

The government's obstruction memorandum was not "premature." Defendant's only citation with respect to this theory actually supports the government's position. The court's webpage does not require the government to delay filings until after the PSR; rather, it establishes a <u>deadline</u> of 21 days prior to sentencing. The government has complied with that deadline.

With respect to obstruction of justice, the government provided the defense with discovery packages on October 30, November 19, and November 20, 2019 totaling approximately 300 pages. Given the overwhelming evidence presented on the obstruction issue, the government informed the defense it would hold off filing its obstruction of justice position long enough to give defendant ample

6

time to review the evidence and consider stipulating to the guideline enhancement.  The government offered this opportunity given the impact a frivolous denial of relevant conduct would have on defendant's guideline calculation for acceptance of responsibility. The government filed its position on obstruction on December 13, 2019, over three weeks after it provided the evidence and its interpretations of that evidence to the defense team and received multiple responses from the defense that it would not stipulate to the enhancement.[3]

With respect to FECA issues, the government similarly provided the defense with evidence in advance and an opportunity to accept responsibility for his illegal conduct.  Indeed, even prior to filing charges in this case, the government presented summaries and documentary evidence to the defense that identified the particular illegal contributions and established proof of foreign sources. Defendant declined to concede these matters in his factual basis, and the parties agreed to litigate these matters at sentencing.  On December 19, 2019, the government provided the defense with a complete, and organized, FECA evidentiary package.  Again, to provide defendant with an opportunity to accept responsibility, the government offered to execute a supplemental factual basis as to this

---

[3] Days prior to this filing, the government was informed that defendant may plead guilty to an information charging obstruction of justice filed in the Southern District of New York ("SDNY"). Defendant's recent change of heart on the obstruction issue appears to be a response to the prospect of facing additional charges originating from that district rather than a consideration of the broader evidence submitted by the government for defendant's review.
    Regardless of whether defendant now wishes to concede the issue, the government believes the particulars of defendant's obstructions are important matters the court should consider at sentencing.

7

relevant conduct prior to engaging in litigation.  Defendant has declined to do so.

There is tremendous irony in defendant's motion to strike.  This is perhaps the first time the government has encountered an objection from a defendant for receiving a position paper <u>too early</u>.  The government is trying to ease burdens on the defense and the court to provide both with ample notice and time to digest the evidence, which is complex and voluminous.  The defense now has approximately two months to prepare a response to the government's obstruction position.  Rather than face a deluge of materials on several issues 21 days prior to sentencing, the court now has more flexibility to review the evidence in accordance with its own schedule.

**C. The Government Has Produced, and Will Continue to Produce, Evidence to the Defense Relevant to Sentencing Issues Prior to Any Filing**

The government has provided the defense with evidence in support of its sentencing positions well in advance of any filing -- and in a thoughtful and reasonable way.  The government has not haphazardly dumped upon the defense voluminous records that would "waste time and resources" and cause defendant to "spend money on legal fees."[4]  The government has engaged in an extraordinary amount of labor identifying evidence relevant to the specific issues in dispute, organizing the evidence, removing irrelevancies and redundancies, and highlighting potentially exculpatory information.  The government

---

[4] The government disputes defendant's claim that he faces a challenge "trying to raise $16 million to pay his taxes."  The government estimates that defendant's net worth is in excess of $25 million, the overwhelming majority of which constitutes the proceeds of unlawful activity.

8

also explained to defense counsel the significance of items of evidence that might not have been otherwise apparent.

The government has completed its production of evidence related to obstruction and FECA.  It has produce a large amount of evidence pertaining to defendant's FARA violations and anticipates completing that work prior to the date the defense is required to file its reply.  The defense already possesses most of the materials related to the tax sentencing issues based upon exchanges of information prior to the filing of charges as well as information supplied to the defense through the obstruction and FECA productions.  The government's goal is to have the defense fulling informed on all sentencing issues prior to the issuance of the presentence report.

The government is receptive to reasonable requests from the defense pertaining any discovery concerns.  Indeed, the government agreed to a three-week continuance of sentencing for this precise reason.  The government is also willing to work with defense counsel to discuss any substantive evidence requests they have.

Of course, the government does not intend to produce discovery commensurate with what would be produced if this case were proceeding to trial.[5]  Now that defendant has pleaded guilty to the charged offenses, the government's discovery obligations are significantly

---

[5] There are three sources of the government's discovery obligations in a criminal case.  First, Federal Rule of Criminal Procedure 16 ("Rule 16") establishes guidelines for pretrial production by the government of certain limited materials.  Second, under 18 U.S.C. § 3500 (the "Jencks Act") and Federal Rule of Criminal Procedure 26.2 ("Rule 26.2"), both parties must disclose prior statements by witnesses after the witness has testified.  Finally, under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), the government must turn over to the defense evidence in its possession that is exculpatory or favorable to the defendant.

reduced. The government fully acknowledges its ongoing duty to make Brady disclosures of exculpatory evidence. However, neither Rule 16, nor Jencks, impose discovery obligations on the government for purposes of determining guideline enhancements. Jencks, of course, does not apply because those obligations are only triggered by witness testimony. Rule 16 does not apply, because its mandate of producing discovery "material to preparing the defense" "means the defendant's response to the Government's case-in-chief." United States v. Armstrong, 517 U.S. 456, 462 (1996). In light of defendant's guilty plea, the issue of defendant's guilt vis-à-vis the charged crimes is no longer germane.[6]

Nevertheless, the government has endeavored to provide the defense with the evidence (witness statements and documents) upon which it intends to rely in support of its sentencing position, well in advance of its filing, in a reasonable manner to ease the defense's review.

### D. Defendant's Witness Tampering and Publicity Arguments Are Spurious and Offer No Legitimate Basis to Strike the Government's Brief

Defendant objects to "publicity" that would result from the government's filings.[7] Absent court approval based upon an

---

[6] At least one district court has confirmed what is plain from the language of Rule 16 -- it does not apply to post-plea proceedings. United States v. Jordan, No. 3:06-CR-102, 2007 U.S. Dist. LEXIS 45984, at *34–35 (E.D. Tenn. June 25, 2007) (denying defendant's motion to compel discovery "of any evidence the government intends to provide for a presentence report or at a sentencing hearing") (citing United States v. Williams, 977 F.2d 866, 870-71 (4th Cir. 1992)).

[7] Contrary to defendant's assertion, the government did not result in "the supposedly confidential PSR-drafting process being played out in public filings." The government's brief sets forth defendant's obstruction. It makes no mention of the PSR-drafting process, nor does it interfere with that process in any way whatsoever.

10

extraordinary and compelling need for confidentiality, the United States does not conduct secret trials or sentencing proceedings. A core principle of our justice system is that "judicial proceedings, civil as well as criminal, are to be conducted in public." Doe v. Blue Cross & Blue Shield United, 112 F.3d 869, 872 (7th Cir. 1997); see Daubney v. Cooper, 109 Eng. Rep. 438, 441 (K.B. 1829) ("[O]ne of the essential qualities of a Court of Justice [is] that its proceedings should be public."). That fundamental rule extends to public records and judicial filings as well. Nixon v. Warner Commc'ns, 435 U.S. 589, 597 (1978). Whether defendant likes it or not, the public is entitled to know about his crimes. Public airings are an important aspect of a defendant's punishment and promote both general and specific deterrence. It is also important to establish an informed citizenry that can transform revelations of criminal abuses into more effective laws and enforcement mechanisms.[8]

Defendant's claim that such "publicity" would interfere with the defense's ability to interview witnesses demonstrates an amazing level of gall. The defendant has already "interviewed" many of the witnesses, as evidenced by the defense transmitting their false or perjured statements and declarations to the government. There is nothing improper about providing witnesses with factual information

---

[8] "[T]he right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process -- an essential component in our structure of self-government." Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606 (1982).

prior to their "interview."  Indeed, it is critical to ensure witness testimony is not corrupted by false information or deceit.  That is especially true in this case, where <u>defendant paid off these witnesses</u> in order to convince them to provide exculpatory information or conceal information from the government.

The defense objects to the government's providing evidence and briefs in seriatim, because it believes witnesses may have to be repeatedly interviewed.  The government does not believe the defense faces such a dilemma, nor does it consider multiple interviews a hindrance to presenting a defense.  While the government would prefer to file all of its sentencing positions as soon as possible, it has only completed its brief on obstruction, is in the process of preparing a position on FECA violations, and requires additional time before it can begin to prepare its FARA, tax, and 3553(a) filings.  Delaying filings until all are complete would only result in the Court's receipt of argument on a plethora of issues a mere 21 days prior to sentencing.

### E. Defendant's Requested Relief Would Undermine Justice and Conceal Pertinent Facts Relevant to Sentencing

The defense reveals its preferred approach to sentencing in an outrageous request for alternative relief: "the Court should consider [the obstruction brief] as the government's only sentencing brief." In defendant's self-serving world, fairness consists of silencing his adversary and keeping the court in the dark with respect to facts pertinent to sentencing.

Were this court to grant defendant's primary request for relief -- i.e., relegate the government to filing one 25-page position paper only in response to the PSR -- the result would be anything but just.

12

The parties expressly agreed to litigate these issues at sentencing. In exchange, the government agreed not to prosecute some of defendant's offenses and voluntarily chose not to file other charges in reliance on this stipulation.  Regardless of whether a tardy defendant acquiesces to guideline enhancements he previously determined to dispute, the court is entitled to hear the pertinent underlying facts.  The evidence is substantial and often convoluted. An adequate memorandum of points and authorities through which the government distills the evidence and argues its significance is necessary for the court to appreciate its importance to issuing an appropriate sentence.

**III. CONCLUSION**

    For the foregoing reasons, the government respectfully requests that this court deny defendant's motion to strike.