THOMAS P. O'BRIEN, State Bar No. 166369
IVY A. WANG, State Bar No. 224899
NATHAN F. BROWN, State Bar No. 317300
BROWNE GEORGE ROSS LLP
801 South Figueroa Street Suite 2000
Los Angeles, CA 90017
Telephone: (213) 725-9800
Facsimile: (213) 725-9808
E-mail: tobrien@bgrfirm.com

EVAN J. DAVIS, State Bar No. 250484
HOCHMAN SALKIN TOSCHER PEREZ P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212-3414
Telephone: (310) 281-3200
Facsimile: (310) 859-1430
E-mail: davis@taxlitigator.com

Attorneys for Defendant
IMAAD SHAH ZUBERI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>IMAAD SHAH ZUBERI,<br><br>Defendant. | Case No. LACR19-00642-VAP<br><br>**DEFENDANT'S RESPONSE TO GOVERNMENT'S POSITION RE ACCEPTANCE OF RESPONSIBILITY**<br><br>Judge: Hon. Virginia A. Phillips<br>Date: August 17, 2020<br>Time: 2:00 p.m.<br>Crtrm.: 8A |

# **TABLE OF CONTENTS**

**Page**

I.      Introduction ...................................................................................... 1

II.     Mr. Zuberi Has Accepted Responsibility ........................................... 3

    A.      Mr. Zuberi Has Not Falsely or Frivolously Denied Relevant Conduct .................................................................................. 6

        1.      The Sri Lanka Objections ............................................ 8

        2.      The Objections Regarding Other Non-Relevant Conduct ........... 9

        3.      The Tax Objections ................................................... 10

        4.      The FECA Objections ................................................ 11

    B.      The Alleged Obstruction of Justice Does Not Weigh Against Acceptance of Responsibility ................................................ 12

    C.      Mr. Zuberi Has Met His Obligations Under the Plea Agreement ........ 14

III.    Mr. Zuberi Is Entitled to the Third Point Reduction ........................ 17

IV.     Conclusion ..................................................................................... 19

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

**Cases**

4

5

*United States v. Bryant*,
    398 Fed. App'x. 561 (11th Cir. 2010) ................................................................. 13

6

7

*United States v. Copeland*,
    520 Fed. App'x. 822 (11th Cir. 2013) ................................................................. 14

8

9

*United States v. Delacruz*,
    863 F.3d 163 (2d Cir. 2017) ................................................................................ 6

10

11

*United States v. Edwards*,
    635 Fed. App'x. 186 (6th Cir. 2015) ................................................................. 10

12

13

*United States v. Evans*,
    744 F.3d 1192 (10th Cir. 2014) ........................................................................... 7

14

15

*United States v. Gonzalez*,
    16 F.3d 985 (9th Cir. 1993) .................................................................................. 9

16

*United States v. Green*,
    940 F.3d 1038 (9th Cir. 2019) ............................................................................. 7

17

18

*United States v. Hooper*,
    27 F.3d 378 (9th Cir. 1994) ............................................................................... 13

19

20

*United States v. Igboanugo*,
    655 Fed. App'x. 578 (9th Cir. 2016) (unpublished) .................................... 17, 18

21

22

*United States v. Knight*,
    710 F. App'x 733 (9th Cir. 2017) (unpublished) .............................................. 17

23

24

*United States v. Kumar*,
    617 F.3d 612 (2d Cir. 2010) ................................................................................ 4

25

*United States v. Lee*,
    653 F.3d 170 (2d Cir. 2011) ................................................................................ 6

26

27

*United States v. McLaughlin*,
    378 F.3d 35 (1st Cir. 2004) ............................................................................... 13

28

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*United States v. Nelson*,
   2015 WL 1548990 (D. Or. Apr. 6, 2015) ................................................... 13, 14

*United States v. Piper*,
   918 F.2d 839 (9th Cir. 1990) ................................................................. 6

*United States v. Robinson*,
   942 F.3d 767 (7th Cir. 2019) ................................................................ 10

*United States v. Rodgers*,
   278 F.3d 599 (6th Cir. 2002) ................................................................ 13

*United States v. Smith*,
   782 Fed. App'x. 383 (6th Cir. 2019) ........................................................ 7

*United States v. Sparrow*,
   532 Fed. App'x. 443 (4th Cir. 2013) ........................................................ 12

**Statutes**

18 U.S.C. § 3553(a) ............................................................................... 2

U.S.S.G. § 3C1.1 ................................................................................. 12

USSG § 3E1.1 ............................................................................... *passim*

USSG § 3E1.1(a) ................................................................................. 13

# I. __Introduction__

Defendant Imaad Shah Zuberi ("Mr. Zuberi") has demonstrated extraordinary acceptance of responsibility for his crimes by not only waiving his right to indictment by Grand Jury and pleading guilty to a three-count information, but also taking the rare step of agreeing to pay restitution prior to sentencing. (ECF 5.) Nothing has occurred since Mr. Zuberi entered his guilty plea that could change this conclusion. In the plea agreement, the government and Mr. Zuberi expressly agreed that Mr. Zuberi would truthfully admit the conduct comprising the charged crimes by not contesting the allegations laid out in a five-page factual basis and that the parties would leave open for litigation five specified sentencing adjustments under the United States Sentencing Guidelines ("USSG" or "Guidelines"). Since then, and unlike the government, Mr. Zuberi has done precisely what the plea agreement demands. He has truthfully and steadfastly admitted all of the allegations in the factual basis, and he has litigated the five open sentencing adjustments by objecting to certain findings in the United States Probation Office's ("USPO") presentence report. He is disappointed the government has not taken its obligations as seriously.

In light of the government's post-plea filings, it is now clear that the government sought to lay a trap by agreeing to leave the five unagreed adjustments open for litigation and then pouncing on Mr. Zuberi for doing just that. Right after Mr. Zuberi began to litigate the open adjustments, the government cried foul and claimed Mr. Zuberi failed to accept responsibility by "falsely" denying or "frivolously" contesting relevant conduct in the litigation over the open adjustments. Based on its subjective – and erroneous – assessment of falsity and frivolousness, through the warped lens with which the government sees Mr. Zuberi, the government now makes the unbelievable request that this Court treat Mr. Zuberi as it would any defendant who forced the government to indict him and who took his case through trial, and asks this Court to impose a sentence more than *double* the

USPO's recommendation.[1]  The government appears shocked that Mr. Zuberi is doing precisely what the parties agreed in their plea agreement, namely, disputing the sentencing factors that are subject to an honest factual dispute.

But the government was so eager to spring this pre-laid trap that it has turned a blind eye to the facts as well as to its written agreement that the defense could actually contest some of the government's conclusions.  The government fails to recognize that Mr. Zuberi has not actually falsely denied or frivolously contested relevant conduct because all of his objections are brought in good faith and substantiated by the evidence or reasonable inferences therefrom.  In addition, the government refuses to acknowledge that, even if that were not the case, these minor objections would be far outweighed by the other evidence of Mr. Zuberi's extraordinary acceptance of responsibility, including his choice to plead guilty pre-indictment and his admission of all conduct comprising his offenses of conviction.  Indeed, the government appears to have been so dead-set on making this argument – no matter the facts – that it now makes the incredible claim that Mr. Zuberi was the cause of the over one-hundred pages of sentencing briefs the government filed before Mr. Zuberi made even a single objection to the Presentence Report ("PSR").

That Mr. Zuberi may not be able to pay his entire restitution amount prior to sentencing, despite his determined efforts, is also not a basis for revoking his three levels of acceptance.  The plea agreement expressly contemplates this contingency and does not treat it as a material breach.  Moreover, any failure to make his payment should be excused in light of Mr. Zuberi's best efforts to make partial

---

[1] Regrettably, the government's uncommon, even unprecedented, tactic is not exceptional in the context of this case.  For reasons apparent only to the prosecutors, the government has gone to extreme lengths to exact an extraordinary punishment on a run-of-the-mill, non-violent offender.  The government's other unusual conduct in the prosecution of this case will be addressed in Mr. Zuberi's sentencing memorandum regarding the factors under 18 U.S.C. § 3553(a).

payment and the government's decision – based on no new flight or danger concerns, and expressly contrary to the parties' agreement that was designed to permit Mr. Zuberi to sell overseas assets – to block Mr. Zuberi from traveling to collect funds with which to pay the tax debt.  Indeed, despite the government's backtracking, Mr. Zuberi continues his efforts to liquidate unencumbered domestic assets to pay restitution.  Just last week, he paid an additional $500,000 to the IRS, bringing the total restitution paid to date to $5.2 million.[2]  In addition, Mr. Zuberi has a pending sale for $4.2 million for one asset; he unfortunately had a buyer back out of another sale for $4 million due to the COVID-19 crisis.  Selling assets now is an uphill battle, but Mr. Zuberi is doing what he can to satisfy his obligations.  Had Mr. Zuberi been permitted to travel overseas prior to the pandemic, he may have already been able to make full payment.

Despite the government's claims, the Guidelines demand that Mr. Zuberi receive a reduction for his acceptance of responsibility.  This Court should reject the government's virtually unheard-of request to deny the reduction for a defendant who has pleaded guilty pre-indictment and timely admitted all of the conduct comprising his convictions.

## II.   Mr. Zuberi Has Accepted Responsibility

USSG § 3E1.1 provides a two-level decrease for a defendant who demonstrates acceptance of responsibility.  In turn, Application Note 1 to section 3E1.1 enumerates the following eight factors that this Court should consider in deciding whether to grant the two-level reduction:

> "(A)   truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).  Note that a defendant is not required to volunteer or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction. . . . A defendant who falsely denies, or frivolously contests, relevant conduct that the court

---

[2] This includes the $3 million cash bond that will be paid to the IRS upon exoneration.

determines to be true has acted in a manner inconsistent with
acceptance of responsibility, but the fact that a defendant's challenge is
unsuccessful does not necessarily establish that it was either a false
denial or frivolous;

(B)   voluntary termination or withdrawal from criminal conduct or
associations;

(C)   voluntary payment of restitution prior to adjudication of guilt;

(D)   voluntary surrender to authorities promptly after commission of
the offense;

(E)   voluntary assistance to authorities in the recovery of the fruits
and instrumentalities of the offense;

(F)   voluntary resignation from the office or position held during the
commission of the offense;

(G)   post-offense rehabilitative efforts (e.g. counseling or drug
treatment);

(H)   the timeliness of the defendant's conduct in manifesting the
acceptance of responsibility."

USSG § 3E1.1, Application Note 1.  "[T]he paramount factor in determining

eligibility for § 3E1.1 credit is whether the defendant truthfully admits the conduct

comprising the offense or offenses of conviction." *United States v. Kumar*, 617

F.3d 612, 637 (2d Cir. 2010).

Here, the factors weigh strongly in favor of the reduction.  First, the

"paramount factor" calls for a reduction because Mr. Zuberi has "truthfully

admitt[ed] the conduct comprising the offense(s) of conviction" by pleading guilty

and admitting the facts in the factual basis of his plea agreement.  USSG § 3E1.1,

Application Note 1(A).  Indeed, the government does not—and cannot—claim

otherwise, as he did not walk away from a single allegation in the plea agreement.

Second, Mr. Zuberi has "voluntarily terminat[ed] or withdraw[n] from criminal

conduct." *Id.*, at Application Note 1(B).  Again, the government makes no

allegation of continued criminal conduct.  Third, Mr. Zuberi has made efforts at

"voluntary payment of restitution" and "voluntary assistance to authorities in the

recovery of the fruits . . . of the offense." *Id.*, at Application Note 1(C)-(E).  In fact,

he has already paid $5.2 million of his tax loss to date (and many weeks prior to sentencing) and made substantial efforts to obtain additional funds, including listing two California properties, estimated to have a total value of $7 million to $8 million, for sale since October 2019,[3] listing three properties in Asia, which he has been unable to sell due to the government restricting his travel, seeking a collateralized loan of approximately $1.64 million from a relative, and actively seeking to sell a portion of (or obtaining an interest against) his share of a corporation based in Asia. Fourth, the "timeliness of the defendant's conduct in manifesting the acceptance of responsibility" weighs strongly in favor of the reduction in this case because Mr. Zuberi manifested his acceptance of responsibility at an early stage by pleading guilty *pre*-indictment. *Id*., at Application Note 1(H). Together, these factors demand a reduction for acceptance of responsibility. It would be virtually unheard of – in part because of the disincentive for any future defendants to plead guilty if the prosecutor's assertion of falsity and frivolousness can erase the universally given acceptance of responsibility points in the Central District of California – for a defendant who has pleaded guilty pre-indictment, and steadfastly admitted the conduct comprising the convictions, to be denied the reduction.

The government offers three arguments as to why the balance of factors weighs against the reduction, but none are persuasive. First, the government argues that Mr. Zuberi has falsely denied or frivolously contested relevant conduct. (Government's Position re Acceptance of Responsibility, ECF 120, at 4-5.) Second, the government argues that the reduction should not apply because Mr. Zuberi obstructed justice. (*Id.*, at 3-4.) Third, the government claims the reduction should not apply because Mr. Zuberi has failed to meet his obligations under the plea agreement. (*Id.*) Each of these arguments is addressed in turn.

---

[3] These properties were briefly delisted for one day in December 2019, before being relisted for sale.

DEFENDANT'S RESPONSE TO GOVERNMENT'S POSITION RE ACCEPTANCE OF RESPONSIBILITY

A.    **Mr. Zuberi Has Not Falsely or Frivolously Denied Relevant Conduct**

Seizing on a fragment of a single factor in an application note to the guideline, the government now contends that Mr. Zuberi has not accepted responsibility because he has "falsely denie[d]" or "frivolously contest[ed]" relevant conduct (but not the conduct comprising the offenses of conviction), by disputing a tiny percentage of the findings in the PSR. (*Id.*, at 4-5.)  The government's claim is meritless for three reasons.

First, Mr. Zuberi has not falsely or frivolously denied relevant conduct because he has made each of his objections in good faith.  As a criminal defendant, Mr. Zuberi has a right to "controvert evidence of other [relevant] criminal conduct at sentencing without thereby losing the reduction for acceptance of responsibility." *United States v. Piper*, 918 F.2d 839, 841 (9th Cir. 1990).  Accordingly, a "good-faith objection to material PSR statements that [a defendant] disputes does not provide a proper foundation for denial of the acceptance-of-responsibility credit." *United States v. Delacruz*, 863 F.3d 163, 177 (2d Cir. 2017); *see also United States v. Lee*, 653 F.3d 170, 174 (2d Cir. 2011) ("[A] defendant—even one who pleads guilty—has a due process right to reasonably contest errors in the PSR that affect his sentence.  A defendant should not be punished for doing so.").  Mr. Zuberi's objections are not false, frivolous, or made in bad faith, solely because the government—or even this Court—disagrees with them.  *See* USSG § 3E1.1, Application Note 1(A) ("[T]he fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous.").

Contrary to the government's assertions, Mr. Zuberi has done nothing more than dispute, in good faith, a small portion of the PSR's findings and the government's innumerable arguments in seemingly endless briefing.  Each of Mr. Zuberi's objections and arguments rests on actual evidence and reasonable inferences from that evidence.  (*See* Defendant's Objections to the Presentence

1  Report, ECF 90); (Defendant's Initial Sentencing Memorandum, ECF 122.)  In fact,

2  given that the government previously acknowledged there would be legitimate

3  disputes as to the sentencing enhancements when it expressly agreed to leave those

4  enhancements open for litigation, it is disingenuous for the government to now do

5  an about face and claim that Mr. Zuberi's objections are frivolous.  *See United*

6  *States v. Evans*, 744 F.3d 1192, 1199 (10th Cir. 2014) ("[W]e cannot see how, given

7  that the government acknowledged [the defendant's right] to challenge loss," the

8  government could properly refuse to recommend the reduction); (Plea Agreement,

9  ECF 5, at 11-12).

10      Second, even if Mr. Zuberi had falsely or frivolously denied relevant conduct

11  (which he has not), it would not result in the denial of acceptance of responsibility

12  credit given Mr. Zuberi's otherwise-conciliatory positions.  Rather, in the event a

13  defendant falsely denies or frivolously contests relevant conduct, "the Guidelines

14  direct that the court should consider whether such inconsistent conduct outweighs

15  the affirmative evidence indicating [the defendant] has accepted responsibility,

16  including his decision to enter 'a plea of guilty prior to the commencement of trial'

17  and 'admit[] the conduct comprising the offense of conviction.'"  *United States v.*

18  *Green*, 940 F.3d 1038, 1046 (9th Cir. 2019); *see also United States v. Smith*, 782

19  Fed. App'x. 383, 387-88 (6th Cir. 2019) ("[A] defendant's false denial of relevant

20  conduct . . . is one of multiple considerations that the court may weigh in making its

21  [acceptance-of-responsibility] determination.").  Thus, *even if* Mr. Zuberi falsely or

22  frivolously denied certain relevant conduct – which he has not – these denials would

23  be far outweighed by the other enumerated factors, which, as described above,

24  strongly support the usual reduction.

25      Third, the vast majority of the government's complaints relate to objections

26  that do not involve "relevant conduct" and thus do not bear on the acceptance of

27  responsibility inquiry, no matter how false or frivolous the government thinks they

28

1  are.  The government's specific irrelevant allegations are addressed in turn.[4]

2          **1.    The Sri Lanka Objections**

3          With respect to Mr. Zuberi's Sri Lanka objections, the government argues that

4  Mr. Zuberi "falsely claimed he sought to conceal his Sri Lankan lobbying from

5  Pakistan despite frequent correspondence with a Pakistani government minister

6  concerning the lobbying effort."  (ECF 120, at 5.)  In other words, the government

7  alleges that Mr. Zuberi has been untruthful about his motivation for committing the

8  FARA violation.[5]

9          As an initial matter, there is nothing inconsistent between Mr. Zuberi's

10 correspondence with a single Pakistani government minister, and his attempts to

11 conceal his interactions with Sri Lanka from the governments of India, Bangladesh,

12 and Pakistan.  The mere fact that Mr. Zuberi trusted a single Pakistani government

13 official (who himself had similar business interests in Sri Lanka) enough to discuss

14 his contract with the government of Sri Lanka does not mean that he intended to

15 broadcast to the entirety of the Pakistani government, let alone the governments of

16 its regional rivals India and Bangladesh, his interactions with the Sri Lankan

17 government.

18         But in any case, "[n]either § 3E1.1 nor any cases . . . state or otherwise

19 indicate that a defendant's claimed reason or motivation for committing a crime is a

20

21 _____

   [4] Mr. Zuberi addresses below only why each of the government's allegations is
22 irrelevant.  He maintains that each of his objections was brought in good-faith and
   substantiated by the evidence, and the reasonable inferences from that evidence, as
23 explained in detail in his objections and initial sentencing memorandum.

24
   [5] The government also contends that Mr. Zuberi fraudulently converted funds paid
25 to him by the Sri Lankan government.  (ECF 120, at 5.)  But there was nothing in
   Mr. Zuberi's contract indicating that the mere placement of these funds into
26 accounts controlled by Mr. Zuberi, or even the use of these funds for his personal
   benefit, would be improper.  (Defendant's Objections to the Presentence Report,
27 ECF 90, at 6.).

28

1  dispositive factor in determining whether to grant the adjustment unless the claim

2  was intended as a defense to liability for the charged offense."  *United States v.*

3  *Gonzalez*, 16 F.3d 985, 991 (9th Cir. 1993).  Thus, "[e]ven if it were established that

4  [a defendant] at some point in the proceedings lied about why he committed the

5  crimes, this lack of candor . . . should play no part in the district court's § 3E1.1

6  determination where the explanation was not made to avoid criminal liability."  *Id.*

7         Mr. Zuberi has never tried to avoid criminal liability for the Sri Lanka

8  conduct and his proffered motivation for committing the violation is of no moment

9  in determining whether he has accepted responsibility.  Thus, even assuming

10 *arguendo* that the government was correct on this issue, it would not affect whether

11 Mr. Zuberi should receive acceptance of responsibility credit.

12             **2.    The Objections Regarding Other Non-Relevant Conduct**

13        The government also complains that Mr. Zuberi's objections concerning his

14 work for other foreign entities were false or frivolous.  Specifically, the government

15 contends that Mr. Zuberi "frivolously denied lobbying work on behalf of several

16 foreign entities and individuals" and made "an audacious claim to have invested in a

17 multi-billion dollar resort" in Bahrain.[6]  (ECF 120, at 3.)  The government also

18 persists in decrying the fact that the contract evidencing Mr. Zuberi's investment in

19 the Bahraini resort was notarized after the agreement was made, but still years

20 before there was any investigation into Mr. Zuberi.

21

22 _____

23 [6]  The government also accuses Mr. Zuberi of failing to accept responsibility
   because he has "trumpeted a fantastic lie that he invested $700 million of his own
   money" into this resort.  (ECF 120, at 5.)  The government's allegation is
24 confounding because Mr. Zuberi never made this claim to this Court or to the
   government.  This unsourced statement was made by Foreign Policy Magazine –not
25 Mr. Zuberi – several years ago. (*See* Gov't. Response to Defendant's Objections to
26 the Presentence Report, ECF 106, at 27.)  The claim of a $700 million investment is
   not just inaccurate and unfounded, but entirely irrelevant to whether Mr. Zuberi has
27 now demonstrated acceptance of responsibility for the charged crimes.

28

The government's "back-dating" assertion regarding the resort agreement is puzzling, and wrong.  There is simply nothing uncommon or illegal about notarizing a contract after agreeing to it, and the government's argument that Mr. Zuberi backdated a document before the investigation started, is nonsensical.  To the contrary, delay is often a practical necessity given that the parties must personally appear before the notary, oftentimes on different dates and diverse locations, as was done in this case.  The assertion that a contract was "backdated," even though it was formalized before the investigation, instead reinforces that the government's overzealousness is causing it to see malicious conduct where none exists.

And, in any event, only false or frivolous denials of "relevant conduct" are inconsistent with acceptance of responsibility.  *See* USSG § 3E1.1, Application Note 1.  As the USPO already correctly found, and as Mr. Zuberi already explained, the facts related to Mr. Zuberi's alleged deals with foreign principals other than Sri Lanka are not part of "relevant conduct" under the Guidelines.  *See* (Presentence Report, ECF 58, at 19); (ECF 122, at 29-30.)  As such, the government's complaints here are also irrelevant to the acceptance of responsibility inquiry.  The government is merely attempting to lard the record with weak allegations regarding irrelevant conduct.

### 3.    The Tax Objections

With respect to Mr. Zuberi's tax objections, the government argues that Mr. Zuberi "falsely denied defrauding U.S. Cares investors" and falsely claimed that certain funds he received were investments rather than income.[7]  (ECF 120, at 5.)  But this argument also fails because, for the purposes of section 3E1.1, "[t]here is a difference between arguments about the law and arguments about the facts." *United*

---

[7]  As explained in detail in Mr. Zuberi's initial sentencing memorandum, Mr. Zuberi also did not defraud these investors. (*See* ECF 122, at 52-53.)  While the investment was not successful, Mr. Zuberi did significant work on the project, amicably settled with the investors and continues to do business with the majority of those investors..

1 *States v. Edwards*, 635 Fed. App'x. 186, 192-193 (6th Cir. 2015).  "Legal arguments
2 are not a valid basis for denying a reduction."  *United States v. Robinson*, 942 F.3d
3 767, 771 (7th Cir. 2019).

4     In objecting to the USPO's calculation of the tax loss, Mr. Zuberi merely
5 submitted a spreadsheet from his accountants detailing why the tax loss should be
6 substantially less than the $7,694,109 claimed in the PSR.  (ECF 90, at 7.)  The
7 parties do not dispute the *facts* in the spreadsheet, they dispute the legal
8 characterization of those facts.  In other words, the parties dispute whether certain
9 line items should be counted as income under the law—not whether he received the
10 funds as a factual matter.  The dispute over the legal characterization of these funds
11 is not a "false denial" under USSG § 3E1.1.  Any assertion to the contrary is a false
12 allegation against Mr. Zuberi.

### 4.     The FECA Objections

14     As to Mr. Zuberi's FECA objections, the government contends that Mr.
15 Zuberi is not entitled to acceptance of responsibility credit because he "tried to
16 exploit a mistaken belief by the government as to the ownership of a bank account
17 that defendant undoubtedly knew was solely in his own name."  (ECF 120, at 6.)
18 The government's allegation is baseless.

19     First, Mr. Zuberi did not exploit anything.  The government assumes that Mr.
20 Zuberi and his counsel noted the government's error in attribution of one (of many)
21 bank accounts and chose to exploit that error.  This is incorrect.  In its initial FECA
22 spreadsheet (O'Brien Decl. re Gov. Sentencing Position on FECA, ECF 100, Ex. 1),
23 the government identified one of the source accounts for some of the alleged FECA
24 violations as a joint account in the name of Mr. Zuberi and Person AA.  In his PSR
25 objections, Mr. Zuberi relied on the government's spreadsheet and merely pointed
26 out that donations made in the name of Person AA from a joint account held by Mr.
27 Zuberi and Person AA would not violate FECA.  Mr. Zuberi did not deliberately
28 exploit the government's mistaken belief.

1   Second, the government cannot claim that Mr. Zuberi has failed to accept

2   responsibility merely because he pointed out the government's incomplete

3   argument, particularly on an issue that was specifically left open under the terms of

4   the plea agreement.  The government carries the burden to prove that all of the

5   alleged contributions were FECA violations and Mr. Zuberi has a right to hold the

6   government to that burden, which he did by pointing out what the government's

7   spreadsheet failed to prove.  *See United States v. Sparrow*, 532 Fed. App'x. 443, 447

8   (4th Cir. 2013) ("[A] defendant who merely requires the government to meet its

9   burden of proof to establish relevant conduct, in the absence of any "false denial" by

10  the defendant, does not jeopardize his eligibility for the reduction.").

11  Nevertheless, it should be noted that after the government produced sufficient

12  evidence to show the ownership of the joint account in question (O'Brien Decl. re

13  Gov. Response to Def. PSR Objections, ECF 109, Ex. 20), Mr. Zuberi did not

14  further dispute the ownership of account.  (ECF 122, at 3-5.)  Merely requiring the

15  government to meet its burden on an issue left open at sentencing is not grounds for

16  a revocation of his acceptance of responsibility.

17  **B.**   **The Alleged Obstruction of Justice Does Not Weigh Against**

18  **Acceptance of Responsibility**

19  The government's second argument is that Mr. Zuberi has not accepted

20  responsibility because of his allegedly obstructive conduct prior to the plea

21  agreement.  (ECF 120, at 3-4) ("An obstruction enhancement (U.S.S.G. § 3C1.1) is

22  ordinarily antithetical to a reduction for acceptance.")  But the government fails to

23  recognize the unique circumstances in this case that make adjustments for both

24  obstruction and acceptance of responsibility appropriate.  In sum, the government

25  was aware of all allegedly "obstructive conduct" when it signed a plea agreement in

26  which it agreed not to prosecute obstruction of justice as well as to recommend

27  acceptance of responsibility.

28  Under USSG section 3E1.1, the application of both the acceptance of

1  responsibility and obstruction adjustments is appropriate in "extraordinary" cases.

2  USSG § 3E1.1, Application Note 4.  "[T]he relevant inquiry for determining if a

3  case is an extraordinary case within the meaning of Application Note 4 is whether

4  the defendant's obstructive conduct is *not inconsistent* with the defendant's

5  acceptance of responsibility."  *United States v. Hooper*, 27 F.3d 378, 383 (9th Cir.

6  1994) (emphasis in original).  "Cases in which obstruction is not inconsistent with

7  an acceptance of responsibility arise in a case when a defendant, although initially

8  attempting to conceal the crime, eventually accepts responsibility for the crime and

9  abandons all attempts to obstruct justice."  *Id.*  Thus, a defendant who only obstructs

10  justice prior to an indictment and subsequently accepts responsibility by pleading

11  guilty, is eligible to receive both adjustments.  *See id.* (initial obstructive conduct

12  was not inconsistent with subsequent confession of guilt); *United States v. Nelson*,

13  2015 WL 1548990, at *5 (D. Or. Apr. 6, 2015) ("[I]f Defendant had pleaded guilty

14  after fabricating evidence and lying at the motion to suppress hearing, he could have

15  qualified for both acceptance of responsibility and obstruction of justice.").[8]

16      Here, all of the alleged obstructive conduct in this case took place well before

17  the government filed its lengthy information against Mr. Zuberi, yet the information

18  made no mention of this conduct.  Subsequent to that alleged conduct, Mr. Zuberi

19  demonstrated extraordinary acceptance of responsibility, as explained above, by

20  pleading guilty pre-indictment and admitting all conduct comprising the offenses of

21

22  [8] *See also United States v. Bryant*, 398 Fed. App'x. 561, 65 (11th Cir. 2010)
23  (adopting a "bright line rule that a district court should not deny the two-level USSG
   § 3E1.1(a) reduction on the basis of pre-federal-charge conduct"); *United States v.*
24  *McLaughlin*, 378 F.3d 35, 41 (1st Cir. 2004) ("[C]ourts cannot go back limitlessly in
   time in assessing acceptance of responsibility . . . Normally, the lodging of a federal
25  charge marks the commencement of the relevant time frame."); *United States v.*
26  *Rodgers*, 278 F.3d 599, 601 (6th Cir. 2002) ("[T]he relevant time period for
   acceptance of responsibility does not begin until the date that the federal authorities
27  *indict* the defendant *and* he becomes aware that he is subject to federal investigation
28  and prosecution.") (emphasis in original).

1  conviction.  As such, this is plainly an "extraordinary case" and the obstruction

2  enhancement does not preclude a reduction under section 3E1.1.

3        Moreover, the government already agreed that it would recommend

4  acceptance of responsibility credit notwithstanding its knowledge of these alleged

5  prior instances of obstruction and even agreed not to prosecute him for obstruction

6  of justice, so the obstruction now highlighted by the government was a non-event

7  when it was negotiating the plea.  (*See* ECF 5, at 4-5.)  Nothing has changed since

8  then on this issue, other than the intensity of the government's apparent dislike of

9  Mr. Zuberi.  There is no new evidence of obstruction, and there is no basis for the

10  government to backtrack on this position.  Having "entered the plea agreement with

11  full knowledge of [the defendant's] pre-indictment conduct [related to] the

12  obstruction-of-justice enhancement, [the government] cannot not be excused from

13  fully performing its promises as to acceptance of responsibility."  *United States v.*

14  *Copeland*, 520 Fed. App'x. 822, 828 (11th Cir. 2013).  The government must live up

15  to both the letter and the spirit of its plea agreements, and the Court should uphold

16  the plea agreement even if the government wants to change the terms after it was

17  signed.

18        **C.     Mr. Zuberi Has Met His Obligations Under the Plea Agreement**

19        The government's third contention is that Mr. Zuberi should not receive an

20  acceptance of responsibility reduction because he "has not complied with the terms

21  of the plea agreement."  (ECF 120, at 4.)  Specifically, the government alleges that

22  Mr. Zuberi has (1) failed to make any additional FARA disclosures and (2) failed to

23  make sufficient payments by a February 1, 2020 deadline.  (ECF 120, at 4.)  The

24  government's allegations are baseless.

25        As to the failure to make additional FARA disclosures, the plea agreement

26  only provides that Mr. Zuberi "agrees to satisfy any and all obligations under FARA

27  *prior to sentencing*, including registering for any and all activity, past or present,

28  that requires registration under FARA and amending any deficiencies in existing

1   FARA filings." (*Id.*, at 4) (emphasis added.)  Mr. Zuberi cannot have breached this

2   obligation because sentencing is not scheduled to take place until August 17, 2020.

3   The claim that Mr. Zuberi has somehow failed to meet his obligations by missing a

4   deadline that has not yet come to pass only exposes that the government is far more

5   interested in exacting a maximum punishment than it is in engaging in a good-faith

6   determination of whether acceptance of responsibility credit is warranted.

7          Moreover, the plea agreement only provides that Mr. Zuberi agrees to make

8   FARA disclosures for activity "that *requires* registration under FARA."  (ECF 5, at

9   5) (emphasis added.)  As demonstrated by Mr. Zuberi's objections and initial

10  sentencing memorandum, the parties are still litigating the issue of which prior

11  activities required registration under FARA.  Upon determination that he is required

12  to register, he will do so.

13         As to the government's second argument, concerning the February 1, 2020

14  payments, Mr. Zuberi has not breached the agreement by failing to make those

15  payments on time.  Rather, the plea agreement expressly contemplates that timely

16  payments might be impossible and provides that:

17         "In the event defendant fails to pay the tax deficiencies, fraud penalties,

18         and statutory interest obligations acknowledged in the Closing

19         Agreements by January 31, 2020, [Mr. Zuberi] agree[s] the IRS may

20         file and record three quit claim deeds executed by defendant on

21         September 17, 2019 on behalf of the LLCs that own properties in favor

22         of the defendant, file and record liens on these properties, and sell the

23         properties in partial or complete satisfaction of the debt identified in the

24         Closing Agreements."

25  (ECF 5, at 3.)  Thus, the plea agreement does not treat the failure to make timely

26  payments as a breach nor does it permit the government to withhold its

27  recommendation of acceptance of responsibility credit.  It merely provides that if

28  payments are late, the IRS may file and record the quitclaim deeds.

1    Furthermore, as was originally discussed with the government during the plea
2    negotiations, Mr. Zuberi's ability to pay the agreed upon $16 million was always
3    contingent upon his ability to travel overseas to sell his foreign assets.  The
4    government has recognized from the outset of plea negotiations that Mr. Zuberi has
5    pledged interests in his U.S. properties to various investors.  Even the government
6    agrees that Mr. Zuberi owes refunds to some of these investors.  Selling the U.S.
7    properties and handing over the proceeds to the IRS would breach these pledges,
8    opening Mr. Zuberi up to lawsuits from the investors.  Mr. Zuberi's overseas assets,
9    on the other hand, are unencumbered and easier to liquidate (for a variety of
10   reasons).  The government was fully aware of this dynamic when it agreed to permit
11   Mr. Zuberi to travel internationally while on Pretrial supervision to gather funds to
12   pay his tax debts.  (*See* Minutes of Information Hearing, ECF 12, at 4.)

13   While the government initially consented to Mr. Zuberi traveling
14   internationally after his initial appearance, see Exhibit 1, in February of 2020, the
15   government abruptly revoked Mr. Zuberi's ability to travel despite no material
16   change to Mr. Zuberi's flight risk (as evidenced by his return from previous
17   international travel) or risk of danger to the community.  *See* Exhibit 2.  Although
18   Mr. Zuberi initially attempted to convince the government that its bait and switch on
19   travel was preventing him from meeting his payment obligations, by March of 2020,
20   the world-wide COVID-19 pandemic caused the foreign countries where Mr. Zuberi
21   holds assets to cease all international flights into those countries, at which point the
22   damage had been done and the travel issue was moot.  The government cannot claim
23   that Mr. Zuberi's failure to meet the contemplated payment was a breach of the
24   agreement, when Mr. Zuberi begged to be able to travel and the government decided
25   to revoke his ability to meet that obligation before the COVID-19 crisis shut down
26   international travel.

27   In any event, any shortfall from the entire contemplated payment should be
28   excused.  First, Mr. Zuberi has already paid $5.2 million.  Second, Mr. Zuberi has

1 already gone above and beyond typical efforts at restitution.  The very fact that Mr.

2 Zuberi took the extraordinary step of agreeing to prepay restitution before

3 sentencing should count in favor of his acceptance of responsibility, not against it.

4 Mr. Zuberi has made numerous good-faith efforts to stand by that agreement,

5 including his attempts to sell his aforementioned California and foreign assets, to

6 obtain loans from his relatives, and to sell or borrow against his interests in a foreign

7 corporation.  His efforts have been thwarted by circumstances outside of his control,

8 namely the COVID-19 pandemic and the government's refusal to allow him to

9 travel, which has made it nearly impossible to sell assets.

10 **III.    Mr. Zuberi Is Entitled to the Third Point Reduction**

11       In addition to the two-point reduction under USSG § 3E1.1(a), subsection (b)

12 provides for an additional one-level decrease if the defendant "timely notif[ies]

13 authorities of his intention to enter a plea of guilty, thereby permitting the

14 government to avoid preparing for trial and permitting the government and the court

15 to allocate their resources efficiently."  Now the government declares that it will

16 also decline to move for this third point reduction because (1) the government does

17 not believe that Mr. Zuberi has accepted responsibility and (2) Mr. Zuberi's

18 "frivolous denials and affirmative falsehoods created an extraordinary amount of

19 work for the government."  (ECF 120, at 6.)  Both justifications are inconsistent

20 with the authority and the facts.

21       The government can only refuse to move for the third point "for the reasons

22 articulated in section 3E1.1(b)."  *United States v. Knight*, 710 F. App'x 733, 736-37

23 (9th Cir. 2017) (unpublished).  "Those reasons are limited to when failing to timely

24 notify an intention to enter a guilty plea either (1) did not allow the government to

25 avoid preparing for trial or (2) impeded the government's or the court's ability to

26 allocate their resources efficiently."  *Id.*  In addition, the Guidelines "restrict denial

27 of the reduction to situations in which a defendant's refusal to accept responsibility

28 had caused the government to prepare for trial, rather than to prepare for an appeal

1    *or for contested sentencing proceedings*."  *United States v. Igboanugo*, 655 Fed.

2    App'x. 578, 580 (9th Cir. 2016) (unpublished) (emphasis added) (district court erred

3    by allowing government to refuse to move for third-point due to defendant's

4    "refusal to agree to sentencing factors").

5        Accordingly, the government's first argument fails because, if this Court finds

6    that Mr. Zuberi is entitled to an acceptance of responsibility reduction, the

7    government's own belief on that issue is irrelevant.  The government cannot refuse

8    to move for the third point simply because it disagrees with the Court's factual

9    determination that Mr. Zuberi has accepted responsibility.  The refusal must turn on

10   whether the government was spared for preparing for trial, which is not in doubt.

11       The government's second argument fails because being forced to prepare for

12   contested sentencing proceedings is not the same as preparing for trial and is not a

13   valid reason to refuse to make the motion.  *Igboanugo*, 655 Fed. App'x. at 580.  The

14   government, which has been spared from preparing for *trial*, cannot refuse to move

15   for the third point merely because it has been forced to litigate sentencing

16   enhancements that the government itself specifically agreed to leave open for

17   litigation at sentencing.

18       And, even if that were not the case, the government willingly took on the

19   labor it has expended for sentencing.  The government could have required that Mr.

20   Zuberi stipulate to all of the sentencing enhancements at issue in the plea agreement

21   that it extended, but the government chose not to so that it could secure a guilty plea

22   and save itself the time and resources of preparing for trial.  Having gotten its end of

23   the bargain after Mr. Zuberi relied on the government's agreement to leave the

24   sentencing enhancements open and pled guilty to three counts, the government

25   cannot turn around and claim it has been forced to engage in unnecessary litigation

26   because Mr. Zuberi chose to exercise his right under the plea agreement to challenge

27   those open enhancements.

28       Finally, the government's argument that Mr. Zuberi caused the government

1  "an extraordinary amount of work" fails because it is wholly detached from the

2  facts: the government itself chose to pile on Mr. Zuberi with multiple, unprompted,

3  oversized sentencing briefs, despite Mr. Zuberi's protests.  The government filed

4  over one hundred pages of briefing (and hundreds more pages of exhibits) regarding

5  sentencing between December 16, 2019, and March 20, 2020, *before Mr. Zuberi*

6  *filed a single word on the subject*.  (*See* ECF 42, 84, 87, 89.)  Mr. Zuberi in fact tried

7  to limit the total amount of briefing regarding sentencing in his Motion to Strike

8  Government's Sentencing Position (ECF 44), but the government *opposed* Mr.

9  Zuberi's request. (ECF 54.)  To claim that Mr. Zuberi was the cause of the

10  government's labor is, frankly, beyond absurd.  The only work incurred by the

11  government as a result of Mr. Zuberi's twenty-page PSR objections, which was filed

12  on March 23, 2020, was a single twenty-five page opposition brief that the

13  government filed on April 13, 2020 (ECF 106)—a proverbial drop in the bucket

14  compared to its previous, self-initiated filings.  The government's argument on this

15  point is unfortunately entirely consistent with its unprecedented efforts – along with

16  the United States Attorney's Office in the Southern District of New York and

17  possibly other Department of Justice components as well – to pile on this defendant

18  for questionable motives, as raised in footnote 1 of this brief.

19  **IV.    Conclusion**

20        For the foregoing reasons, Mr. Zuberi respectfully requests that this Court

21  award him the full three-level reduction under USSG § 3E1.1 based on his pre-

22  indictment guilty plea and his full and truthful admission of the facts comprising his

23  convictions.

24

25

26

27

28

DEFENDANT'S RESPONSE TO GOVERNMENT'S POSITION RE ACCEPTANCE OF RESPONSIBILITY

1    DATED:  June 16, 2020                    BROWNE GEORGE ROSS LLP
2                                                  Thomas P. O'Brien
3
4                                            By:        /s/ Thomas P. O'Brien
5                                                      Thomas P. O'Brien
6                                            Attorneys for Defendant Imaad Shah Zuberi
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28