Exhibit 15

From:       imaad zuberi
Sent:       Tue 4/24/2012 10:58 PM (GMT-00:00)
To:         'Husam Jauhari'
Cc:
Bcc:
Subject: RE: telex transfer of $ 20,000

Call me when you get a chance to discuss. I will do or not do after I talk to you.

**From:** Husam Jauhari [mailto: ████████████████]
**Sent:** Tuesday, April 24, 2012 3:54 PM
**To:** imaad zuberi
**Subject:** Re: telex transfer of $ 20,000

Dear imad,

I will give it to you all from here unless you have another way to do it.

Talk to you tomorrow.

Regards,

Sam

Sent from my iPad

On 2012-04-25, at 1:30 AM, "imaad zuberi" ████████████████████ wrote:

Sam-your wire was received however let's try to avoid the wire because it is too problematic. I will call you to discuss.

Thanks
imaad

**From:** Michael Gilmore [mailto: ██████████████████]
**Sent:** Tuesday, April 24, 2012 2:35 PM
**To:** ███████████████
**Cc:** Lindsay Rachelefsky; Kelly Snyder; Adia Smith
**Subject:** FW: telex transfer of $ 20,000

FYI—Sam Juahari's $20,000 wire transfer was processed successfully. Phew! No more wire transfers…!!!! ;)

So we still need:

$55,800 from Sam Juahari — Cashiers Check/Regular Check/Credit Card w/ signed donor card
$75,800 from Mrs. Juahari — Cashiers Check/Regular Check/Credit Card w/ signed donor card



CONFIDENTIAL

████ 00002352

**From:** Sam Brown
**Sent:** Tuesday, April 24, 2012 2:30 PM
**To:** Michael Gilmore
**Subject:** Re: telex transfer of $ 20,000

this is in

On Apr 17, 2012, at 11:47 AM, Michael Gilmore wrote:

FYI

**From:** sam jauhari [mailto ███████████]
**Sent:** Monday, April 16, 2012 11:38 PM
**To:** Michael Gilmore; imaad zuberi
**Cc:** Catherine Pfeiffer; Adia Smith; Willa (Wei) Rao-Zuberi; Lindsay Rachelefsky
**Subject:** telex transfer of $ 20,000

Dear Michael,

Please find the attached wire telex transfer of $ 20,000.00

Regards,

Sam Jauhari

CONFIDENTIAL

Exhibit 16

From:    Husam Jauhari
Sent:    Wed 11/21/2012 7:10 AM (GMT-00:00)
To:      imaad zuberi
Cc:
Bcc:
Subject: RE: Invite

i made the changes to be in Dubai on Friday evening and leave saturday afternoon from Dubai to Libya. Just for you!!!!!!!!!!!!!!!!!! and for me too.

_____ From: ███████████████████
To: █████████████████████
Subject: RE: Invite
Date: Tue, 20 Nov 2012 23:04:44 -0800

Sam-the problem is The White House will let you attend one event only. I am on call with China. I will call you later.

imaad

**From:** Husam Jauhari [mailto:█████████████]
**Sent:** Tuesday, November 20, 2012 10:59 PM
**To:** █████████
**Cc:** imaad zuberi
**Subject:** RE: Invite
**Importance:** High

Dear Mike,

It was great seeing in chicago and it is always great to see you. You are a real good man and as Imad says " you are something else". I hope to be in DC by 30th of November and I am waiting for Imad to confirm more things. I would love to attend the 12th december party. It is an honor for me to be there.

Regards,

Sam

_____

From: █████████████████
To: █████████
CC: ███████████████
Subject: Invite
Date: Tue, 20 Nov 2012 22:26:37 -0800

Hi Sam! It was great to see you in Chicago. Hope you are doing well. Attached is the invitation for your holiday party along w/ RSVP information. This information is non-transferable and only valid for yourself and one guest. Let me know if you have any questions!

Thank you!



CONFIDENTIAL

00008148

Exhibit 17



FOREIGN AFFAIRS COMMITTEE
SUBCOMMITTEE ON AFRICA, GLOBAL HEALTH,
GLOBAL HUMAN RIGHTS AND
INTERNATIONAL ORGANIZATIONS

JUDICIARY COMMITTEE
SUBCOMMITTEE ON COURTS, INTELLECTUAL
PROPERTY AND THE INTERNET
SUBCOMMITTEE ON CRIME, TERRORISM,
HOMELAND SECURITY AND INVESTIGATIONS

WWW.BASS.HOUSE.GOV

WASHINGTON OFFICE:
408 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
202-225-7084

DISTRICT OFFICE:
4929 WILSHIRE BLVD. SUITE 650
LOS ANGELES, CA 90010
323-965-1422

## KAREN BASS
### CONGRESS OF THE UNITED STATES
37TH DISTRICT, CALIFORNIA

January 16, 2014

His Excellency Khalid bin Ahmad Al Khalifa
Minister of Foreign Affairs, Kingdom of Bahrain
P.O. Box 547
Government Road
Manama, Kingdom of Bahrain

Dear Excellency:

I write today because I am concerned about recent reports of American investors, like Avenue Ventures, who have encountered interference in their business from sources possibly connected to the Government of Bahrain.

The Kingdom of Bahrain and the United States have a longstanding and mutually supportive relationship which includes substantial security, economic, diplomatic, and cultural ties. With this relationship in mind, I ask your Excellency's Government to ensure that U.S. investors and the projects in which they are involved not be subjected to impediments originating beyond the country's established legal system and accepted international business practices.

I encourage the development of growing bilateral commercial relations while ensuring that our citizens and their companies receive fair, open and transparent treatment in Bahrain.

I thank you for your time and attention to this issue and I look forward to continuing to a build strong relationship between the American and Bahraini people.

Sincerely,

Karen Bass
MEMBER OF CONGRESS

cc: The Honorable Thomas C. Krajeski

Exhibit 18

COMMITTEES:

COMMITTEE ON THE BUDGET

COMMITTEE ON OVERSIGHT AND
GOVERNMENT REFORM
SUBCOMMITTEES:
ENERGY POLICY, HEALTHCARE AND
ENTITLEMENTS

COMMITTEE ON
NATURAL RESOURCES
SUBCOMMITTEES:
INDIAN AND ALASKA NATIVE AFFAIRS
ENERGY AND MINERAL RESOURCES
WATER AND POWER



## Tony Cárdenas
## Congress of the United States
### 29th District, California

WASHINGTON OFFICE:
1508 LONGWORTH HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
P (202) 225-6131
F (202) 225-0819

DISTRICT OFFICE:
9300 LAUREL CANYON BOULEVARD, 2ND FLOOR
ARLETA, CA 91331
P (818) 504-0090
F (818) 504-0280

January 23, 2014

His Excellency Khalid bin Ahmad Al Khalifa
Minister of Foreign Affairs, Kingdom of Bahrain
P.O. Box 547
Government Road
Manama, Kingdom of Bahrain

Dear Excellency:

I write today to express my concern regarding recent reports from American investors about interference and mistreatment from sources with possible connections to the Government of Bahrain.

I ask your Excellency's Government to ensure that U.S. investors and the projects in which they are involved not be subjected to harassment or impediments originating beyond the country's established legal system and accepted international business practices.

I appreciate the enduring and mutually supportive relationship between the Kingdom of Bahrain and the United States including the substantial security, economic, diplomatic, and cultural ties. I hope that our ties remain strong into the future. I continue to support developing bilateral commercial relations while ensuring that our citizens and their companies receive fair, open and transparent treatment in Bahrain.

Thank you for your time and attention to this issue and I look forward to a lasting relationship between the American and Bahraini people.

Sincerely,

TONY CÁRDENAS
Member of Congress

Exhibit 19

ANDRÉ CARSON
7TH DISTRICT, INDIANA

COMMITTEE ON ARMED SERVICES
SUBCOMMITTEE ON INTELLIGENCE, EMERGING
THREATS AND CAPABILITIES
SUBCOMMITTEE ON STRATEGIC FORCES

COMMITTEE ON TRANSPORTATION
AND INFRASTRUCTURE
SUBCOMMITTEE ON HIGHWAYS AND
TRANSIT
SUBCOMMITTEE ON AVIATION

2453 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-1407
(202) 225-4011

DISTRICT OFFICE
300 E FALL CREEK PKWY N DR. #300
INDIANAPOLIS, IN 46205
(317) 283-6516

SENIOR WHIP

# Congress of the United States
## House of Representatives
### Washington, DC 20515-1407

January 22, 2014

His Excellency Khalid bin Ahmad Al Khalifa
Minister of Foreign Affairs, Kingdom of Bahrain
P.O. Box 547
Government Road
Manama, Kingdom of Bahrain

Dear Excellency:

For years, the American and Bahraini people have cultivated a mutually supportive relationship, based on substantial security, economic, diplomatic and cultural ties. Successful continuation of this friendship is critical to the growth and advancement of our two countries and should be a top priority for both of our governments.

Unfortunately, American investors with substantial participation in Bahraini development have reported encountering interference and harassment from sources linked to the Government of Bahrain. I ask your Excellency's Government to ensure that U.S. investors and the projects in which they are involved are not subjected to harassment or impediments originating beyond the country's established legal system and accepted international business practices.

I encourage growing bilateral commercial relations while ensuring that our citizens and their companies receive fair, open and transparent treatment in Bahrain.

I thank you in advance for your time and attention to this matter. I look forward to our continued cooperation to strengthen ties between the American and Bahraini people.

Sincerely,

André Carson
Member of Congress

cc: The Honorable Thomas C. Krajeski

# Exhibit 20

DAVID N. CICILLINE
1ST DISTRICT, RHODE ISLAND

128 CANNON BUILDING
WASHINGTON, D.C. 20515
(202) 225–4911
(202) 225–3290 (FAX)

1070 MAIN STREET, SUITE 300
PAWTUCKET, RI 02860
(401) 729–5600
(401) 729–5608 (FAX)



COMMITTEE ON THE BUDGET

COMMITTEE ON FOREIGN AFFAIRS
SUBCOMMITTEE ON MIDDLE EAST
AND NORTH AFRICA
SUBCOMMITTEE ON AFRICA, GLOBAL HEALTH,
GLOBAL HUMAN RIGHTS, AND
INTERNATIONAL ORGANIZATIONS

# Congress of the United States
## House of Representatives
### Washington, DC 20515

January 27, 2014

His Excellency Khalid bin Ahmad Al Khalifa
Minister of Foreign Affairs, Kingdom of Bahrain
P.O. Box 547
Government Road
Manama, Kingdom of Bahrain

Dear Your Excellency:

I am writing to express my concern over reports of harassment and interference in the business affairs of U.S. investors by sources associated with the Government of Bahrain.

The United States and the Kingdom of Bahrain enjoy a longstanding, mutually beneficial relationship. This relationship has been strengthened over the years by mutual economic, diplomatic, and security interests. Bearing this in mind, I ask that his Excellency's Government take steps to ensure that U.S. investors, as well as the projects in which they are involved, are not subjected to interference, or impediment, beyond the established legal system of the Government of Bahrain and accepted international business practices.

I encourage the growing bilateral economic relationship between our nations, while ensuring that our citizens and their companies continue to receive open and fair treatment.

I thank you for your attention to this matter, and look forward to continued strong relations between the American and Bahraini people.

Warm regards,

David N. Cicilline
*Member of Congress*

Exhibit 21

EDWARD R. ROYCE, CALIFORNIA
CHAIRMAN

CHRISTOPHER H. SMITH, NEW JERSEY
ILEANA ROS-LEHTINEN, FLORIDA
DANA ROHRABACHER, CALIFORNIA
STEVE CHABOT, OHIO
JOE WILSON, SOUTH CAROLINA
MICHAEL T. McCAUL, TEXAS
TED POE, TEXAS
MATT SALMON, ARIZONA
TOM MARINO, PENNSYLVANIA
JEFF DUNCAN, SOUTH CAROLINA
ADAM KINZINGER, ILLINOIS
MO BROOKS, ALABAMA
TOM COTTON, ARKANSAS
PAUL COOK, CALIFORNIA
GEORGE HOLDING, NORTH CAROLINA
RANDY K. WEBER SR., TEXAS
SCOTT PERRY, PENNSYLVANIA
STEVE STOCKMAN, TEXAS
RON DeSANTIS, FLORIDA
TREY RADEL, FLORIDA
DOUG COLLINS, GEORGIA
MARK MEADOWS, NORTH CAROLINA
TED S. YOHO, FLORIDA
LUKE MESSER, INDIANA

AMY PORTER          THOMAS SHEEHY
CHIEF OF STAFF      STAFF DIRECTOR



**One Hundred Thirteenth Congress**
**U.S. House of Representatives**
**Committee on Foreign Affairs**
2170 Rayburn House Office Building
Washington, DC  20515
www.foreignaffairs.house.gov

ELIOT L. ENGEL, NEW YORK
RANKING DEMOCRATIC MEMBER

ENI F.H. FALEOMAVAEGA, AMERICAN SAMOA
BRAD SHERMAN, CALIFORNIA
GREGORY W. MEEKS, NEW YORK
ALBIO SIRES, NEW JERSEY
GERALD E. CONNOLLY, VIRGINIA
THEODORE E. DEUTCH, FLORIDA
BRIAN HIGGINS, NEW YORK
KAREN BASS, CALIFORNIA
WILLIAM KEATING, MASSACHUSETTS
DAVID CICILLINE, RHODE ISLAND
ALAN GRAYSON, FLORIDA
JUAN VARGAS, CALIFORNIA
BRADLEY S. SCHNEIDER, ILLINOIS
JOSEPH P. KENNEDY III, MASSACHUSETTS
AMI BERA, CALIFORNIA
ALAN S. LOWENTHAL, CALIFORNIA
GRACE MENG, NEW YORK
LOIS FRANKEL, FLORIDA
TULSI GABBARD, HAWAII
JOAQUIN CASTRO, TEXAS

JASON STEINBAUM
DEMOCRATIC STAFF DIRECTOR

January 15, 2014

His Excellency Khalid bin Ahmad Al Khalifa
Minister of Foreign Affairs, Kingdom of Bahrain
P.O. Box 547
Government Road
Manama, Kingdom of Bahrain

Dear Excellency:

I recognize the longstanding and mutually supportive relationship between the Kingdom of Bahrain and the United States.  The American and Bahraini relationship includes substantial security, economic, diplomatic, and cultural ties.

In this regard, I am very troubled by reports of American investors with substantial participation in a Bahraini development who have encountered interference and harassment from sources linked to the Government of Bahrain.  I ask your Excellency's Government to ensure that U.S. investors and the projects in which they are involved not be subjected to harassment or impediments originating beyond the country's established legal system and accepted international business practices.

It is our intention to encourage growing bilateral commercial relations while ensuring that our citizens and their companies receive fair, open and transparent treatment in Bahrain.

I thank you in advance for your time and attention to my concerns.  I look forward to continuing to build stronger ties between the American and Bahraini people.

Sincerely,

ELIOT L. ENGEL
Ranking Member

cc: The Honorable Thomas C. Krajeski

Exhibit 22



**BRAD SHERMAN**
**UNITED STATES CONGRESS**

January 17, 2014

PH: (202) 225-5911
FAX: (202) 225-5879

H.E. Khalid bin Ahmed bin Mohamed Al Khalifa
Minister of Foreign Affairs, Kingdom of Bahrain
Government Road
Manama, Kingdom of Bahrain

Dear Excellency,

I recognize the longstanding and mutually supportive relationship between the Kingdom of Bahrain and the United States.  The American and Bahraini relationship includes substantial security, economic, diplomatic, and cultural ties.

In this regard, I am troubled by reports of American investors with substantial participation in a Bahraini development who claim that they have encountered interference from sources linked to the Government of Bahrain.  I ask your Excellency's Government to ensure that U.S. investors, and the projects in which they are involved, are treated in accordance with the laws of Bahrain and international commercial conventions.

It is our intention to encourage growing bilateral commercial relations while ensuring that our citizens and their companies receive fair, open and transparent treatment in Bahrain.

I thank you in advance for your time and attention to my concerns. I look forward to continuing to build stronger ties between the American and Bahraini people.

Sincerely,

Brad Sherman
Ranking Member – Subcommittee on Terrorism,
Nonproliferation, and Trade
House Foreign Affairs Committee

Cc: The Honorable Thomas C. Krajeski
    U.S. Ambassador to Bahrain

RECYCLED PAPER

Exhibit 23

DEBBIE WASSERMAN SCHULTZ
23RD DISTRICT, FLORIDA

CHIEF DEPUTY WHIP

COMMITTEES:
COMMITTEE ON APPROPRIATIONS
RANKING MEMBER
SUBCOMMITTEE ON LEGISLATIVE BRANCH
SUBCOMMITTEE ON STATE, FOREIGN OPERATIONS

STEERING AND POLICY COMMITTEE

# Congress of the United States
## House of Representatives
### Washington, DC 20515–0923

WASHINGTON OFFICE:
118 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515–0923
(202) 225–7931
(202) 226–2052 (FAX)

DISTRICT OFFICES:
10100 PINES BOULEVARD
PEMBROKE PINES, FL 33026
(954) 437–3936
(954) 437–4776 (FAX)

19200 WEST COUNTRY CLUB DRIVE
THIRD FLOOR
AVENTURA, FL 33180
(305) 936–5724
(305) 932–9664 (FAX)

February 18, 2014

His Excellency Khalid bin Ahmad Al Khalifa
Minister of Foreign Affairs, Kingdom of Bahrain
P.O. Box 547
Government Road
Manama
Kingdom of Bahrain

Dear Minister Al Khalifa:

Bahrain and the United States enjoy a very productive and positive bilateral relationship. We have a record of strong cooperation on matters relating to security and economics, as well as enjoying good general diplomatic and cultural ties.

Because of these shared interests and history of our mutually beneficial relationship, I am dismayed to have heard recently that some U.S. investors have been facing harassment and interference in Bahrain. I respectfully ask that your Excellency take steps to ensure that U.S. investors are able to pursue their investment projects without being subject to interference or impediment beyond the established legal Bahraini framework and international business and trade norms.

I am pleased to see growing economic and cultural ties between our countries and would hope that American investors are able to continue working with respect and fair treatment.

Thank you very much for your attention to this matter and your continued commitment to the U.S.-Bahraini relationship.

Regards,

Debbie Wasserman Schultz
Member of Congress

Exhibit 24

**ROBERT P. CASEY, JR.**
PENNSYLVANIA

COMMITTEES:
AGRICULTURE, NUTRITION,
AND FORESTRY
FINANCE
HEALTH, EDUCATION,
LABOR, AND PENSIONS
SPECIAL COMMITTEE ON AGING
JOINT ECONOMIC

# United States Senate

WASHINGTON, DC 20510

January 21, 2014

His Excellency Shaikh Khalid bin Ahmed Al-Khalifa
Ministry of Foreign Affairs
Government Avenue
Manana
Kingdom of Bahrain

Dear Minister Al Khalifa:

I am writing to express my concern about recent reports from American investors and
companies, which have encountered interference from sources possibly connected with the
Government of Bahrain.

The strategic relationship between the United States and the Kingdom of Bahrain has been a
pillar of U.S. national security strategy in the region. Efforts to broaden economic ties between
our two countries should be encouraged. I ask that your Excellency's Government make every
effort to ensure that U.S. investors and the projects in which they are involved in Bahrain not be
subjected to interference or impediments beyond accepted international business practices or the
established requirements of your country's legal system. American firms are also expected to
abide by U.S. and international law while conducting business abroad.

The development of bilateral commercial relations can be mutually beneficial to both the United
States and the Kingdom of Bahrain. I thank you for your time and attention to this matter.

Sincerely,

Robert P. Casey Jr.
United States Senator

Exhibit 25

## STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT (the "Agreement"), is made and entered into as of the 30th April, 2013 (the "Effective Date"), by and between Avenue Ventures, LLC, a Delaware limited liability company ("Buyer" which expression shall be deemed to include any special purpose company established by the Buyer solely for the purposes of performing its obligations under this Agreement), and International Stream Investments Private Limited, a Singapore company ("Seller").

## RECITALS

A.   The Seller is the owner of approximately thirty five percent (35%) of the ordinary shares of Alareen Holding Company, BSC(c), a Bahrain closed joint stock company (the "Company").

B.   The Seller desires to sell to Buyer, and Buyer desires to purchase from the Seller, all of the ordinary shares of the Company held by the Seller.

NOW, THEREFORE, in consideration of the mutual promises, representations, warranties, covenants and agreements contained herein, the parties hereto, intending to be legally bound, hereby agree as follows:

## ARTICLE 1

## THE TRANSACTION

**1.1.   Sale and Purchase of Shares.**   At the Closing, upon the terms and subject to the conditions of this Agreement, Seller shall sell to Buyer, and Buyer shall purchase from Seller, Sixteen Million One Hundred Forty-Six Thousand (16,146,000) shares of the ordinary shares of the Company ("Purchased Shares") held by Seller.

**1.2.   Closing.**   The closing of the sale of the Purchased Shares (the "Closing") shall take place at the office of the Notary Public of the Kingdom of Bahrain on a date that is mutually acceptable to the Buyer and Seller upon the satisfaction of all conditions to closing (the "Closing Date") at which a share transfer declaration (the "Declaration") (the form and content of which is prescribed by the Ministry of Industry and Commerce of the Kingdom of Bahrain) effecting the transfer of the Purchased Shares shall be executed by the Buyer and the Seller.

## ARTICLE 2

## REPRESENTATIONS AND WARRANTIES OF SELLER

The Seller hereby represents and warrants to Buyer that:

**2.1.   Authorization and Validity of Agreement.**   Seller has all requisite power and authority to execute and deliver this Agreement and to carry out and perform its obligations under the terms of the Transaction Documents.  All action on the part of Seller necessary for the authorization, execution, delivery and performance of the Transaction Documents, and the performance of all of Seller's obligations under the Transaction Documents, have been taken or will be taken prior to the Closing.  The Transaction Documents, when executed and delivered by Seller, will constitute valid

1

and legally binding obligations of Seller, enforceable in accordance with their terms, except that (i) such enforcement may be subject to any bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer or other laws, now or hereafter in effect, relating to or limiting creditors' rights generally; (ii) the remedy of specific performance and injunctive and other forms of equitable relief, may be subject to equitable defenses and to the discretion of the court before which any proceeding therefore may be brought; and (iii) such enforcement is subject to the receipt of all necessary approvals and consents required in respect of the transfer of the Purchased Shares.

**2.2.    Ownership of Shares**.  Seller is the sole beneficial and record owner of all of the Purchased Shares, and at the Closing, Seller will sell and convey to Buyer all of the Purchased Shares, free and clear of any liens, other than restrictions imposed by applicable securities laws which do not constitute an impediment to the transfer of such shares to Buyer pursuant to this Agreement. Seller has not, and as of the Closing, Seller shall not have, sold or otherwise disposed of, or granted any options or rights to purchase, and Seller has not, and as of the Closing, shall not have, entered into any agreement obligating Seller to sell or otherwise dispose of, or to grant options or rights to purchase, any of such Purchased Shares, except to Buyer.

**2.3.    No Violation**.  The execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated hereby do not and will not (i) contravene or conflict with or constitute a violation of any provision of any law, judgment, injunction, order or decree binding upon or applicable to Seller, (ii) require the consent or other action of any Person under, constitute a default under, or give rise to any right of termination, cancellation or acceleration of any right or obligation of Seller or to a loss of any benefit to which Seller is entitled under any provision of any agreement or other instrument binding upon Seller; or (iii) result in the creation or imposition of any lien on any of the Purchased Shares.

## ARTICLE 3

## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that:

**3.1.    Authorization**.  Buyer has the full power and authority to execute and deliver the Transaction Documents to which he is or will be a party and to consummate the transactions contemplated hereby and thereby.  The Transaction Documents, when executed and delivered by Buyer, constitute a valid and binding agreement of Buyer, enforceable against Buyer in accordance with their respective terms, except that (a) such enforcement may be subject to any bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer or other laws, now or hereafter in effect, relating to or limiting creditors' rights generally, and (b) the remedy of specific performance and injunctive and other forms of equitable relief, may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

**3.2.    Governmental Consent**.  No consent, approval or authorization of or designation, declaration or filing with any governmental authority on the part of Buyer is required in connection with the valid execution and delivery of this Agreement, or the consummation of any other transaction contemplated by this Agreement.

**3.3.    No Violations**.  Neither the execution, delivery and performance of this Agreement by Buyer nor the consummation by Buyer of the transactions contemplated hereby will (a)  result in a

2

violation or breach of, or constitute (with or without due notice or lapse of time or both) a default under, any of the terms, conditions or provisions of any note, bond, mortgage, indenture, lease, license, contract, agreement or other instrument or obligation to which Buyer is a party or (b) violate any order, writ, injunction, decree or law applicable to Buyer.

**3.4.    Financial Ability.**  Buyer expects to be able to perform its financial obligations under this Agreement and is not aware of any reason or cause, actual or threatened, that would impair Buyer's ability to perform such financial obligations.

## ARTICLE 4

## COVENANTS OF THE PARTIES

**4.1.    Reasonable Efforts.**  The parties further agree to use commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other parties in doing, all things necessary, proper or advisable to consummate and make effective, in the most expeditious manner practicable, the transactions contemplated by this Agreement, including (A) the obtaining of all other necessary actions or nonactions, waivers, consents, licenses, permits, authorizations, orders and approvals from governmental authorities and the making of all other necessary registrations and filings, (B) the obtaining of all consents, approvals or waivers from third parties related to or required in connection with the transactions contemplated by this Agreement, (C) the satisfaction of all conditions precedent to the parties' obligations hereunder, and (D) the execution and delivery of any additional instruments necessary to consummate the transactions contemplated by, and to fully carry out the purposes of, this Agreement.

## ARTICLE 5

## CONDITIONS TO BUYER'S OBLIGATIONS

The obligation of Buyer to effect the transaction contemplated hereby shall be subject to the fulfillment, at or prior to the Closing, of the following additional conditions:

**5.1.    Representations and Warranties True at the Closing.**  The representations and warranties of Seller contained in this Agreement shall be deemed to have been made again at and as of the Closing and shall then be true and correct in all material respects.

**5.2.    Performance.**  The obligations of Seller to be performed on or before the Closing shall have been duly performed at such Closing.

**5.3.    Assignment of the Shares.**  Seller shall have delivered to Buyer a standard share transfer form that is enforceable under the laws of the Kingdom of Bahrain, properly notarized and registered with the Kingdom of Bahrain, whereby the Purchased Shares are assigned to Buyer.

3

## ARTICLE 6

## CONDITIONS TO SELLER'S OBLIGATIONS

The obligation of Seller to effect the transaction contemplated hereby shall be subject to the fulfillment, at or prior to the Closing, of the following additional conditions:

**6.1.     Representations and Warranties True at the Closing**.  The representations and warranties of Buyer contained in this Agreement shall be deemed to have been made again at and as of the Closing and shall then be true and correct in all material respects.

**6.2.     Buyer's Performance**.  Each of the obligations of Buyer to be performed by it on or before the Closing pursuant to the terms of this Agreement shall have been duly performed at such Closing.

## ARTICLE 7

## SURVIVAL OF REPRESENTATIONS AND WARRANTIES

All representations and warranties of the parties contained in this Agreement shall survive the Closing Date, indefinitely.

## ARTICLE 8

## GENERAL PROVISIONS

**8.1.     Notices**.  All notices required or permitted hereunder shall be in writing and shall be deemed effectively given:  (a) upon personal delivery to the party to be notified; (b) when sent by confirmed facsimile if sent during normal business hours of the recipient, if not, then on the next business day; (c) five days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (d) two days after deposit with a nationally recognized overnight courier, specifying two day delivery, with written verification of receipt.  All communications shall be sent to the parties at the following addresses or facsimile numbers specified below (or at such other address or facsimile number for a party as shall be designated by ten days advance written notice to the other party hereto):

      **(a)**    If to Buyer:

            Avenue Ventures, LLC
            [ ]

      **(b)**    If to Seller:



4

International Stream Investments Private Limited
[ ]

**8.2.    Amendments and Waivers**.  Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and is signed by the party against whom such amendment or waiver is to be effective.

**8.3.    Failure or Indulgence Not Waiver; Remedies Cumulative**.  No failure or delay on the part of any party hereto in the exercise of any right hereunder shall impair such right or be construed to be a waiver of, or acquiescence in, any breach of any representation, warranty or agreement herein, nor shall any single or partial exercise of any such right preclude other or further exercise thereof or of any other rights.   Except as otherwise provided hereunder, all rights and remedies existing under this Agreement are cumulative to, and not exclusive of, any rights or remedies otherwise available.

**8.4.    Headings**.  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**8.5.    Severability**.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law, or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner adverse to any party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible, in a mutually acceptable manner, to the end that transactions contemplated hereby are fulfilled to the extent possible.

**8.6.    Entire Agreement**.  This Agreement (together with the Transaction Documents and the exhibits and schedules attached hereto and the certificates referenced herein) constitutes the entire agreement and supersedes all prior agreements and undertakings both oral and written, among the parties, or any of them, with respect to the subject matter hereof and, except as otherwise expressly provided herein.

**8.7.    Assignment**.  No party may assign this Agreement or assign its respective rights or delegate their duties, without the prior written consent of the other party.  This Agreement will be binding upon, inure to the benefit of and be enforceable by the parties and their respective permitted successors and assigns.

**8.8.    Parties In Interest**.  This Agreement shall be binding upon and inure solely to the benefit of each party hereto, and nothing in this Agreement, express or implied, is intended to or shall confer upon any other Person any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement, including, without limitation, by way of subrogation.

**8.9.    Governing Law**.  This Agreement will be governed by, and construed and enforced in accordance with the laws of the United States, State of California, as applied to contracts that are executed and performed in California, without regard to the principles of conflicts of law thereof. Each party hereby irrevocably submits to the exclusive jurisdiction of courts sitting in Orange County, California for the adjudication of any dispute hereunder or in connection herewith or with

DOCSOC/1654881v4/101630-0002

any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is improper. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof to such party at the address in effect for notices to it under this Agreement and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law.

**8.10.    Counterparts**.  This Agreement may be executed in one or more counterparts, and by the different parties hereto in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.  This Agreement shall become effective when counterparts have been signed by each of the parties and delivered by facsimile or other means to the other party.  Any party who delivers a signature page via facsimile agrees to later deliver an original counterpart to all other parties.

**8.11.    Gender**.  For purposes of this Agreement, references to the masculine gender shall include feminine and neuter genders and entities.

*[Remainder of Page Intentionally Left Blank; Signature Page to Follow]*



DOCSOC/1654881v4/101630-0002

IN WITNESS WHEREOF, the parties have caused this Stock Purchase Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**BUYER:**

**AVENUE VENTURES, LLC**

████████████████████

Name: _Imaad Zuberi_

Its: _Partner_

**SELLER:**

**INTERNATIONAL STREAM INVESTMENTS PRIVATE LIMITED**

███████████████████████████████████

Name: ___Esam Janahi_____

Its: _____

**EXHIBIT A**

**CERTAIN DEFINITIONS**

The following terms, as used in the Stock Purchase Agreement, have the following meanings:

"Transaction Documents" means this Agreement, the Declaration, and any other document executed and delivered pursuant hereto together with any exhibits or schedules to such documents.