1  Ashwin J. Ram (SBN 277513)
2  *aram@steptoe.com*
   **STEPTOE & JOHNSON LLP**
3  633 West Fifth Street, Suite 1900
   Los Angeles, California 90071
4  Telephone:  (213) 439-9400
   Facsimile:  (213) 439-9599
5
6  *Attorney for Defendant Imaad Shah Zuberi*
7
8           **UNITED STATES DISTRICT COURT**
9           **CENTRAL DISTRICT OF CALIFORNIA**

10  UNITED STATES OF AMERICA,       Case No.: 2:19-cr-00642-VAP
                                         No.: 2:20-cr-00155-VAP
11            Plaintiff,
                                    **MEMORANDUM OF POINTS AND**
12     v.                           **AUTHORITIES IN SUPPORT OF**
                                    **MOTION TO EXTEND**
13  IMAAD SHAH ZUBERI,              **SURRENDER DATE**

14            Defendant.            [*Notice of Motion; Declaration of*
15                                  *Shaun S. Daneshrad, M.D.; Declaration*
                                    *of Ashwin J. Ram; and [Proposed]*
16                                  *Order filed concurrently herewith*]
17
                                    The Honorable Virginia A. Phillips
18
19                                  Date:  May 3, 2021
                                    Time: 9:00 a.m.
20                                  Ctrm: 8A
21
22
23
24
25
26
27
28
─────────────────────────────────────────────
                MOTION TO EXTEND SURRENDER DATE

# **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ..................................................................1

II.    PROCEDURAL BACKGROUND ..............................................................1

III.   DISCUSSION ............................................................................................3

      A.     This Court should extend Mr. Zuberi's reporting date by 90 days to prevent extraordinary risk to his health.................................................3

            1.     COVID-19 continues to spread and presents a high risk to health in California federal prisons............................................5

            2.     The risk of COVID-19 is increasing with the spread of new variants ..................................................................................7

            3.     Mr. Zuberi has multiple comorbidities that put him at risk for severe COVID-19 complications...........................................11

      B.     The Court should also extend self-reporting to allow Mr. Zuberi's appellate counsel to review the full record and submit a fully-briefed motion for bail pending appeal .......................................................12

IV.    CONCLUSION .......................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*United States v. Ahuja*,
    Case No. 1:18-cr-00328-KPF, Doc. 351
    (S.D.N.Y. March 17, 2020) ...................................................................3

*United States v. Avenatti*,
    No. 19-cr-61 (C.D. Cal. Mar. 25, 2020) ..............................................4

*United States v. Blecka*,
    No. 19-cr-311-WHA (N.D. Cal. Mar. 27, 2020) ..................................4

*United States v. Curry*,
    No. 19-cr-3839-GPC (S.D. Cal. Mar. 27, 2020) ..................................4

*United States v. Daniels*,
    No. 19-cr-00709-LHK (NC), 2020 WL 1815342
    (N.D. Cal. Apr. 9, 2020) .....................................................................5

*United States v. Garlock*,
    No. 18-CR-00418-VC-1, 2020 WL 1439980
    (N.D. Cal. Apr. 25, 2020) ................................................................3, 4

*United States v. Magana*,
    No. 19-CR-2581 (DMS), Doc. 81 (S.D. Cal. Nov. 05, 2020) ..............3

*United States v. Magana*,
    No. 19-CR-2581 (DMS), Doc. 89 (S.D. Cal. Apr. 1, 2021) ................4

*United States v. Matthaei*,
    No. 19-CV-00243-BLW, 2020 WL 1443227
    (D. Idaho Mar. 16, 2020) ...................................................................4

*United States v. McCoy*,
    No. 19-cr-000067-JD, Dkt. 94-2 (N.D. Cal. April 6, 2020) ...............5

*United States v. Perez*,
    No. 19 CR 297 (PAE), 2020 WL 1329225
    (S.D.N.Y. Mar. 19, 2020) ...................................................................3

MOTION TO EXTEND SURRENDER DATE

**Statutes**

Classified Information Procedure Act ..................................................2

U.S.S.G. § 3C1.1 ...................................................................13

U.S.S.G. § 3E1.1 ...................................................................13

U.S.S.G. § 3E1.1(a) ................................................................13

U.S.S.G. § § 3E1.1(b) ..............................................................13

**Other Authorities**

*About Variants of the Virus that Cause COVID-19*, Centers for
      Disease Control and Prevention,
      https://www.cdc.gov/coronavirus/2019-
      ncov/transmission/variant.html (last accessed Apr. 5, 2021)............................8

*California Coronavirus Map and Case Count*, New York Times,
      https://www.nytimes.com/interactive/2020/us/california-
      coronavirus-
      cases.html?action=click&module=covid_tracking&pgtype=Intera
      ctive&region=TableRowLink (last accessed Mar. 11, 2021) .........................10

*CDC Confirms Possible First Instance of COVID-19 Community
      Transmission in California*, California Dept. of Public Health,
      https://www.cdph.ca.gov/Programs/OPA/Pages/NR20-006.aspx
      (last accessed Mar. 11, 2021) ................................................7

Center for Disease Control and Prevention (June 25, 2020)
      https://www.cdc.gov/media/releases/2020/p0625-update-expands-
      covid-19.html ...........................................................11

*COVID-19 Inmate Test Information*, Federal Bureau of Prisons,
      COVID-19 Coronavirus page, https://www.bop.gov/coronavirus
      (as of Apr. 2, 2021; last accessed Apr. 5, 2021)..........................6, 7

Federal Bureau of Prisons, https://www.bop.gov/coronavirus/
      (last accessed Apr. 5, 2021) ................................................6

Federal Bureau of Prisons, *Program Statement 5100.08: Inmate
      Security Designation and Custody Classifications*, (9/12/2006),
      https://www.bop.gov/policy/progstat/5100_008.pdf..........................6

Impact Report: COVID-19 and Prisons, National Commission on
  COVID-19 and Criminal Justice (Sept. 2, 2020)
  https://covid19.counciloncj.org/2020/09/02/covid-19-and-prisons ...................7

*Jemima McEvoy, Fauci: Virus Variant That's More Resistant To
  Vaccine Spreading 'Efficiently' In New York*, Forbes (Mar. 7,
  2021)
  https://www.forbes.com/sites/jemimamcevoy/2021/03/07/fauci-
  virus-variant-thats-more-resistant-to-vaccine-spreading-
  efficiently-in-new-york/?sh=2fde8bed5cc4 ......................................................10

Joseph A. Bick, Infection Control in Jails and Prisons, 45 Clinical
  Infections Diseases 1047 (Oct. 2007)...................................................................5

Kai Wu, et al., Serum Neutralizing Activity Elicited by mRNA-1273
  Vaccine — Preliminary Report, The New England Journal of
  Medicine (Feb. 17, 2021)
  https://www.nejm.org/doi/full/10.1056/NEJMc2102179....................................9

Lauren Leatherby and Scott Reinhard, *More Contagious Variants Is
  Spreading Fast in U.S., Even as Overall Cases Level Off*, New
  York Times (March 6, 2021)
  https://www.nytimes.com/interactive/2021/03/06/us/coronavirus-
  variant-sequencing.html ......................................................................................9

Luke Money, Maura Dolan, and Rong-Gong Lin II, *An apparent
  fourth wave of COVID-19 is centered in the East.  Will it hit
  California?*, Los Angeles Times (Apr. 4, 2021) ..................................................8

*Prison and Jails*, Center for Disease Control and Prevention
  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
  precautions/living-prisons-jails.html (last accessed Mar. 11, 2021)...................5

Ron DePasquale, Allyson Waller, Lauren Leatherby, Scott Reinhard
  and Pam Belluck, *The U.S. risks a new surge as variants spread
  and restrictions are relaxed, Fauci said.*, New York Times (Mar.
  7, 2021). https://www.nytimes.com/2021/03/07/world/covid-
  variant-us-cases.html ....................................................................................8, 10

*SARS-CoV-2 Variant Classifications and Definitions*,
  Centers for Disease Control and Prevention,
  https://cdc.gov/coronavirus/2019-ncov-cases-updates/variant-
  surveillance/variant-info.html (last accessed Apr. 5, 2021)...............................9

iv

*US COVID-19 Cases Caused by Variants*, Center for Disease Control
and Prevention, https://www.cdc.gov/coronavirus/2019-
ncov/transmission/variant-cases.html (last accessed Apr. 5, 2021 .................8, 9

U.S. Const., amend. V ......................................................................14

U.S. Const., amend. VI .....................................................................14

Zach Miller, *Biden, CDC director warn of virus rebound if nation
lets up*, The Washington Post (Mar. 29, 2021)....................................10

v

## I.     PRELIMINARY STATEMENT

Defendant Imaad Shah Zuberi, through counsel, respectfully moves the Court for an order extending his self-surrender date, due to the increased risk of serious health complications or death presented by the COVID-19 pandemic and Mr. Zuberi's multiple serious comorbidities. Mr. Zuberi has not yet been vaccinated. He is currently set to report to the Bureau of Prisons or the Marshals on May 25, 2020. The BOP has not yet designated a facility. Mr. Zuberi respectfully requests an extension of his report date for an additional 90 days, until August 23, 2021.

Mr. Zuberi's request to extend his report date is further supported by the time necessary for his new counsel to obtain security clearances, to enable them to evaluate the full record and present a fully briefed motion for release pending appeal.

The defense e-mailed the government shortly before filing this motion, but likely due to the fact that the email was sent after business hours, the government has not had an opportunity to take a position on the requested relief.

## II.     PROCEDURAL BACKGROUND

Mr. Zuberi was sentenced on February 18, 2021 to 144 months' imprisonment.[1] He is currently on release pending voluntary reporting, on $3 million bond and conditions including a curfew and electronic monitoring.[2] His current report date is May 25, 2021.[3]

---

[1] *See* Judgment, Dkt. 332, in No. CR-19-00642-VAP (entered Feb. 24, 2021) (also filed at Dkt. 87, in No. CR-20-00155-VAP).

[2] *See id.*; *see also* Sent. Tr. at 63-65, Dkt. 337, in No. CR-19-00642-VAP (Feb. 18, 2021) (also filed at Dkt. 89, in No. CR-20-00155-VAP).

[3] *See* Judgment at 2; Sent. Tr. at 64-65.

1    At sentencing, Mr. Zuberi's trial counsel asked for permission to petition

2 this Court for a potential extension of his self-reporting date if that were necessary

3 due to his health concerns, depending on how the COVID-19 pandemic

4 progressed.  This Court granted permission to seek such an extension.[4]

5    The Court further inquired whether there would be a motion for bail

6 pending appeal; trial counsel responded he did not have an answer yet.[5]

7    After sentencing, Mr. Zuberi obtained new counsel on appeal.[6]

8 Mr. Zuberi's new counsel does not yet have the security clearances required to

9 obtain and review the entire record, including materials submitted and reviewed

10 under the Classified Information Procedure Act, and the portion of the sentencing

11 hearing that was conducted under seal.  Counsel have variously applied, or are in

12 the process of applying, for security clearances to the U.S. Department of Justice

13 Litigation Security Group.  The approval of their security clearances is anticipated

14 to take at least through the first week of May 2021.

15    On his current conditions of release, Mr. Zuberi poses no flight or safety

16 risk, as the government acknowledged in proposing, and this Court found in

17 ordering, continued release pending self-reporting.[7]

18

19

20

21

22

23

24

---

25    [4] See Sent. Tr. at 64.

26    [5] See id.

27    [6] See Order granting application to substitute counsel, Dkt. 341, in No. CR-19-00642-VAP (also filed as Dkt. 93 in No. CR-20-00155-VAP).

28    [7] See Sent. Tr. at 58-59, 63-64.

2

## III. **DISCUSSION**

### A. **This Court should extend Mr. Zuberi's reporting date by 90 days to prevent extraordinary risk to his health**

Courts across California and the country have recognized the wisdom of extending self-surrender dates when COVID-19 poses a severe risk to the defendant's health or life. For example, see:

- *United States v. Magana*, Case No. 19-CR-2581 (DMS), Doc. 81 (S.D. Cal. Nov. 05, 2020) (extending self-surrender date because of risk presented by defendant's obesity, diabetes, and hypertension) (Declaration of Ashwin J. Ram ("Ram Decl."), ¶ 2, Ex. A);

- *United States v. Ahuja*, Case No. 1:18-cr-00328-KPF, Doc. 351 (S.D.N.Y. March 17, 2020) (granting a 45-day extension of defendant's surrender date because of the risk posed by the pandemic) (*Id*., ¶ 3, Ex. B);

- *United States v. Perez*, No. 19 CR 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19");

- *United States v. Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *2 (N.D. Cal. Apr. 25, 2020) ("To avoid adding to the chaos and creating unnecessary health risks, offenders who are on release and scheduled to surrender to the Bureau of Prisons in the coming months should, absent truly extraordinary circumstances, have their surrender dates extended until this public health crisis has passed.").

Although a number of those opinions came early in the pandemic, when the severity and spread was new and unknown, *e.g.*, *Garlock*, 2020 WL 1439980

3

1  (noting a year ago that "[b]y now it almost goes without saying that we should not

2  be adding to the prison population during the COVID-19 pandemic if it can be

3  avoided"),[8] the spread of COVID-19 in federal prisons, in California and

4  elsewhere, has gotten worse, not better.[9]  And courts have continued to recognize

5  the appropriateness of delaying reporting for defendants who are at high health

6  risk, particularly where they have not yet been vaccinated.  *See, e.g.*, *Magana*, No.

7  19-CR-2581 (DMS), Doc. 89 (S.D. Cal. Apr. 1, 2021) (extending continued

8  surrender date to July 2, 2021, where Magana, a San Diego resident, has not yet

9  been vaccinated) (Ram Decl., ¶ 4, Ex. C).[10]

10      Mr. Zuberi, who is 50 years old, has not yet been vaccinated.  He

11  anticipates being able to receive a vaccine in coming weeks, after more doses

12  becomes available for California residents.  His doctor reports that the vaccine

13  "will not be completely protective for about eight weeks after he receives his first

14  dose."[11]

15      Because COVID-19, including new, potentially riskier variants, continues

16  to spread in California federal prisons, and because Mr. Zuberi has a unique

17  combination of comorbidities that would put him at severe risk of complications,

18

---

19      [8] *See also United States v. Curry*, No. 19-cr-3839-GPC (S.D. Cal. Mar. 27,

20  2020) (extending surrender date); *United States v. Blecka*, No. 19-cr-311-WHA
    (N.D. Cal. Mar. 27, 2020) (same); *United States v. Matthaei*, No. 19-CV-00243-

21  BLW, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020) (same); *United States v.

22  Avenatti*, No. 19-cr-61 (C.D. Cal. Mar. 25, 2020) (sua sponte inviting defendant to
    move for reconsideration of a just-denied motion for release "[i]n light of the

23  evolving nature of the Covid-19 pandemic").

24      [9] *See* Subsection 1, *infra*.

25      [10] *See also id.* Doc. 86 (motion to extend self-surrender date from Jan. 5,

26  2021 to April 5, 2021); *id.* Doc. 87 (minute order granting motion); *id.* Doc. 88
    (motion to extend self-surrender date from April 5, 2021 to July 2, 2021).

27      [11] Declaration of Shaun Daneshrad, M.D., ¶ 8 (Apr. 5, 2021) ("Dr.

28  Daneshrad Decl.).

4

potentially including death, from COVID-19, this Court should extend his report date for another 90 days, until August 23, 2021.

### 1.    COVID-19 continues to spread and presents a high risk to health in California federal prisons

The dangers which COVID-19 presents to incarcerated individuals are well documented.  "[J]ails and prisons present extraordinarily dangerous conditions for the spread of the virus."[12]  "Because inmates live in close quarters, there is an extraordinarily high risk of accelerated transmission of COVID-19 within jails and prisons."[13]  And because "[i]nmates share small cells, eat together and use the same bathrooms and sinks," "social distancing in most facilities [is] virtually impossible ... compounded by inadequate sanitation, such as a lack of hand sanitizer or sufficient opportunities to wash hands."[14]  Moreover, inmates often may be sharing such close quarters with others who may have the virus but not be showing any symptoms.[15]  There is also the issue of staff and visitors unwittingly introducing the virus and the variants into the prison population.[16]  Inmates' risk of infection "in turn risks the wellbeing of jail staff, their families, and the wellbeing of jail staff, their families, and the general community."[17]

---

[12] *United States v. Daniels*, No. 19-cr-00709-LHK (NC), 2020 WL 1815342, at *3 (N.D. Cal. Apr. 9, 2020) (citing Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infections Diseases 1047 (Oct. 2007)).

[13] *Id.* (quoting *United States v. McCoy*, No. 19-cr-000067-JD, Dkt. 94-2, Ex. 2 (N.D. Cal. April 6, 2020) (Affidavit of Brie Williams, M.D., Professor of Medicine at UCSF with expertise in prison health issues).

[14] *Id.*

[15] *For People Living in Prison and Jails*, Center for Disease Control and Prevention https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/living-prisons-jails.html (last accessed Mar. 11, 2021).

[16] *Id.*

[17] *Daniels*, 2020 WL 1815342, at *3.

MOTION TO EXTEND SURRENDER DATE

These dangers have been reflected in BOP data.  As of April 2, 2021, there were 140,024 inmates in the custody of the BOP.[18]  Of the 109,062 inmates who have completed testing for COVID-19, 46,463 inmates—42.6% of those tested—have tested positive.[19]  46,881 inmates—33% of the current population—have recovered from COVID-19.[20]  228 inmates have died of COVID-19.

The numbers at the specific BOP institutions to which Mr. Zuberi may be sent are even more concerning.  The BOP has not yet designated a facility to which Mr. Zuberi must report.  Because of the length of his sentence, Mr. Zuberi's time to release, taking into account presumed good-time credit, is more than ten years.[21]  Under the BOP's security classification system, that length of sentence will (unless waived) result in a "Public Safety Factor" requiring his designation to a Low-Security, not Minimum-Security, facility.[22]  The two Low-Security institutions in Southern California are FCI Lompoc, and FCI Terminal Island.  If the BOP does not designate a facility by the time of Mr. Zuberi's report date, he is required to report to the U.S. Marshals, and likely would be held at MDC Los Angeles pending designation.

---

[18] "COVID-19 Cases," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (as of April 2, 2021; last accessed April 5, 2021).  These numbers do not include prison staff, who increase the number of COVID-19-infected individuals present in the close quarters of prison.

[19] "COVID-19 Inmate Test Information," *id.*

[20] "COVID-19 Cases," *id.*

[21] *See* Federal Bureau of Prisons, *Program Statement 5100.08: Inmate Security Designation and Custody Classifications*, Ch. 4, Page 6 (9/12/2006), https://www.bop.gov/policy/prReyesogstat/5100_008.pdf (last accessed April 5, 2021).

[22] *See id.*, Ch. 5, Pages 4, 9, 12.

6

The relevant COVID-19 numbers for FCI Lompoc, FCI Terminal Island, and MDC Los Angeles are as follows[23]:

|  | Inmates with Completed Tests[24] | Inmates with Positive Tests | Inmates Recovered from Covid-19 | Inmate Deaths |
|---|---|---|---|---|
| FCI Lompoc | 841 | 596 (70%) | 198 (24%) | 2 |
| FCI Terminal Island | 659 | 438 (66%) | 546 (83%) | 10 |
| MDC Los Angeles | 533 | 272 (51%) | 293 (55%) | 1 |

Most concerning, the prison environment leads not only to more COVID-19 infections, but also nearly twice the risk of death for those infected. Inmates in federal prison are 1.8 times (i.e., 180%) more likely to die from the disease once they acquire it as people who get the disease outside of prison.[25]

### 2. The risk of COVID-19 is increasing with the spread of new variants

In the thirteen months since COVID-19 community transmission was first detected in California,[26] new mutations of the virus have emerged that present higher transmissibility and greater risk of infection. The CDC has found five variants that "spread more easily and quickly than other variants, which may lead

---

[23] These numbers are obtained from the "COVID-19 Cases" totals and the "COVID-19 Inmate Test Information" listed by facility on the BOP's COVID-19 Coronavirus page, https://www.bop.gov/coronavirus (as of April 2, 2021; last accessed April 5, 2021).

[24] This number corresponds within one or two with the institution's total inmate population.

[25] *Impact Report: COVID-19 and Prisons*, National Commission on COVID-19 and Criminal Justice (Sept. 2, 2020) https://covid19.counciloncj.org/2020/09/02/covid-19-and-prisons.

[26] *CDC Confirms Possible First Instance of COVID-19 Community Transmission in California*, California Dept. of Public Health, https://www.cdph.ca.gov/Programs/OPA/Pages/NR20-006.aspx (last accessed Mar. 11, 2021).

7

to more cases of COVID-19."[27]  "An increase in the number of cases will put more strain on health care resources, lead to more hospitalizations, and potentially more deaths."[28]

One of these variants, B.1.1.7 ("the UK variant"), spreads more easily and quickly than other variants, and already accounts for more than *one-fifth* of new cases in the United States.[29]  Despite the number of total cases leveling off, the UK variant is doubling its share of all new U.S. cases about every ten days.[30]  As of April 5, California had detected 822 cases of the variant,[31] "the nation's fourth-highest number of cases tied to the U.K. variant."[32]  According to the CDC, preliminary studies suggest that the UK variant "may be associated with an increased risk of death compared to other variant viruses."[33]

---

[27] *About Variants of the Virus that Cause COVID-19*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant.html (last accessed Apr. 5, 2021).

[28] *Id.*

[29] Ron DePasquale, Allyson Waller, Lauren Leatherby, Scott Reinhard and Pam Belluck, *The U.S. risks a new surge as variants spread and restrictions are relaxed, Fauci said.*, New York Times (Mar. 7, 2021). https://www.nytimes.com/2021/03/07/world/covid-variant-us-cases.html

[30] *Id.*

[31] *US COVID-19 Cases Caused by Variants*, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant-cases.html (last accessed Apr. 5, 2021).

[32] Luke Money, Maura Dolan, and Rong-Gong Lin II, *An apparent fourth wave of COVID-19 is centered in the East.  Will it hit California?*, Los Angeles Times (Apr. 4, 2021).

[33] *US COVID-19 Cases Caused by Variants*, note 31, *supra*; *see also* Money et al., note 32, *supra* ("Hopefully, we'll be able to dodge this bullet, because this [U.K. strain] is a more transmissible strain and possibly a strain that causes more severe disease.") (quoting UC San Francisco epidemiologist Dr. George Rutherford).

8

In addition to the UK variant, two other variants are spreading globally—B.1.351 ("the South Africa variant") and P.1 ("the Brazil variant"). Both of these variants have already been detected in the United States.[34] While the South Africa and Brazil variants are currently circulating at lower levels than the UK variant, they pose a grave concern to the public. As public health expert Dr. Caitlin Rivers explained, these variants "have the potential to make our vaccines less effective."[35] Preliminary studies support Dr. Rivers's concern. Just recently, a study that was published in the New England Journal of Medicine found that the COVID vaccine produced fewer antibodies in response to the South Africa variant.[36]

Finally, two variants, B.1.427 and B.1.429, have emerged in California.[37] The CDC has classified these two California variants, like the U.K., South African, and Brazilian variants, as "Variants of Concern," noting that the California variants have a roughly 20% increased transmissibility,  and a "significant impact on neutralization by some, but not all, [Emergency Use Authorization] therapeutics."[38] Further studies are needed to determine the full impact of these variants.

---

[34] *US COVID-19 Cases Caused by Variants*, note 31, *supra*.

[35] Lauren Leatherby and Scott Reinhard, *More Contagious Variants Is Spreading Fast in U.S., Even as Overall Cases Level Off*, New York Times (March 6, 2021) https://www.nytimes.com/interactive/2021/03/06/us/coronavirus-variant-sequencing.html

[36] Kai Wu, et al., *Serum Neutralizing Activity Elicited by mRNA-1273 Vaccine — Preliminary Report*, The New England Journal of Medicine (Feb. 17, 2021) https://www.nejm.org/doi/full/10.1056/NEJMc2102179.

[37] *US COVID-19 Cases Caused by Variants*, note 31, *supra*.

[38] *SARS-CoV-2 Variant Classifications and Definitions*, Centers for Disease Control and Prevention, https://cdc.gov/coronavirus/2019-ncov-cases-updates/variant-surveillance/variant-info.html (last accessed Apr. 5, 2021).

9

These five variants may only be the start of the problem.  Recently, Dr. Anthony Fauci, the nation's leading infectious diseases official and a member of President Biden's coronavirus task force, told CBS's "Face the Nation" that a new COVID-19 variant found in New York has shown some resistance to antibody treatments and vaccines.  He explained this new variant appears to be spreading "pretty efficiently" through New York and beyond.[39]

The effect of the variants has already shown up in the number of daily infections.  While the number of new infections fell sharply in January and February, this trend abruptly ended in March as the number of new cases plateaued at around 60,000 new cases each day.[40] This number is close to the number of new cases experienced during the peak of last summer's surge. Dr. Fauci explained that this is a worrisome trend because the same trend happened in the United Kingdom just before the country saw about a 9% increase in cases.[41] More recently, CDC Director Rochelle Walensky expressed a very frank sense of "impending doom," and warned of the need for increased vigilance in the near future, to stave off a fourth surge of COVID-19 infections.[42]

---

[39] Jemima McEvoy, *Fauci: Virus Variant That's More Resistant To Vaccine Spreading 'Efficiently' In New York*, Forbes (Mar. 7, 2021) https://www.forbes.com/sites/jemimamcevoy/2021/03/07/fauci-virus-variant-thats-more-resistant-to-vaccine-spreading-efficiently-in-new-york/?sh=2fde8bed5cc4.

[40] *California Coronavirus Map and Case Count*, New York Times, https://www.nytimes.com/interactive/2020/us/california-coronavirus-cases.html?action=click&module=covid_tracking&pgtype=Interactive&region=TableRowLink (last accessed Mar. 11, 2021).

[41] Ron DePasquale, Allyson Waller, Lauren Leatherby, Scott Reinhard and Pam Belluck, *The U.S. risks a new surge as variants spread and restrictions are relaxed, Fauci said.*, New York Times (Mar. 7, 2021).

[42] Zach Miller, *Biden, CDC director warn of virus rebound if nation lets up*, The Washington Post (Mar. 29, 2021).

MOTION TO EXTEND SURRENDER DATE

### 3.    Mr. Zuberi has multiple comorbidities that put him at risk for severe COVID-19 complications

Mr. Zuberi has multiple health conditions that place him at a very high risk of severe and potentially fatal complications from COVID-19.

As his treating physician of nearly ten years has explained, Mr. Zuberi has type 2 diabetes, which has required interventions from several physicians.[43] Mr. Zuberi has struggled with diabetes for more than twenty years.  The CDC has identified type 2 diabetes as one of the serious underlying medical condition that "increase[s] [the] risk of severe illness" from COVID-19.[44]

Diabetes has also caused Mr. Zuberi to develop a condition called proteinuria which is a sign of deteriorating kidney function.[45]  This is an early sign of risk for progressive kidney failure and the possible future need for dialysis.[46] Both Dr. Daneshrad and the CDC have identified chronic kidney disease as another condition that poses a high risk of complications for COVID-19.[47]  "The more underlying medical conditions people have, the higher their risk."[48]

Mr. Zuberi also has heart issues that further put him at an increased risk. He has a heart arrhythmia that presents as a persistent tachycardia, "which further

---

[43] *See* Dr. Daneshrad Decl., ¶¶ 3-6; *see also* Letter from Dr. Shaun S. Daneshrad (Nov. 3, 2020), Dkt. 255-9 in CR-19-00642-VAP ("Dr. Daneshrad Ltr.").

[44] *CDC updates, expands list of people at risk of severe COVID-19 illness*, Center for Disease Control and Prevention (June 25, 2020) https://www.cdc.gov/media/releases/2020/p0625-update-expands-covid-19.html.

[45] *See* Dr. Daneshrad Decl., ¶ 6; Dr. Daneshrad Ltr., ¶ 1.

[46] *See* Dr. Daneshrad Decl., ¶ 6.

[47] *See id.*; *CDC updates, expands list of people at risk of severe COVID-19 illness*, Center for Disease Control and Prevention (June 25, 2020) https://www.cdc.gov/media/releases/2020/p0625-update-expands-covid-19.html.

[48] *Id.*

11

taxes his heart and heightens the risk of a severe COVID-19 case.  Pre-existing heart conditions are especially concerning because of the increasingly clear link between COVID-19 and heart attacks."[49]

\*        \*        \*

The past year has shown how quickly the virus can spread in prisons.  The general conditions in prisons combined with multiple variants that spread faster, are deadlier, and have shown resistance to the virus, pose a real danger for any individual.  For Mr. Zuberi, who has multiple comorbidities, the risk of severe illness or death warrants delaying his self-surrender date.  As his doctor explained, the presence of multiple comorbidities "increase[s] the likelihood that he would suffer severe, and potentially fatal, complications if he becomes ill from the COVID-19 virus."[50]

For this reason, Mr. Zuberi respectfully requests that this Court extend his self-surrender date by 90 days.

**B.   The Court should also extend self-reporting to allow Mr. Zuberi's appellate counsel to review the full record and submit a fully-briefed motion for bail pending appeal**

Extending Mr. Zuberi's report date would also allow time for his new counsel on appeal to obtain the security clearances necessary to review the entire record, in order to be able to brief a motion for bail pending appeal.

At sentencing, this Court inquired of Mr. Zuberi's trial counsel whether the defense anticipated moving for bail pending appeal.  Trial counsel responded he

---

[49] Dr. Daneshrad Decl., ¶ 7; Dr. Daneshrad Ltr., ¶ 1.

[50] Dr. Daneshrad Decl., ¶ 2.

12

did not have an answer yet.[51]  Very shortly after sentencing Mr. Zuberi replaced his trial counsel with the current undersigned counsel.[52]

Undersigned counsel intends to file a motion for bail pending appeal before Mr. Zuberi's report date.  At present, however, counsel cannot obtain or review the full sentencing record, because none of Mr. Zuberi's present counsel have the security clearances necessary to obtain any submissions that were made under seal to protect arguably sensitive or classified information, or to obtain the transcript of the portion of the sentencing hearing that was conducted under seal.  Without such access, counsel cannot assess the record to evaluate and brief the substantial question or questions for appeal required for a bail-pending-appeal motion.

Counsel intends to present at least one substantial question: whether the government breached its plea agreement with Mr. Zuberi by refusing, in bad faith, to recommend a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and refusing to move for an additional one-level reduction for accepting responsibility and timely pleading guilty under § 3E1.1(b), as provided in Plea Agreement ¶ 5.c.  Counsel believes there is a strong argument that that bad-faith refusal breached the plea agreement, warranting rescission of the agreement (and with it, the agreement's appellate waivers, *id.* ¶¶ 27, 28).  Counsel cannot fully address that issue, however, which is bound up with the government's allegations of obstruction of justice,[53] without having access to

---

[51] Sent. Tr. 64.

[52] *See* Dkt. 334 (Designation and Appearance of Counsel); Dkt. 340 (Application to Substitute Attorney); Dkt. 341 (Order granting substitution of attorney) in No. CR-19-00642-VAP.

[53] *See, e.g.*, Dkt. 120, at 1-2 (Gov. Position on Acceptance of Responsibility) ("An obstruction enhancement (U.S.S.G. § 3C1.1) is ordinarily antithetical to a reduction for acceptance.  U.S.S.G. § 3E1.1, Application Note 4."); Sent. Tr. 15-16.

13

sealed portions of the record for which counsel is not cleared—in particular, portions that counsel believes will directly rebut the government's obstruction allegations.

Counsel further believes that the record will show substantial questions as to whether the restrictions on the handling of arguably classified information at sentencing, which included barring Mr. Zuberi from attending the sealed portion of his sentencing, consulting with his counsel during that portion, participating in his own defense during that portion, or having access to evidence the government used against him on the record of his sentencing, violated Mr. Zuberi's constitutional rights under the Fifth and Sixth Amendments (and fall within an exception to his limited waiver of appeal of sentence, allowing appeal of an unconstitutionally or illegally imposed sentence, *see* Plea Agm. ¶ 28(d)). Again, however, counsel cannot fully address that issue without being able to review the record of the sentencing, including the portions that are sealed and accessible only to those with proper clearance.

Mr. Zuberi respectfully submits that if his appellate counsel is unable to review the record in order to be able to formulate and submit a motion for bail pending appeal prior to Mr. Zuberi's report date, he will have been denied the effective assistance of counsel on appeal, the right to defend himself fully on appeal, the right to avail himself of the statutory remedy of release pending appeal, and due process of law on appeal. Accordingly, Mr. Zuberi respectfully moves for an extension of his report date sufficient to permit his counsel to evaluate the record and submit a fully briefed motion for bail pending appeal, and to obtain the security clearances required to do so.

Mr. Zuberi's counsel variously have submitted or are in the process of submitting their applications for security clearances to the Department of Justice's

Litigation Security Group.[54]  The Classified Information Security Officer has indicated, without binding commitment, that approval of the necessary clearances is anticipated as early as the first week of May 2021.  Granting a 90-day extension of Mr. Zuberi's report date, through August 23, 2021, should allow sufficient time for counsel to obtain the required clearances, evaluate the record, and present to this Court Mr. Zuberi's motion for bail pending appeal.

## IV.  CONCLUSION

For all of the foregoing reasons, this Court should extend Mr. Zuberi's report date for a period of 90 days, to August 23, 2021.

Dated:  April 5, 2021                    Respectfully submitted,

**STEPTOE & JOHNSON LLP**

By:    */s/ Ashwin J. Ram*
            Ashwin J. Ram
            *Attorney for Defendant Imaad Shah Zuberi*

---

[54] The government met and conferred with Mr. Zuberi's appellate counsel on March 15, 2021 regarding counsel's need for security clearances.  Attorneys Ashwin Ram, Robert Eatinger, Bruce Bishop, and Angel Reyes submitted their Clearance Participation Information Requests the next day.

The government agreed on March 29, 2021 also to process the clearance application of Attorney David Warrington, after Mr. Warrington filed his notice of appearance.

MOTION TO EXTEND SURRENDER DATE