TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
DANIEL J. O'BRIEN (Cal. Bar No. 141720)
Assistant United States Attorney
Deputy Chief, Public Corruption & Civil Rights Section
ELISA FERNANDEZ (Cal. Bar No. 172004)
Assistant United States Attorney
Public Corruption & Civil Rights Section
JUDITH A. HEINZ (Cal. Bar No. 176264)
Assistant United States Attorney
Senior Trial Attorney, National Security Division
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2468/7383/7280
     Facsimile: (213) 894-2927
     E-mail:  daniel.obrien@usdoj.gov
     E-mail:  elisa.fernandez@usdoj.gov
     E-mail:  judith.heinz@usdoj.gov
EVAN N. TURGEON (D.C. Bar No. 1010816)
Trial Attorney, National Security Division
United States Department of Justice
     950 Pennsylvania Avenue, N.W., Suite 7700
     Washington, D.C. 20530
     Telephone: (202) 353-0176
     E-mail:     evan.turgeon@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. LACR19-642-VAP |
|---|---|
| Plaintiff, | No. LACR20-155-VAP |
| v. | GOVERNMENT'S OPPOSITION TO MOTION TO EXTEND SURRENDER DATE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DANIEL J. O'BRIEN AND ELIEZER BEN-SHMUEL |
| IMAAD SHAH ZUBERI, | |
| Defendant. | Hearing Date: May 3, 2021<br>Time: 9:00 a.m.<br>Courtroom: 8A |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby opposes defendant Imaad Shah Zuberi's motion to extend his surrender date.

This opposition is based upon the attached Memorandum of Points and Authorities, the attached Declarations of Daniel J. O'Brien and Eliezer Ben-Shmuel, and the files and records in this case.

Dated: April 12, 2021　　　　　　　　Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

/s/
DANIEL J. O'BRIEN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

On February 18, 2021, this Court sentenced defendant Imaad Shah Zuberi ("defendant" or "Zuberi") to a total custodial term of 144 months (12 years). (CR 19-642-VAP, Dkt. 332; CR 20-155-VAP, Dkt. 97)[1] The Court also ordered defendant to pay $15,705,080.11 in restitution to the United States, and to pay the United States a total interest-bearing fine of $1,750,000. The Court directed defendant to surrender on May 25, 2021. (*Id.*)

On March 2, 2021, in order to reduce the risk of flight, the Court modified the conditions necessary to secure defendant's presence by ordering defendant to participate in location monitoring (via an ankle bracelet) and to abide by a curfew which restricts defendant to his residence in Arcadia, California from 5:00 p.m. to 9:00 a.m. every day. (Dkt. 336) Defendant's travel was restricted to Los Angeles and Orange Counties. To ensure the payment of outstanding tax obligations and the criminal fine, the modified bond further required defendant and his spouse to execute quitclaim deeds for property, totaling at least $6 million in value, held by LLCs owned entirely by defendant. (*Id.*) These bond conditions were imposed in addition to the initial $3 million cash bond posted by defendant shortly after his arraignment. (*Id.*)

In light of the COVID-19 pandemic and defendant's underlying health issues, the government did not move for immediate remand after sentencing, but rather stipulated to the additional bond conditions set forth above. At that time, the distribution of COVID-related

---

[1] All subsequent citations to the dockets in these two consolidated matters will be to the docket in CR 19-643-VAP.

vaccines in California was limited to healthcare workers and long-term care residents (Phase I) and food/agricultural, education/childcare, and emergency-service workers (Phase II).[2]

Now, almost two months later, the circumstances surrounding the COVID pandemic have improved dramatically. Due to his health issues, defendant became eligible to receive a vaccine on March 15.[3] To date, approximately 23 million doses of the vaccine have been administered within California and nearly half (about 48 percent) of California's adult population has received at least one dose of a vaccine.[4] Despite his eligibility, defendant has not availed himself of the opportunity to be vaccinated, and has not even scheduled an appointment. (Dkt. 347) Instead, defendant now seeks to extend his surrender date by 90 days, from May 25, 2021 to August 23, 2021. (*Id.*)

Defendant's conduct both before and after the Court's imposition of a 12-year sentence strongly indicates that his failure to obtain, or even seek, a vaccine is just defendant's latest effort in a long

---

[2] *See* https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/VaccineAllocationGuidelines.aspx.

[3] "Beginning March 15, healthcare providers may use their clinical judgement to vaccinate individuals age 16-64 who are deemed to be at the very highest risk for morbidity and mortality from COVID-19 as a direct result of one or more specified severe health conditions . . ." These specified conditions include Type II diabetes mellitus and heart conditions. See https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Provider-Bulletin-2-12-21.aspx. Moreover, on April 1, 2021, everyone who had reached an age of 50, regardless of whether they have an underlying health condition, became eligible. *Id.*; see *also* https://www.gov.ca.gov/2021/04/01/as-california-expands-covid-19-vaccine-eligibility-to-all-californians-50-governor-newsom-receives-vaccine-in-los-angeles/.

[4] *See* "Vaccination progress dashboards" at https://covid19.ca.gov/vaccines/ and link to "Data Dictionary" for definitions of terms.

2

string of dilatory tactics intended to delay or prevent the imposition of justice.  Consequently, defendant's motion should be denied.

## II. DEFENDANT'S FAILURE TO SCHEDULE A VACCINATION IS A MANIPULATIVE EFFORT TO DELAY JUSTICE

Defendant's motion, which depends almost entirely on his claim that he has "not yet been able to receive the COVID19 vaccine" makes no effort to explain why he--unlike nearly half the adult population of Californian--has not availed himself of the opportunity to do so. (Dkt. 347)  Upon receipt of defendant's motion, the Government made inquiries of the defense and was informed, on April 7, that rather than being unable to obtain access to a vaccine, "Mr. Zuberi has not received the vaccine because of concerns about the side effects and possible allergic reactions."  (O'Brien Declaration, Exhibit 1) Defendant certainly has the right to refuse or delay receipt of the vaccine; however, his voluntary election to forego treatment should not provide the basis for delaying his surrender date.

Defendant's history of failing to comply with the terms of his plea agreement, false representations to the Court leading up to sentencing, misleading representations in his current application, and recent violations of his conditions of release indicate that his decision not to be vaccinated, despite his eligibility for nearly a month, is an attempt to manipulate facts so as to unjustifiably delay his surrender date.  The Court is well aware of defendant's refusal to comply with the terms of his plea agreement and his dishonesty in his sentencing briefs. (*See* Dkt. 229, Government's Reply to Defendant's Response to Government's Position Re Acceptance of Responsibility)  Since sentencing, defendant has reacted to his

3

release restrictions in a way that appears designed to assess the flexibility of the restraints placed upon him and may evidence an inclination to flee. Shortly after defendant was placed on curfew under electronic monitoring, defendant tried to "test the waters" by pushing the bounds of his release conditions. In February, defendant travelled to Orange County and requested that the United States Probation Office ("USPO") grant him permission to stay the weekend in a hotel despite the curfew imposed by the Court. The USPO denied this request. (O'Brien Declaration, ¶ 4) Although defendant complied and returned home as directed (*Id.*), he nevertheless violated curfew on two subsequent occasions. (Dkt. 345) Defense counsel explained his violations as having been due to meetings with defense counsel. (O'Brien Declaration, Exhibit 2) Defendant then requested that the Government expand the hours of permitted travel with the justification that the typical eight-hour workday was insufficient for him to meet with his attorneys. The Government declined because the parties had stipulated to the curfew, an eight-hour work day should be sufficient for defendant to meet with counsel, counsel could visit defendant at his home if they needed more than an eight-hour day to meet with defendant, and extending defendant's travel hours would tax Government resources devoted to monitoring defendant while on release. (O'Brien Declaration, Exhibit 2). While defendant was within his rights to request an extension of his travel hours, the spurious reasons offered in support of his request provide further evidence that defendant is not making a good-faith effort to honor the stipulated conditions of his release.

     Similarly, even though the bond order required defendant to transfer by March 5 quitclaim deeds executed in favor of the United

4

States Government, defendant chose to delay. Defendant only complied with the Court's February 19 order that required the deeding of property by March 5 over a month later, and only after the filing of the instant April 5 motion to extend his surrender date.[5]

Defendant also continues to renege on his plea and sentencing obligations. To date, the defendant has still has not liquidated sufficient properties to pay his tax deficiencies. He has not filed FARA registrations as required by both statute and the terms of his plea agreement.

**III. THERE IS STILL AMPLE TIME FOR A WILLING DEFENDANT TO BE FULLY VACCINATED PRIOR TO HIS SURRENDER DATE**

If defendant acts without further delay, ample time remains for him to be fully vaccinated prior to the May 25 surrender date. The Center for Disease Control ("CDC") reports that recipients are "fully vaccinated" two weeks after their second dose.[6] Los Angeles County

---

[5] On March 5, defendant tendered to the government quitclaim deeds issued to the benefit of defendant, not the government as required by the bond order. During the period March 5 through March 9, the parties discussed whether the government would entertain accepting these quitclaim deeds in lieu of those required by the conditions of his release. On March 9, the government informed the defense that it would not agree to change the terms of the bond order. On March 10, the government provided specific direction that the quitclaim deeds should be issued in favor of the Department of the Treasury, Internal Revenue Service ("IRS"). On March 10, defense counsel informed the government that the defense would obtain revised quitclaim deeds and provide them to the government as soon as possible. As of the date of defendant's April 5 motion, the required quitclaim deeds had not been tendered to the government. Only after the instant motion was pending consideration by the Court, on April 6, did defendant email to the government quitclaim deeds, executed and notarized on March 24, that comply with the conditions of the bond order. O'Brien Declaration, ¶ 6, Exhibits 4 & 5) The deeds were mailed shortly thereafter, over a month past the March 5 deadline set by the Court.

[6] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html. The CDC reports an efficacy of over 90 percent for both the Pfizer and Moderna vaccines two weeks after the second dose. https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm  The CDC report
*(footnote cont'd on next page)*

is administering three types of vaccines: the Johnson & Johnson vaccine, which requires a single dose, the Pfizer vaccine, which is administered in two doses 21 days apart, and the Moderna vaccine, which is administered in two doses 28 days apart.[7]  Even under the most-lengthy Moderna regimen of treatment, if defendant obtained his first dose today,[8] he would receive his second dose on May 10 and be fully vaccinated by May 24.

**IV.   DEFENDANT HAS MISCHARACTERIZED THE INFECTION RATE AT BOP**

Defendant's claim that the "spread of COVID within the federal prisons, California and elsewhere, has gotten worse not better" is demonstrably false.  Defendant has mischaracterized the BOP's COVID-related statistics to suggest widespread COVID-19 infection at FCI Lompoc and FCI Terminal Island--in fact, no COVID infections currently exist at either facility.  The statistics defendant cites, indicating that 70% and 66% of inmates have tested positive for the virus at FCI Lompoc and FCI Terminal Island, respectively, does not convey the present situation at these institutions.  There are currently zero cases of COVID-19 at both Lompoc and Terminal Island. (Ben-Shmuel Declaration, ¶ 6)

Prior infections and vaccinations have greatly expanded the number of immune inmates at these facilities.  As of April 7, 2021, out of the total number of inmates housed at FCI Lompoc, approximately 38% have recovered from COVID-19 and have been

---

over 80 percent efficacy for both vaccines two weeks after the *first* dose.  *Id.*

[7] *See* http://www.publichealth.lacounty.gov/media/coronavirus/vaccine/index.htm.

[8] Vaccination appointments are frequently available near defendant's home.  See, e.g., Exhibit 5 (appointments available at cvs.com.

vaccinated; approximately 33% have recovered from COVID-19 but have not yet been vaccinated; approximately 16% have never had COVID-19 and are vaccinated; and approximately 13% have never had COVID-19 and have not yet been vaccinated.  As of that same date, out of the total number of inmates housed at FCI Terminal Island, approximately 30% have recovered from COVID-19 and have been vaccinated; approximately 36% have recovered from COVID-19 but have not yet been vaccinated; approximately 13% have never had COVID-19 and are vaccinated; and approximately 20% have never had COVID-19 and have not yet been vaccinated.  (Ben-Shmuel Declaration, ¶ 8 & 9)

Defendant's actual designation has been to FCI Leavenworth. (Ben-Shmuel Declaration, ¶ 4)  The situation at that institution is similar.  As of April 12, 2021, 1,556 inmates are housed at USP Leavenworth: 1,324 at the USP and 232 at the satellite camp.  (*Id.*) A total of 867 inmates have recovered from COVID-19, 116 inmates are completely vaccinated, and another 675 have received one dose of one of the COVID-19 vaccines.  (*Id.*)  There are currently no cases of inmates infected with COVID-19 at USP Leavenworth.  (*Id.*)

Moreover, to ensure that COVID-19 infections are not reintroduced into BOP facilities, all USBOP inmates are tested upon their arrival, quarantined for a period of 14 days, and re-tested prior to their admission.  (Ben-Shmuel Declaration, ¶ 10; Exhibit A)

**V.  THE CASES CITED BY DEFENDANT WERE ISSUED PRIOR TO THE EXISTENCE OF AN APPROVED VACCINE**

The cases cited by the defendant are not instructive in this case because they all involve dramatically different facts, both as to the state of the pandemic and to defendants' personal circumstances.  Most of the rulings cited by defendant were issued

7

early in the pandemic when the virus was truly novel, before the widespread availability of COVID testing, and prior to the development and widespread distribution of several vaccines. *United States v. Magana*, the most recent case cited by defendant, was issued on November 5, 2020 from the Southern District of California during the "third wave" of the pandemic while the country was experiencing dramatically rising rates of infection and no vaccine was available.[9] In that matter, the sentence imposed was a mere four months of imprisonment, and the government did not object to the extension.[10]

Here, the government similarly agreed to a delay defendant's surrender date when the facts warranted it. However, given the availability of vaccines, defendant's further dilatory tactics, and the significant risk of flight, the government believes there is no justification for further delay.

**VI. DELAY WILL EXACERBATE THE RISK OF FLIGHT**

Defendant falsely states that the government has acknowledged that defendant presents no risk of flight. (Dkt. 347, Defense Memorandum of Points and Authorities, p. 2) In fact, the government argued that defendant posed an exceptional risk of flight in its February 19, 2021 motion to modify the conditions of bond:

> [T]he risk of defendant's flight increased given the lengthy sentence imposed by the Court. Defendant was born in Pakistan, has family in Pakistan, real estate holdings in Pakistan, bank accounts in Dubai and various Middle Eastern

---

[9] The first COVID vaccine in California was administered on December 14, 2020. *See* https://www.gov.ca.gov/2020/12/14/governor-newsom-launches-vaccinate-all-58-campaign-based-on-safety-and-equity-as-first-vaccines-arrive-to-california/.

[10] Defendant points out that the January 5, 2021 surrender date in *Magana* was extended by a court order dated April 1, 2021. (Defense Exhibit C) He provides no explanation as to why the order was issued months after the surrender date had passed.

8

> countries, and significant overseas wealth that could sustain him, and his family, if he left the country.
>
> Although defendant has a wife and two young children living in Los Angeles country (sic), there is no mechanism to prevent them from visiting or joining defendant overseas. Defendant's spouse was born in China. Over the past several years, defendant has spent much of his time overseas. Indeed, travel records for the first half of 2018 show that defendant spent the majority of his time traveling overseas rather than residing within the Central District of California with his family.
>
> Although defendant has honored the terms of his bond conditions prior to sentencing, the factual circumstances have changed because the Court ordered a lengthy sentence rather than the sentence of home confinement the defendant sought. Moreover, as the Court found, to this day, defendant has not accepted responsibility for his criminal conduct which indicates a greater risk of flight.

(Dkt. 328)

A delay in surrender will only increase the possibility that defendant might successfully evade justice should he choose to flee. The Government has supplemented the efforts of the USPO in monitoring defendant's whereabouts and has established mechanisms to respond to any attempted flight. (O'Brien Declaration, ¶ 3) The government cannot continue to expend such resources indefinitely without good cause, and the impact on the government attempting to extend such supervision for another three months is a factor the Court should consider.

**VII. THE SECURITY CLEARANCE TIMELINE DOES NOT JUSTIFY DELAYING DEFENDANT'S SURRENDER**

Defendant also asks to delay his surrender so that defense counsel can obtain security clearances and search the handful of classified pleadings in this case for arguments to support a motion for bail pending appeal. Here too, the defense is responsible for any delay. According to the defense, Ashwin Ram, Bob Eatinger, Bruce Bishop, and Angel Reyes are preparing defendant's motion for bail

9

pending appeal. (O'Brien Declaration, Exhibit 2) By March 18, those attorneys had received access to the system used to apply for security clearances. (O'Brien Declaration, ¶ 2) Three of those attorneys, Eatinger, Bishop, and Reyes, completed their Form SF-86 applications and submitted required fingerprints on March 25, March 26, and April 1, respectively. (O'Brien Declaration, Exhibit 2) As of the date the defense motion was submitted, lead attorney Ram had not yet filed an SF-86 or submitted fingerprints because "he was experiencing technical issues on having his information pre-populated." (*Id.*) He then filed the SF-86 over the weekend of April 10-11.

The Classified Information Security Officer expects that clearances for Eatinger, Bishop, and Reyes will be approved before the end of April, and may be approved as early as this week. Given the very limited classified record, this timeline would undoubtedly enable defense counsel to review the record and submit a fully briefed motion for bail pending appeal before defendant's surrender date of May 25.

**VIII. CONCLUSION**

For the foregoing reasons, the government respectfully requests that defendant's motion to extend his surrender date be denied.

**DECLARATION OF DANIEL J. O'BRIEN**

I, DANIEL J. O'BRIEN, declare as follows:

1. I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California responsible for the matters of *United States v. Imaad Shah Zuberi*, CR 19-642-VAP and *United States v. Imaad Shah Zuberi*, CR 20-155-VAP.

2. Attached as Exhibit 1 is email correspondence between the government and defense counsel dated April 6-7, 2021 that addresses why the defendant had not obtained COVID19 vaccination and the status of defense counsel obtaining security clearances. The government has been informed by the Classified Information Security Officer ("CISO") that by March 18, those defense attorneys who had requested access to the system used to apply for security clearances had received it. As indicated in Exhibit 1, three defense attorneys, Bob Eatinger, Bruce Bishop, and Angel Reyes, completed their Form SF-86 applications and submitted required fingerprints on March 25, March 26, and April 1, respectively. The Government has been informed by the CISO that it expects that clearances for Eatinger, Bishop, and Reyes will be approved before the end of April, and may be approved as early as this week. At the time the defense filed the instant motion, lead attorney Ram had not yet filed an SF-86 or submitted fingerprints because "he was experiencing technical issues on having his information pre-populated." (Id.) On April 12, 2021, Mr. Ram informed me he filed his Form SF-86 application over the weekend.

3. I have discussed with Special Agents for the Internal Revenue Service and the Federal Bureau of Investigation the monitoring defendant's whereabouts during his release up until his surrender date of May 25, 2021. I have been informed that the

11

1  Special Agents would supplement the monitoring conducted by the U.S.
2  Probation Office ("USPO"), establish lines of communication with
3  monitoring USPO personnel to ensure a rapid response should defendant
4  flee, and enlist the support of other agents and agencies to assist
5  in any efforts to apprehend defendant should it prove necessary.

6      4.   I have been informed by IRS SA John Lucero that he spoke to
7  the USPO's Location Monitoring Specialist who informed him that in
8  February, while defendant was subject to electronic monitoring,
9  defendant travelled to Orange County and requested that the United
10 States Probation Office ("USPO") grant him and his family permission
11 to stay the weekend in a hotel despite the 5 p.m. curfew imposed by
12 the Court.  The USPO denied this request (he had no authority to
13 modify the terms of the Court's order) and defendant complied with
14 the Probation Officer's instructions.

15     5.   Attached as Exhibit 2 is email correspondence between the
16 government and defense counsel dated March 22-23, 2021 that addresses
17 defendant's curfew violations and a defense request that the
18 government stipulate to an expansion of defendant's travel hours.

19     6.   On March 5, 2021, defendant tendered to the government
20 quitclaim deeds issued to the benefit of defendant, not the
21 government as required by the bond order.  (See attached Exhibit 3)
22 During the period March 5 through March 9, the parties discussed
23 whether the government would entertain accepting these quitclaim
24 deeds in lieu of those required by the conditions of his release.
25 (*Id*.)  On March 9, the government informed the defense that it would
26 not agree to change the terms of the bond order.  (*Id*.)  On March 10,
27 the government provided specific direction that the quitclaim deeds
28 should be issued in favor of the Department of the Treasury, Internal

Revenue Service ("IRS"). (*Id*.) On March 10, defense counsel informed the government that the defense would obtain revised quitclaim deeds and provide them to the government as soon as they were completed. As of the date of defendant's April 5 motion, the required quitclaim deeds had not been tendered to the government. Only after the instant motion was pending consideration by the Court, on April 6, did defendant email to the government quitclaim deeds, executed and notarized on March 24, that comply with the conditions of the bond order. (See attached Exhibits 4A, 4B, & 4B) Defense counsel has informed me that the actual quit claim deeds were mailed after April 6, over a month past the due date set by the Court. While it is true that the IRS was tardy informing defense counsel of an appropriate mailing address, defense counsel did not notify the government that the quitclaim deeds had been signed on March 24, emails copies of the quitclaims to the government, or make further inquiries of the government until after the instant application seeking to delay the surrender date had been filed.

7. Attached as Exhibit 5 are printouts of COVID19 vaccination appointments at cvs.com available as of Sunday, April 11, 2021 at approximately 6:30 a.m.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on April 12, 2021.

DANIEL J. O'BRIEN

**DECLARATION OF ELIEZER BEN-SHMUEL**

I, Eliezer Ben-Shmuel, hereby declare:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") as the Supervisory Attorney of the Los Angeles Consolidated Legal Center and have held this position since January, 2004. If called upon, I could and would competently testify as set forth below.

2. The Los Angeles Consolidated Legal Center provides legal services to the Metropolitan Detention Center in Los Angeles, California; the Federal Correctional Institution in Terminal Island, California; the Federal Correctional Complex in Lompoc, California, the Federal Correctional Complex in Victorville, California and the Residential Reentry Management Office in Long Beach, California. My duties as a supervisory attorney include general-case management and preparation and the provision of advice and guidance to BOP executive staff and assistance to the United States Attorney's Office.

3. I am making this declaration in response to a request by the Office of the United States Attorney ("USAO") for the Central District of California to provide the Court with information about the BOP's operations in light of the COVID-19 pandemic. More specifically, the USAO has asked that I provide information that is pertinent to the government's Opposition to the Motion to Extend Surrender Date in <u>United States of America v. Imaad Shah Zuberi</u>, Case Nos. LACR19-642-VAP and LACR20-155-VAP.

4. As part of my duties as Supervisory Attorney, I have access to the BOP's electronic database known as SENTRY, which is capable of generating reports regarding current and former federal inmates, including information about their location, sentence computations and

disciplinary history.  In preparing this declaration, I reviewed the report on SENTRY regarding defendant Imaad Shah Zuberi, Register Number 78924-112.  According to the report I reviewed, on March 8, 2021, Mr. Zuberi was designated to the United States Penitentiary in Leavenworth, Kansas ("USP Leavenworth") for service of his sentence.  As of April 12, 2021, 1,556 inmates are housed at USP Leavenworth; 1,324 at the USP and 232 at the satellite camp. www.bop.gov/locations/institutions/lvn/.  There are currently no cases of inmates infected with COVID-19 at USP Leavenworth. https://www.bop.gov/coronavirus/.  A total of 867 inmates have recovered from COVID-19.  Id.  Furthermore, 116 inmates are completely vaccinated and another 675 have received one dose of one of the COVID-19 vaccines.

    5.   I have also reviewed defendant's motion to extend his surrender date, particularly those passages that relate to conditions at BOP.

    6.   Defendant's claim that the "spread of COVID within the federal prisons, California and elsewhere, has gotten worse not better" is inaccurate.  The statistics defendant cites in support of this claim, indicating that 70% and 66% of inmates have tested positive for the virus at the Federal Correctional Institutions ("FCI") at Lompoc, California and Terminal Island, California, respectively, does not convey the current situation at these institutions.  The BOP public web-site has a page that provides current information with respect to BOP institutions, including FCI Lompoc and FCI Terminal Island: www.bop.gov/coronavirus/.  That page reports that at present, there are currently no inmates cases of COVID-19 both FCI Lompoc and FCI Terminal Island.

7. The page also reports that there are 828 inmates at FCI Lompoc who have been tested at least once for COVID-19 and that 588 had a positive result, at some point. Similarly, the page reports that FCI Terminal Island reports that there are 645 inmates who have been tested at least once for COVID-19 and 424 of them had a positive result, at some point. It is important to understand, however, that these are all historical numbers going back to the start of the pandemic. Thus, these tests do not reflect the number of inmates with a current COVID-19 infection. Indeed, the site also reports that the numbers of inmates housed at FCI Lompoc and FCI Terminal who have recovered from COVID-19 are 621 and 496, respectively. Indeed, the vast majority of positive COVID-19 cases reported on this page reflect results of the testing conducted by the BOP in April and May of 2020, when there was an ongoing spread of the virus at these institutions. The testing was conducted in an effort to identify asymptomatic inmates and separate them from those individuals who had not yet contracted COVID-19. The testing was also conducted at a time when COVID-19 tests and, more specifically, mass testing for COVID-19, had just become available for these institutions. Since the summer of 2020, the majority of positive tests at both institutions have been the result the testing conducted on individuals when they first arrive at BOP facilities.

8. As of April 7, 2021, of the total number of inmates housed at FCI Lompoc: approximately 38% have recovered from COVID-19 and have been vaccinated; approximately 33% have recovered from COVID-19 but have not yet been vaccinated; approximately 16% have never had COVID-19 and are vaccinated; and, approximately 13% have never had COVID-19 and have not yet been vaccinated.

9. As of April 7, 2021, of the total number of inmates housed at FCI Terminal Island: approximately 30% have recovered from COVID-19 and have been vaccinated; approximately 36% have recovered from COVID-19 but have not yet been vaccinated; approximately 13% have never had COVID-19 and are vaccinated; and, approximately 20% have never had COVID-19 and have not yet been vaccinated.

10. Finally, both institution have implemented the procedures detailed in the BOP's COVID-19 Pandemic Response Plan.  A copy of this plan is attached hereto as Exhibit A.  That plan provides details regarding every aspect of facility operations in the midst of the pandemic.  For example, the plan requires that all incoming inmates be tested for COVID-19 and, if the initial test results are negative, placed in quarantine.  They are re-tested for COVID-19 on day 14 and are not released from quarantine unless they have a second negative test.  Exh. A, Module 4, p. 10.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information, knowledge, and belief, and based upon records maintained in the ordinary course of business. Executed this 12th day of April, 2020 in Los Angeles, California.

Eliezer Ben-Shmuel
Supervisory Attorney