1  Ashwin J. Ram (SBN 277513)
2  *aram@steptoe.com*
   **STEPTOE & JOHNSON LLP**
3  633 West Fifth Street, Suite 1900
4  Los Angeles, California 90071
   Telephone:  (213) 439-9400
5  Facsimile:  (213) 439-9599

6  *Attorney for Defendant Imaad Shah Zuberi*

7

8              **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10  UNITED STATES OF AMERICA,        Case No.: 2:19-cr-00642-VAP
                                          No.: 2:20-cr-00155-VAP
11              Plaintiff,

12      v.                          **REPLY MEMORANDUM IN
                                    SUPPORT OF DEFENDANT
13  IMAAD SHAH ZUBERI,              ZUBERI'S MOTION TO EXTEND
                                    SURRENDER DATE**
14              Defendant.
                                    [*Second Declaration of Shaun S.
15                                  Daneshrad, Proffer of Attorney David
16                                  A. Warrington, and Declaration of
                                    Ashwin J. Ram concurrently filed here-
17                                  with*]
18
                                    The Honorable Virginia A. Phillips
19
20                                  Date:  May 3, 2021
21                                  Time: 9:00 a.m.
                                    Ctrm: 8A
22

23

24

25

26

27

28
─────────────────────────────────────────────────
REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXTEND SURRENDER DATE

1

## **TABLE OF CONTENTS**

I.    INTRODUCTION ..........................................................................................1

II.   DISCUSSION...............................................................................................2

   A.   Mr. Zuberi plans to be vaccinated and is consulting with his doctors
        on which vaccine to receive ................................................................2

   B.   Mr. Zuberi remains at risk of serious complications from COVID-19
        in prison.................................................................................................3

   C.   The government's opposition is based on unfounded, overreaching,
        and misleading accusations ..................................................................5

        1.   Mr. Zuberi is not a flight risk....................................................6

        2.   Mr. Zuberi did not delay transferring the quitclaim deeds........7

        3.   Mr. Zuberi has not reneged on obligations................................8

        4.   The government, not the defense, has delayed defense
             counsel's security clearances .....................................................8

   D.   The prosecutor's apparent animus against Mr. Zuberi has affected the
        government's representations to the Court .........................................9

        1.   The government suppressed material information .................10

        2.   The government's contention that Mr. Zuberi obstructed
             justice by deleting emails is false ...........................................11

III.  CONCLUSION ........................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Ng Lap Seng*,
  No. S5 15 CRF 206 (VSB), 2021 WL 961749
  (S.D.N.Y. Mar. 15, 2021) ......................................................................5

*United States v. Quinn*,
  537 F.Supp.2d 99 (D.D.C. 2008)..........................................................11

*United States v. Sung*,
  740 F. App'x 878 (9th Cir. 2018)..........................................................11

**Statutes**

18 U.S.C. § 3142(c)(1)..............................................................................6

18 U.S.C. § 3143(a)(1)..............................................................................6

18 U.S.C. § 3553(a)(6)....................................................................1, 10, 11

**Other Authorities**

*COVID-19 Cases*, Federal Bureau of Prisons, https://bit.ly/32tqPmY
  (as of Apr. 14, 2021)..............................................................................4

*Denise Grady, 'We Were Flying Blind': A Dr.'s Account of a*
  *Woman's J.&J. Vaccine-Related Blood Clot Case*, The New York
  Times, Apr. 16, 2021, https://nyti.ms/3v3HjhI ....................................2

*If you've already had Covid-19, can you contract a new variant?*
  *Here's what experts say.*, Advisory Board, Feb. 11, 2021,
  https://bit.ly/2QE2fgk ...........................................................................5

*Incarcerated and Infected: How the Virus Tore Through the U.S.*
  *Prison System*, New York Times, Apr. 10, 2021,
  https://nyti.ms/3n1zZ3w ........................................................................4

Margot Sanger-Katz and Alicia Parlapiano, *Why the Vaccine Safety*
  *Numbers Are Still Fuzzy*, The New York Times, Apr. 16, 2021,
  https://nyti.ms/3sx3TxR .........................................................................3

REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXTEND SURRENDER DATE

Maya Sriukrishnan, Docs, *Witnesses Say Lax Procedures Fueled
  Virus Spread in Federal Jail*, Voice of San Diego (Sept. 28,
  2020), https://bit.ly/2P33nKf..................................................................5

Non-Prosecution Agreement of Ray LaHood, https://bit.ly/3swPpxQ .................11

*Lebanese-Nigerian Billionaire and Two Associates Resolve Federal
  Probe into Alleged Violations of Campaign Finance Laws*, U.S.
  Attorney's Office for Cent. Dist. of Cal. (Mar. 31, 2021),
  https://bit.ly/3gjFOYN......................................................................11

*Press Release: Inmate Death at MCC San Diego,* Federal Bureau of
  Prisons (Sept. 22, 2020), https://bit.ly/3aoKysm................................5

*Roxanne Khamsi, The Blood-Clot Problem is Multiplying*, The
  Atlantic, April 16, 2021, https://bit.ly/2Q797TR ...............................3

*SARS-CoV-2 Variant Classifications and Definitions*,
  Centers for Disease Control and Prevention,
  https://bit.ly/3goe3OA ......................................................................3

*United States v. Chagoury*,
  Deferred Pros. Agm., https://bit.ly/32p93kO ....................................11

*United States v. Joseph Arsan*,
  Deferred Pros. Agm., https://bit.ly/3ao5HCX ...................................11

*US COVID-19 Cases Caused by Variants*,
  Centers for Disease Control and Prevention,
  https://bit.ly/3syOTPT ......................................................................3

REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXTEND SURRENDER DATE

## I.    __INTRODUCTION__

Zuberi's motion to extend his report date is not based "almost entirely on his claim that he has 'not yet been able to receive the COVID19 vaccine,'" as the government claims (Dkt. 351, at 3) ("Opp."). It is based on the high risk of serious health complications or death presented by the pandemic and Mr. Zuberi's multiple comorbidities (Dkt. 350-1, at 1, 3-12) ("Mot."). Though vaccines reduce such risks, they do not eliminate them, particularly given the surge in new variants, some of which reduce vaccine effectiveness. At the same time, one vaccine has been paused because of adverse side effects. As information about these risks rapidly evolves, Mr. Zuberi is consulting with his doctors to determine which vaccine will best protect him at the least risk.

The government does not deny Mr. Zuberi's medical risks or the emerging variant threat. Nor does it deny defense counsel's need for security clearances and access to the record to file a bail pending appeal motion. The government nonetheless vociferously opposes any extension of reporting, based on a litany of accusations of manipulation and deceit, directed at both Mr. Zuberi and his counsel. These overreaching accusations are unfounded and misleading. But they demonstrate a rancor toward Mr. Zuberi driven by something other than the facts.

That apparent animus of the lead prosecutor, Daniel O'Brien, toward Mr. Zuberi has manifested itself in at least two serious nondisclosures. *First*, the U.S. Attorney's Office recently revealed that at the same time AUSA O'Brien was demanding twelve years for Mr. Zuberi, it gave deferred prosecution agreements to three others charged with remarkably similar conduct. The prosecutors did not disclose this to Mr. Zuberi or the Court, despite its obvious materiality to sentencing under 18 U.S.C. § 3553(a)(6). *Second*, the government portrayed Mr. Zuberi as an obstructor of justice based on its claim that he destroyed emails relevant to the government's investigation. But *the U.S. government* deleted emails and texts relevant to this investigation from Mr. Zuberi's devices, and instructed him to

REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXTEND SURRENDER DATE

1  eliminate others—facts known to the prosecution since September 2020.  Our un-

2  derstanding, unconfirmed without clearance, is that AUSA O'Brien may have

3  conceded some of these facts to avoid producing evidence about them.

4          The details and consequences of these nondisclosures are outside the scope

5  of this motion.  But they show strong reason not to credit the government's accu-

6  sations.  Apart from those unfounded smears, the government offers little reason

7  on the merits to deny the reasonable extension Mr. Zuberi seeks.  They also show

8  the need for defense clearance before briefing a motion for bail pending appeal,

9  which the government acknowledges should happen before reporting.

10 II.   **DISCUSSION**

11       A.    **Mr. Zuberi plans to be vaccinated and is consulting with his**

12             **doctors on which vaccine to receive**

13       In light of Mr. Zuberi's high risk of complications from numerous comor-

14 bidities, Mr. Zuberi and his doctors are carefully considering the most current

15 medical literature before deciding which vaccine he should receive.[1]  His physi-

16 cian states his concerns are "legitimate and justified."[2]  There is good reason for

17 such care, as new information emerges about the still-new vaccines.  Just last

18 week, the CDC and FDA recommended pausing the Johnson & Johnson vaccine

19 due to instances of a rare but severe and sometimes fatal form of blood clotting.[3]

20       For someone with Mr. Zuberi's risks, the threat posed by new variants and

21 the unknown effectiveness of current vaccines against them[4] requires careful se-

22 lection.  Both the surge of these variants and knowledge of protection against

23 _____

24     [1] *See* Second Decl. of Shaun S. Daneshrad, MD, FACC, ¶¶ 5-7 (Ex. C
    hereto); Opp. Ex. 1.

25     [2] *See* Second Dr. Daneshrad Decl. ¶ 7.

26     [3] *See* Denise Grady, *'We Were Flying Blind': A Dr.'s Account of a
    Woman's J.&J. Vaccine-Related Blood Clot Case*, New York Times, Apr. 16,
27  2021, https://nyti.ms/3v3HjhI; Dr. Daneshrad Second Decl. ¶ 4.

28     [4] *See* Mot. at 13-16; Dr. Daneshrad Second Decl. ¶ 4.

2

REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXTEND SURRENDER DATE

them are rapidly evolving.  As of April 10, 2010, there were 20,915 cases of the U.K. variant in the U.S., including 1,001 in California, and 106 in Kansas.[5]  The U.K. and South African variants have "~50% increased transmission," while the two California variants have "~20% increased transmission."[6]  The California variants have a "moderate reduction in neutralization" by post-vaccine antibodies, though by an unknown amount.[7]  Public health officials are studying these variants' change in vaccine effectiveness.[8]

Adverse-effect information is also rapidly evolving.  The number of blood clots associated with the Johnson & Johnson vaccine may go up, as appearance lags a few weeks behind vaccination.  "About half of Americans who received the Johnson & Johnson shot got it this month," and the CDC is waiting to update guidance "to see what happens with this group."[9]  "[M]ore information is likely to emerge in the coming weeks."[10]

In this rapidly changing environment, it is critical that someone with Mr. Zuberi's risks get the first shot right.  It is not simply a matter of scheduling the first available appointment at the nearest CVS. (Opp. at 6 n.8 & Ex. 5.)

**B.   Mr. Zuberi remains at risk of serious complications from COVID-19 in prison**

The government does not dispute the risk of severe and potentially fatal

---

[5] *US COVID-19 Cases Caused by Variants*, Centers for Disease Control and Prevention, https://bit.ly/3syOTPT.

[6] *SARS-CoV-2 Variant Classifications and Definitions*, Centers for Disease Control and Prevention, https://bit.ly/3goe3OA.

[7] *Id.*

[8] *See US COVID-19 Cases Caused by Variants*, note 5, *supra*.

[9] Margot Sanger-Katz and Alicia Parlapiano, *Why the Vaccine Safety Numbers Are Still Fuzzy*, New York Times, Apr. 16, 2021, https://nyti.ms/3sx3TxR.

[10] Roxanne Khamsi, *The Blood-Clot Problem is Multiplying*, The Atlantic, April 16, 2021, https://bit.ly/2Q797TR.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXTEND SURRENDER DATE

complications posed by Mr. Zuberi's uncontrolled Type 2 diabetes, kidney disease, persistent tachycardia, and hypertension.[11]  It is beyond serious dispute that prison remains a high-risk environment for one with these risks.

The high risk of COVID-19 in prison was not unique to the period "early in the pandemic," nor was it limited to the "third wave" of Fall 2020, as the government argues.  Opp. 8.  The risk is inherent in the forced close quarters of prison.[12] At least 39% of people in federal detention facilities have been infected—a rate 433% higher than the general population.[13]  The rate is higher still in the institutions to which Mr. Zuberi thought he would be designated: *70%* of inmates have tested positive and 24% have recovered at FCI Lompoc; *66%* have tested positive and *83%* have recovered at FCI Terminal Island (Mot. 7).  The numbers at USP Leavenworth, where the government now reports Mr. Zuberi has been designated (a fact not previously communicated to Mr. Zuberi) are not better: 56% of its inmates have been infected.  Opp. 7.  Two have died.[14]

We have not suggested these numbers describe current outbreaks, as the government accuses (Opp. 6).  As explained at the BOP pages cited (Mot. 7 & n.23), they are the numbers of current inmates known to have either tested positive or recovered from COVID-19 at some point.  But the fact that the BOP reports no present infections (Opp. 6, 7) does not mean these institutions are free from risk: "The crowded nature of federal prisons ... presents an outsize risk that

---

[11] Mot. 11-12; Dr. Daneshrad Decl. ¶¶ 2-9 (Dkt. 350-2); Dr. Daneshrad Nov. 3, 2020 Ltr. (255-9) (under seal).

[12] *See* Mem. at 5-6.

[13] *Incarcerated and Infected:  How the Virus Tore Through the U.S. Prison System*, New York Times, April 10, 2021, https://nyti.ms/3n1zZ3w.

[14] *See* "COVID-19 Cases," on the BOP's COVID-19 Coronavirus page, https://bit.ly/32tqPmY (as of April 14, 2021).  The above inmate numbers do not include staff infections, an additional source of transmission risk.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXTEND SURRENDER DATE

the COVID-19 contagion, once it gains entry, will spread,"[15] and spread quickly.[16] Moreover, the fact that an inmate recovered from COVID-19 does not make him "immune" (Opp. 6)—the degree and duration of immunity resulting from prior infection are unknown, and new variants in particular present risk of reinfection.[17]

Nor are the BOP's testing and quarantine procedures (Opp. 7) a secure firewall against such spread. That protocol did not prevent a November 2020 outbreak at MCC San Diego that infected 400 of MCC's 554 detainees.[18] A 47-year-old inmate, "who had long-term, pre-existing medical conditions which the CDC lists as risk factors for developing more severe COVID-19 disease," died.[19]

## C. The government's opposition is based on unfounded, overreaching, and misleading accusations

The government does not deny the surge in more-contagious, potentially vaccine-resistant variants, or Mr. Zuberi's serious health risks. Instead, it bases its opposition almost entirely on unsubstantiated accusations of deceit and defiance, including accusing counsel of mischaracterizing facts to the Court. The accusations are unfounded and misleading. They also illustrate a "no quarter" approach that appears motivated by animus beyond the facts or merits.

---

[15] *United States v. Ng Lap Seng*, No. S5 15 CRF 206 (VSB), 2021 WL 961749, at *4 (S.D.N.Y. Mar. 15, 2021) (citation omitted).

[16] *See id.* (noting that during a December 2020 outbreak, "the number of confirmed cases at FCI Allenwood Low grew from 5 to 136 in just three weeks").

[17] *If you've already had Covid-19, can you contract a new variant? Here's what experts say.*, Advisory Board, Feb. 11, 2021, https://bit.ly/2QE2fgk ("Previous infection does not give you a free pass.... A substantial risk of reinfection remains.") (quoting Dr. Stuart Sealfon of Mount Sinai's Icahn School of Medicine).

[18] *See* Maya Sriukrishnan, *Docs, Witnesses Say Lax Procedures Fueled Virus Spread in Federal Jail*, Voice of San Diego (Sept. 28, 2020), https://bit.ly/2P33nKf.

[19] *Press Release: Inmate Death at MCC San Diego*, Federal Bureau of Prisons (Sept. 22, 2020), https://bit.ly/3aoKysm.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXTEND SURRENDER DATE

### 1.   Mr. Zuberi is not a flight risk

To permit a defendant to self-report, the Court must "find[] by clear and convincing evidence that the person is not likely to flee ... if released [on conditions] under section 3142[(c)]."  18 U.S.C. § 3143(a)(1).  At sentencing, AUSA O'Brien proposed allowing Mr. Zuberi to self-surrender, with added conditions (an ankle bracelet and additional bond).  Sent. Tr. 58, 63.  That proposal necessarily conceded that on those conditions, Mr. Zuberi is not a flight risk.  This Court necessarily so found, by allowing continued release.  *See* § 3143(a)(1).

Mr. Zuberi's motion pointed out these simple, uncontroversial facts.  Mot. 2:15-17 & n.7.  The prosecutor now protests, "Defendant falsely states that the government has acknowledged that defendant presents no risk of flight" (Opp. 8), omitting the accurate qualification "On his current conditions of release" (Mot. 2:15), and overlooking the necessary truth of the statement: if the government had not believed its proposed conditions were sufficient to prevent flight, then it would have requested immediate detention.

As evidence that it believes Mr. Zuberi is a flight risk, the government quotes argument from its post-sentencing motion to modify bond conditions.  Opp. at 8-9.  But that motion simply asked to add a curfew and a travel restriction.  Dkt. 328 at 1-2.  Like the government's proposal the day before, it necessarily conceded those conditions were sufficient to prevent flight under § 3143(a)(1) and § 3142(c)(1).  The government's quoted argument—which admits that Mr. Zuberi "has honored the terms of his bond conditions prior to sentencing" (Opp. 9)—does not show any flight risk, much less an "exacerbated" one (Opp. 8).

Undeterred, the government claims Mr. Zuberi may be "testing the waters" for possible flight.  These imagined "tests" were: (1) asking to stay overnight during a permitted Orange County trip, followed by compliance when the officer said no (Opp. 4; O'Brien Decl. ¶ 4), and (2) two instances where Mr. Zuberi was late arriving home after all-day meetings with his defense team.  Opp. 4 & Ex. 2 (Dkt.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXTEND SURRENDER DATE

351-2).  After the probation officer suggested the parties consider extending Mr. Zuberi's hours to meet with his lawyers, counsel sought such a stipulation, but was rebuffed by AUSA O'Brien.  *Id.*  AUSA O'Brien admits counsel's request was "within [defendant's] rights," but posits that the reason—to allow more time for attorney-client debriefing—was "spurious," and evidence of bad faith, testing of Mr. Zuberi's "restraints," and possible "inclination to flee."  Opp. 4.

Two missed curfews while meeting with defense counsel, though regrettable, are not evidence of intent to flee.  Neither is a denied request to relax curfew, followed by compliance.  And an attorney's request for more time to meet with his client is hardly bad faith.  AUSA O'Brien's overheated imagination is no basis for inferring flight risk, dilatory purpose, or intent to flout court orders.  Opp. 3-5.

### 2. Mr. Zuberi did not delay transferring the quitclaim deeds

AUSA O'Brien's claim that Mr. Zuberi deliberately delayed transferring his quitclaim deeds by more than a month (Opp. 4-5) is specious.  On March 4 and 5, undersigned counsel tendered quitclaim deeds that his prior counsel believed complied with the order.[20]  From then through March 11, the parties conferred about a potential ambiguity in the order regarding the form of the deeds.[21]

On March 11, 2021, AUSA O'Brien told defense counsel an IRS agent would provide an address to deliver *revised* deeds, but counsel did not hear from the agent.  After defense counsel followed up, the agent admitted having missed AUSA O'Brien's original email, and provided the address.[22]  Despite admitting "the IRS was tardy in informing defense counsel of [the] mailing address,"[23] the prosecutor still tells the Court the delay was deliberate defiance *by Mr. Zuberi*.

---

[20] *See* the Mar. 4-5 e-mail correspondence in pages 1-5 of Ex. B hereto.

[21] *See* AUSA O'Brien Decl. ¶ 6 & Exs. 3, 4A (Dkts. 351, 351-3, 351-4).

[22] *See* the e-mail correspondence contained in Opp. Ex. 4A.

[23] AUSA O'Brien Decl. ¶ 6.

7

1    Opp. at 4-5 & n.5.   AUSA O'Brien's distorted view of "reality" is transparent,

2    and has permeated the handling of this case.

3                    **3.    Mr. Zuberi has not reneged on obligations**

4                Mr. Zuberi's continuing to raise money to satisfy restitution is no attempt to

5    "renege on plea and sentencing obligations."  (Opp. 7).   Mr. Zuberi is actively

6    raising funds to satisfy the judgment against him, and he reasonably expects this

7    debt to be paid in full by May 3, 2021. [24]

8                Nor has Mr. Zuberi "reneged" on his obligation to file a FARA registration

9    under his plea agreement (Opp. 7).  Mr. Zuberi's plea agreement requires that he

10   register and amend any deficiencies in existing FARA filings for "any and all ac-

11   tivities, past or present" that require so.  Dkt. 5 at 4.  The government presumably

12   is referring to its claim that certain federal-candidate contributions reported to

13   have been made by others were really from Mr. Zuberi and should be disclosed in

14   a supplemental FARA filing.  Mr. Zuberi contested that claim, as to which there

15   was no finding.  Given this fact, Mr. Zuberi cannot attest to the veracity of any

16   FARA supplement taking credit for contributions he did not make. Such an attes-

17   tation would be a crime.  To the extent the government is claiming other FARA

18   violations, Mr. Zuberi did not plead to any such violations and no such violations

19   exist.  The Court did not find otherwise at sentencing.[25]

20                   **4.    The government, not the defense, has delayed defense
                             counsel's security clearances**

21

22                Finally, the government does not contest defense counsel's needing clear-

23   ance to review the record before briefing a bail pending appeal motion, but it ac-

24   cuses that "[h]ere too, the defense is responsible for any delay."  Opp. 9.  The

25   government's blame is 180 degrees misplaced.

26   _____

27          [24] *See* Declaration of Ashwin J. Ram, ¶ 2.

28          [25] *See* Proffer of David A. Warrington.

                                                        8

1    Lead defense counsel entered his appearance on March 4, 2021.  (Dkt. 334.)
2    He then sent daily emails to the prosecutors asking to discuss clearance, each pro-
3    posing a call that day or the next. Each time, the government put off the call—first
4    until all counsel entered appearances, then until prior counsel withdrew, then until
5    the substitution of counsel was filed, then until March 12 or "early next week."[26]
6    The defense met each move of the goalposts within a day.  By the time counsel
7    met on March 15, eleven days had passed at the government's insistence.

8    When DOJ's Litigation Security Group forwarded investigation request
9    forms, counsel returned them the same day. Mot. 15 n.54.  Three defense counsel
10   completed their SF86 applications, which require ten years of detailed biograph-
11   ical data and extensive questions and answers about various risk information,
12   within one, five, and eight days respectively. Dkt. 351-1 Ex. 1 at 1.  Mr. Ram,
13   who held a security clearance at the U.S. Attorney's Office and is eligible for ex-
14   pedited renewal, had technical difficulty, and submitted it on April 11. *Id.*

15   AUSA O'Brien's accusation of defense delay—his only reason for oppos-
16   ing Defendant's motion—is baseless.  His consistent pattern of overreaching accu-
17   sations, without seriously disputing the merits of the defense's reasonable request
18   to protect Mr. Zuberi's health, safety, and right to assistance of counsel, does not
19   support flatly rejecting any extension as the government urges.  Instead, it reveals
20   an unrelenting aggression against Mr. Zuberi that is unexplained by the facts.

**D.    The prosecutor's apparent animus against Mr. Zuberi has
affected the government's representations to the Court**

AUSA O' Brien's pattern of animus against Mr. Zuberi is reinforced by two
troubling nondisclosures. *First*, the prosecution did not disclose that at the same
time it was urging a twelve-year sentence for Mr. Zuberi, the U.S. Attorney's Of-

---

[26] *See* the e-mail correspondence in Ex. B hereto.

9

1   fice granted deferred prosecution to three defendants charged with strikingly simi-
2   lar conduct—information obviously material under 18 U.S.C. § 3553(a)(6). *Sec-*
3   *ond*, the government urged a harsh sentence based on Mr. Zuberi's deletion of
4   emails.  But the prosecutor resisted disclosure of evidence that another part of the
5   government deleted texts and emails from Mr. Zuberi's devices, instructed
6   Mr. Zuberi to delete texts and emails from other devices, and urged Mr. Zuberi to
7   ensure that certain emails be eliminated from his email accounts. [27]

8          Though these matters are outside the scope of this motion, they give grave
9   reason to doubt AUSA O'Brien's overheated accusations of deceit and bad
10  faith—the bulk of the government's arguments in opposition. The e-mail deletion
11  issue also confirms the need for defense counsel to receive clearance and be able
12  to assess the record before briefing Mr. Zuberi's motion for bail pending appeal.

13          **1.      The government suppressed material information**

14          On March 18, 2020, the government told this Court that Mr. Zuberi's FECA
15  violations represented "efforts to corrupt democratic processes and institutions
16  while acting as an agent for foreign interests."[28]  Because of this, AUSA O'Brien
17  urged that "[t]his case merits a significant sentence not only to punish Zuberi's ex-
18  tensive conduct but also to deter those who would embark on similar schemes."

19          At the same time, unknown to Mr. Zuberi (or, to our knowledge, the Court),
20  this U.S. Attorney's Office entered into deferred prosecution agreements (under
21  seal) with a foreign national and two co-conspirators who provided $180,000 to
22  four different federal political candidates, including $100,000 in donations to a

---

25          [27] Counsel has formally requested that the government immediately identify
26  and disclose all information that would tend to show that Mr. Zuberi's convictions
    or sentence rest in any part on evidence or information submitted to the Court that
    was false.  *See* Brady Letter from A. Ram, Apr. 18, 2021 (attached as Ex. A).
27  This may be the proverbial the tip of the iceberg.

28          [28] Dkt. 87 at 18.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXTEND SURRENDER DATE

then-Presidential candidate. [29]  The Office also entered into a non-prosecution agreement with a public official who received an unrelated payment from one of those conspirators, knew it was funded by a foreign national, willfully omitted the payment from ethics disclosures, then lied to the FBI about it.[30]  The government entered these agreements in secret on October 20, 2019 (shortly after Mr. Zuberi's plea agreement) and December 4, 2019 (shortly after his guilty plea), but did not reveal them publicly until March 31, 2021, after Mr. Zuberi was sentenced.[31]

The prosecutor has a *Brady* obligation to disclose all favorable evidence material to punishment.  That plainly includes evidence relevant to the need to avoid unwarranted sentence disparities under 18 U.S.C. § 3553(a)(6).[32]  Despite its obvious materiality, the prosecution did not tell either Mr. Zuberi or the Court that at the same time it argued Mr. Zuberi's plea to campaign finance violations funded by foreign nationals merited twelve years in prison, it granted deferred prosecution to a different foreign national accused of the same offenses.

### 2. The government's contention that Mr. Zuberi obstructed justice by deleting emails is false

AUSA O'Brien also pressed the Court to enhance the defendant's sentence for the deletion of emails potentially relevant to the government's investigation, despite knowing at least since September 2020 that during meetings with the defendant, an agency of the United States deleted emails and text messages that were

---

[29] *See Lebanese-Nigerian Billionaire and Two Associates Resolve Federal Probe into Alleged Violations of Campaign Finance Laws*, U.S. Attorney's Office for Cent. Dist. of Cal. (March 31, 2021), https://bit.ly/3gjFOYN; *United States v. Chagoury*, Deferred Pros. Agm. at 2, https://bit.ly/32p93kO; *United States v. Joseph Arsan*, Deferred Pros. Agm., https://bit.ly/3ao5HCX.

[30] Non-Prosecution Agreement of Ray LaHood, https://bit.ly/3swPpxQ.

[31] *See* USAO press release, note 29, *supra*.

[32] *See United States v. Sung*, 740 F. App'x 878, 880 (9th Cir. 2018) (vacating sentence for failure to consider disparity); *United States v. Quinn*, 537 F.Supp.2d 99 (D.D.C. 2008) (plea deal showing disparity was *Brady* information).

REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXTEND SURRENDER DATE

potentially relevant to the government's investigation and helpful to the defendant from devices owned or used by the defendant. That same agency instructed the defendant to delete emails from other devices. Yet, AUSA O'Brien asked the Court to punish the defendant severely to deter others from destroying emails sought in a criminal investigation, while resisting disclosure of evidence that would show such deterrence came at the expense of punishing the defendant for following the instructions of the United States government.

We understand there may be information relevant to the extent of the government's knowledge and acceptance of these facts in the classified record and related materials. The central relevance of these facts to the government's theory that Mr. Zuberi obstructed justice confirms counsel's need to receive clearance and be able to assess these facts, before briefing a motion for bail pending appeal.

The government acknowledges that counsel should be afforded the opportunity to obtain clearances and assess the record before Defendant's surrender date, and claims that should be readily doable "[g]iven the very limited classified record." Opp. 10. We believe that record may be limited precisely because the government stipulated or conceded certain facts to avoid evidentiary disclosure and prevent an adversary challenge. We further believe some of those conceded facts contradict the government's obstruction narrative. We cannot know more without clearance.

## III.  CONCLUSION

For all of the foregoing reasons, this Court should extend Mr. Zuberi's report date for a period of 90 days, to August 23, 2021.

Dated:  April 19, 2021                      Respectfully submitted,

                                                        **STEPTOE & JOHNSON LLP**

                                                        By:    /s/ Ashwin J. Ram
                                                                Ashwin J. Ram
                                                        *Attorney for Defendant Imaad Shah Zuberi*

12

REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXTEND SURRENDER DATE