EXHIBIT 6

1   ROB BONTA
    Attorney General of California
2   JAMES G. ROOT
    Senior Assistant Attorney General
3   PATRICIA M. FUSCO
    Supervising Deputy Attorney General
4   JESSICA C. OWEN (SBN 294593)
    JOSHUA J. LEE (SBN 318332)
5   KRISTOPHER S. YOUNG (SBN 220013)
    Deputy Attorneys General
6     California Department of Justice
      600 West Broadway, Suite 1800
7     San Diego, CA 92101
      P.O. Box 85266
8     San Diego, CA 92186-5266
      Telephone: (619) 738-9075
9     Fax: (619) 645-2012
      E-mail: Jessica.Owen@doj.ca.gov
10  *Attorneys for the People of the State of California*

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                      COUNTY OF LOS ANGELES

13

14

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,** | Case No. BA484293 |
| *Plaintiff,* | |
| v. | **DECLARATION OF DETECTIVE LYLE BARNES IN SUPPORT OF *EX PARTE* PETITION  PURSUANT TO PENAL CODE SECTION 186.11** |
| 1. **TAMARA DADYAN,** (DOB 10/31/1981), a/k/a "Tammy," | |
| 2. **RICHARD AYVAZYAN,** (DOB 08/02/1978), a/k/a "Richard Ayvazian," a/k/a "Richo," a/k/a "Rich," | |
| 3. **ARTUR AYVAZYAN,** (DOB 02/09/1980), a/k/a "Arthur," a/k/a "Art," | |
| 4. **GRIGOR TATOIAN,** (DOB 07/16/1970), a/k/a "Greg," | |

1

5. **ANDRANIK PETROSYAN**,
(DOB 01/15/1975),
a/k/a "Andy,"
a/k/a "Ando,"

6. **ARSHAK BARTOUMIAN**,
(DOB 07/26/1972 )

7. **ARTASHES MARTIROSYAN**,
(DOB 08/30/1977),
a/k/a "Art,"

8. **LILIT MALYAN**,
(DOB 04/08/1982)
a/k/a "Lilo,"

9. **LUBIA CARRILLO**,
(DOB 08/26/1980),

10. **ROSA ZARATE**,
(DOB 11/7/1971),
a/k/a "Roza Avakian,"

11. **ESTEPHANIE REYNOSO**,
(DOB 12/04/1989),

12. **VANESSA BELL** (5/20/1960)

*Defendants.*

I, Lyle Barnes, declare as follows:

I am a detective with the Los Angeles Police Department (LAPD). I have been a sworn police officer with LAPD since 1989.

I am working jointly with investigators from the Federal Housing Finance Agency, Office of Inspector General. I am assigned to investigate the case above involving Richard Ayvazyan, Tamara Dadyan, Arthur Ayvazyan, Grigor Tatoian, Andranik Petrosyan, Arshak Bartoumian, Artashes Martirosyan, Lilit Malyan, Lubia Carrillo, Rosa Zarate, Estephanie Reynoso, and Vanessa Bell (hereafter "Defendants"). As the detective assigned to the case, I have personal knowledge of the criminal investigation and indictment issued in this case.

//

2

**SUMMARY OF INVESTIGATION**

1
2        This case involves a sophisticated loan fraud scheme run collectively by Defendants.
3   Defendants used stolen identities to obtain green home financing and traditional mortgage loans.
4   The fraud alleged in the indictment occurred from approximately January 2014 to November
5   2020 in Los Angeles County, and resulted in a monetary loss exceeding $15 million.

6        Defendants worked together to seize control of stolen identities of real persons and then
7   create synthetic identities for these persons.  They did this by forging names and signatures on tax
8   documents, bank documents, credit reports, payroll statements, and publicly filed documents.
9   Using these fraudulent documents, they applied for loans and opened bank accounts that
10  unsuspecting lenders wired hundreds of thousands of dollars to on a monthly basis.

11       Leveraging these stolen identities, the conspirators exploited Ygrene Energy Fund and
12  Renew Funding.  These companies, victims of the targets' green home financing scheme, provide
13  funding to licensed contractors for energy-efficient home improvements.  Defendants, acting as
14  both the contractor and homeowner, applied for loans by manipulating synthetic identities and
15  assuming control of a licensed contractor and his company.  They created fake emails, websites,
16  and contracts in the name of the company and forged the contractor's signature on the loan
17  applications.  One financing project typically resulted in over six figures in funds for a single
18  month.

19       As to the traditional mortgage loans, Defendants used synthetic identities to file public
20  documents, including trustees' deeds upon sale, to take over distressed properties.  They placed
21  real properties under the "ownership" of a synthetic identity and moved co-conspirators into these
22  properties.  They took out multiple loans against the properties through a series of false sales.
23  Shielded behind fake identities, Defendants controlled both sides of the transaction (as buyer and
24  seller), and invented escrow companies.  They seasoned their fake identities by creating fake
25  emails, fake websites for shell employers of the controlled identities, and forged bank statements
26  and W2s to depict the high net-worth of their controlled identities.

27       When detected, Defendants used fraudulent means to evade accountability. To avoid
28  subpoenas and trial in civil litigation, they filed false bankruptcies and forged releases of lis

1    pendens; they went so far as to forge signatures of title companies' attorneys and judges' court

2    stamps.

3         Several Defendants have documented histories of fraudulent behavior, such as convictions

4    for mortgage fraud.  Those involved in this widespread scheme include real estate agents with

5    revoked licenses, and a disbarred attorney who was sanctioned in bankruptcy cases.

6         On April 26, 2021, a Special Statewide Grand Jury constituted in Los Angeles County

7    returned a 133 count felony indictment against the Defendants for the following crimes: twelve

8    counts of Conspiracy to Commit Grand Theft (§ 182(a)(1)/487(a)); fifty-two counts of Unlawful

9    Transfer of Identifying Information (§ 530.5(d)(1)); seventeen counts of Grand Theft (§ 487(a));

10   nineteen counts of Procuring or Offering a False or Forged Instrument (§ 115(a)); six counts of

11   Mortgage Fraud Exceeding $950 (§532f(a)(2)/532f(j)); five counts of Mortgage Fraud Exceeding

12   $950; Filing a Fraudulent Document (§ 532f(a)(4)/532f(j)); four counts of Money Laundering of

13   more than $150,000 but less than one million dollars (§ 186.10(a)/186.10(c)(1)(B); one count of

14   Money Laundering of more than $50,000 but less than $150,000 (§ 186.10(a)/186.10(c)(1)(A));

15   fifteen counts of Forgery Relating to Identity Theft (470(b)/530.5); two counts of Money

16   Laundering (§ 186.10(a)); and special allegations for taking more than $500,000 (§ 186.11(a)(2);

17   1203.045).  The indictment further alleges that Defendants have committed two or more related

18   felonies, as specified in Penal Code section 186.11, subdivision (a) and the "aggravated white

19   collar crime enhancement" has been alleged pursuant to that section.

20        Your affiant has been advised that Penal Code section 186.11 allows the Superior Court to

21   preserve any asset or property that is controlled by defendants charged in that enhancement until

22   the conclusion of the criminal prosecution.  Upon conviction of two related felonies as specified

23   in Section 186.11(a), these assets may be levied upon by the Superior Court to pay restitution to

24   the victims of the alleged crimes and fines imposed pursuant to Penal Code section 186.11(c).

25   (See Penal Code § 186.11(d)(1)).

26   //

27   //

28   //

DECLARATION OF DET. LYLE BARNES IN SUPPORT OF EX PARTE PETITION (Pen. Code, § 186.11)

**SUMMARY OF ASSETS**

Based upon the above described investigation, your affiant has probable cause to believe that Defendants have committed the acts alleged in the indictment and that the losses total $15,678,678.  The Superior Court has jurisdiction to preserve up to the amount of restitution plus fines (Penal Code section 186.11(d)) in assets under the control of Defendants, which in this case would be $47,036,034.

During the course of this investigation, I served numerous search warrants on financial institutions and other companies, including banks, and email and phone service providers.  Based on the documents I received, I determined that Defendants control all of the financial accounts listed in **Exhibits 2 and 3**.

In **Exhibit 2**, the financial accounts are registered under the name of one of the defendants.  Defendants have deposited ill-gotten gains into many of these accounts.  For example, on March 16, 2017, Defendant Richard Ayvazyan deposited a $10,000 check to "cash" into his US Bank checking account (-5895) from a Bank of America account (-6898) registered to Vahan Ter-Grigoryan (Allstate Marketing Group, Inc.).  As detailed in Counts 14, 23, 26, 33, 36, and 119 in the indictment, Defendants repeatedly used this Bank of America account to perpetuate their criminal activity, such as by placing fraudulently obtained money into this account.

In **Exhibit 3**, the financial accounts are registered under names of synthetic identities that Defendants control.  Significantly, Defendants were indicted for stealing the majority of these identities, and many of these names in **Exhibit 3** appear in the indictment.  Defendants opened these accounts using email addresses, phone numbers, and residential addresses that they control.  Ill-gotten gains regularly flowed in and out and between these accounts.  For example, on June 28, 2018, Defendant Tamara Dadyan emailed herself the username name, password, email address, and phone number associated with Diana Saakyan's Bank of America account (-6816).  The August 2019 bank statement from this account shows that over $15,000 was wired out to Defendant Artashes Martirosyan in less than two weeks.

//

5

1    In the course of my investigation, I reviewed Accurint reports related to the following

2    properties: 17450 Weddington Street, Encino, CA 91316; 11633 Spy Glass Drive, Northridge,

3    CA 91342; 15416 Monte Street, Sylmar, CA 91342; 931 University Avenue, Burbank, CA

4    91504; and 3520 Ridgeford, Westlake Village, CA 91361.  I believe that Defendants own and

5    control all five of these properties.  Additionally, I believe that the listed owners of these

6    properties are all synthetic identities that Defendants control.  Defendants have used the synthetic

7    identities and properties listed below to take out fraudulent loans.  This is consistent with their

8    *modus operandi* as summarized above and elaborated upon in the indictment.  My investigation

9    with respect to these five properties is summarized below.

10       1.    **17450 Weddington Street, Encino, CA 91316** has an assessor's parcel #2257-001-

11   009 (Los Angeles County).  A Zillow estimate search shows the property to have a value of

12   approximately $2,301,811.00.  This is the same property that is described in Count 14 of the

13   indictment.  According to the Accurint report run on April 15, 2021, the listed owner is

14   Gevorgyan Geghetsik and there exists a loan on the property from Recovco Mortgage

15   Management, LLC.  Based on my investigation, I believe that Gevorgyan Geghetsik does not

16   actually own or live at this home.  I believe that Gevorgyan Geghetsik is a synthetic identity that

17   Defendants control, and Defendants Dadyan and Ayvazyan live at this home.

18       I have reviewed emails exchanged among Defendants that establish they possessed Ms.

19   Geghetsik's personal identifying information, and forged documents in her name to take out a

20   loan on this property.  A handful of these emails are described below.

21       On March 4, 2019, Defendant Tatoian sent a copy of Ms. Geghetsik's California driver's

22   license and social security card to Defendant Dadyan.  On February 20, 2020, Defendant Dadyan

23   emailed Defendant Ayvazyan a copy of Ms. Geghetsik's mortgage statement for 17450

24   Weddington Street.

25       On May 22, 2019, Defendant Dadyan asked Defendants Malyan and Martirosyan for six

26   months of forged bank statements for Ms. Geghetsik.  Defendant Dadyan attached two forged

27   Chase bank statements (account ending in -5723) that listed the account holder as the Nazik

28   Tunyan Family Trust with Gevorgyan Geghetsik as trustee.  A search warrant return on June 8,

DECLARATION OF DET. LYLE BARNES IN SUPPORT OF EX PARTE PETITION (Pen. Code, § 186.11)

1    2020, from Chase Bank revealed that Defendant Malyan is actually the trustee listed on this

2    particular account.  Moreover, as noted in Count 127 of the indictment, Defendant Malyan

3    controlled this bank account.  On August 8, 2020, Defendant Dadyan sent an email to Defendant

4    Tatoian informing him that Ms. Geghetsik needed paystubs showing a high income.

5         On April 9, 2020, two emails were sent from a Gmail account (abcrealtyadvisorssinc247)

6    controlled by Defendants to Mark 1 Mortgage, a home loan lender.  One email contained a

7    refinance loan for Ms. Geghetsik for 17450 Weddington Street.  The other email had Ms.

8    Geghetsik's forged tax returns, bank statements, paystubs, and W2 attached.  (These documents

9    had been emailed from Defendant Martirosyan to Defendant Dadyan earlier on April 9, 2020.)

10   These forgeries specify Fiber One Media as Ms. Geghetsik's employer.  As detailed in Counts 45

11   and 65 of the indictment, Defendants repeatedly used Fiber One Media (a shell company) as an

12   employer when falsifying documents for other synthetic identities.

13        As such, I do not believe that Ms. Geghetsik actually resides at or owns 17450 Weddington

14   Street.  Rather, I believe that Defendants Dadyan and Ayvazyan live there.  On November 5,

15   2020, federal agents from the Federal Housing Finance Agency Office of the Inspector General

16   executed a search warrant at 17450 Weddington Street.  They found Defendants Dadyan and

17   Ayvazyan and their two minor children residing at the home.  Federal agents discovered

18   numerous physical documents that pertained to the crimes listed in the indictment.  Among these

19   documents were papers pertaining to the 11633 Spy Glass Drive and the 931 University Avenue

20   properties listed below.  Federal agents also uncovered numerous official looking notary and

21   government stamps that Defendants had used to "authenticate" fraudulent documents.

22        Moreover, a United States Postal Service address check on August 8, 2020 revealed that

23   Defendants Dadyan and Ayvazyan, and Greta Akopyan (Defendant Dadyan's mother) all receive

24   their mail at 17450 Weddington Street.  On March 15, 2021, Defendant Dadyan signed a

25   declaration under penalty of perjury that she shares this home with her husband Arthur Ayvazyan

26   and her two young daughters.  This declaration was filed with the United States District Court,

27   Central District of California in support of Defendant Dadyan's motion to suppress.

28   //

2.     **11633 Spy Glass Drive, Northridge, CA 91326** has an assessor's parcel #2822-024-29 (Los Angeles County).  A Zillow estimate search shows the property to have a value of approximately $1,101,508.  This is the same property that is listed in Counts 14 and 39 of the indictment.  According to the Accurint report run on April 15, 2021, the listed owner is Medz Abrank, Inc.  In actuality however, it appears that Defendants control this property and that Defendant Malyan and her family live at this residence.

The historical assessment record of this property from the Accurint report run on January 4, 2021 shows that 11633 Spy Glass Drive has repeatedly transferred ownership between Defendant Malyan, and Liudmyla K.  As noted in Counts 14, 39, 40-42, and 44, Defendants controlled Liudmyla K's identity.  More specifically, Counts 14 and 39 detail that this property was in Defendant Malyan's name and transferred to Liudmyla K.  These charges also specify that Defendants took out two fraudulent loans for this property in the amounts of $103,600 and $635,500.

I have reviewed emails exchanged among Defendants that demonstrate how they placed ownership of the property in Medz Abrank, Inc.'s name.  On January 17, 2020, Defendant Dadyan emailed Defendant Tatoian an unrecorded draft of a grant deed for 11633 Spy Glass Drive.  The draft displays Entra Escrow Services, Inc. as the requestor of the recording.  It shows Apex Bank, Matt Daniels, AVP granting the property to Medz Abrank, INC. Leonocio Galver as CEO.  In the email, Defendant Dadyan wrote to Defendant Tatoian that she was questioning whether she should use Entra Escrow Services on the deed.  She further stated that she was not "feeling" Matt Daniels name, but she did not know what other name to write.

On January 23, 2020, the grant deed was recorded in Los Angeles County.  The deed lists Witkin & Associates, LLC, fka Witkin & Eisinger, LLC as the requestor of the recording.  The deed shows Apex Bank granting the property to Medz Abrank, INC.  The deed directs mailings to Medz Abrank, LLC, Leonocio Galver 12517 Pearblossom Hwy, Pearblossom, CA 93553.  This address is the same one listed for Defendant Malyan on the Accurint report run on January 4, 2021.  Significantly, the deed bears the notary stamp of Christina Aguilar, the same stamp that

8

1  was found at 17450 Weddington Street on in November 2020 during the execution of the federal

2  search warrant detailed above.

3      On January 27, 2020, Defendant Dadyan emailed Defendant Tatoian a signed copy of the

4  grant deed.  On May 3, 2020, Defendant Martirosyan sent an email to Defendant Dadyan with

5  login information (password and answers to three security questions) for an account belonging to

6  Leonocio/Medz Abrank.

7      Given the facts above, I do not believe that Medz Abrank Inc. is a legitimate entity.  Rather,

8  I believe that Defendants control this property.  On January 4, 2020, Defendant Dadyan sent

9  Defendant Tatoian an email in which she refers to 11633 Spy Glass Drive as hers and how she

10  obtained it for her brother.  A United States Postal Service check on August 8, 2020 verified that

11  Defendant Malyan, Karen Dadyan (aka Garen Dadyan who is Defendant Malyan's husband and

12  Defendant Dadyan's brother), and Leya Dadyan (Defendant Malyan's daughter) all receive their

13  mail at this address.  On October 18, 2017, surveillance of 11633 Spy Glass Drive by the Los

14  Angeles County District Attorney Bureau of Investigation observed Defendant Malyan, her

15  husband, and two minor children exit this home.

16      3.      **15416 Monte Street, Sylmar, CA 91342** has an assessor's parcel #2501-018-016

17  (Los Angeles County).  A Zillow estimate search shows the property to have a value of

18  approximately $927,696.  According to the Accurint report run on April 15, 2021, the listed

19  owner is Anastasia Vereshchak and there exists a loan on the property from East West Bank.

20  Based on my investigation however, I do not believe that Ms. Vereshchak owns or resides at this

21  address.  I believe that Anastasia Vereshchak is a synthetic identity that Defendants control and

22  Defendant Martirosyan and his family live there.

23      I have reviewed emails exchanged among Defendants that establish they possessed Ms.

24  Vereshchak's personal identifying information, and forged documents in her name to take out a

25  loan on this property.  Some of these emails are detailed below.

26      On February 11, 2019, Defendant Dadyan emailed Defendant Malyan copies of Ms.

27  Vereshchak's California driver's license, United States Legal Permanent Resident card, and social

28

1    security card.  On October 30, 2017, Defendant Martirosyan sent Ms. Vereshchak's email address

2    and her password to Defendant Dadyan.

3         On August 16, 2018, Defendant Dadyan sent Home America a forged home loan

4    application to purchase 15416 Monte Street, paystubs, and bank account statements all in Ms.

5    Vereshchak's name.  The loan application and paystubs list Ms. Vereshchak's employer as AAA

6    Electronical Engineering, Inc.  As indicated in Counts 100, 112, 123 and 127 of the indictment,

7    Defendants used this fake company to build another synthetic identity and perpetuate their

8    fraudulent scheme.  On August 18, 2018, Defendant Dadyan sent Home America an email with

9    Ms. Vereshchak's forged W2s and additional paystubs, all of which Defendant Martirosyan had

10   sent to Defendant Dadyan earlier that day.  On August 22, 2018, Defendant Dadyan emailed

11   Defendant Martirosyan that she needed "new paystub with higher income and W2s" for Ms.

12   Vereshchak.

13        On August 7, 2018, Defendant Dadyan sent Defendant Martirosyan the real estate transfer

14   disclosure statement for the Monte property.  She asked him to sign the document for Ms.

15   Vereshchak and then send it to the real estate agent from Ms. Vereshchak's email address.  On

16   October 22, 2018, Defendant Dadyan emailed Defendant Martirosyan that she needed an East

17   West Bank home loan equity line of credit application completed for the Monte property.  On

18   October 26, 2019, Defendant Dadyan emailed an East West Bank statement with Ms.

19   Vereshchak's name to Defendant Tatoian.  On May 15, 2019, Defendant Tatoian emailed Dadyan

20   the final buyer/borrower statement from Hillcrest Escrow that displays Ms. Vereshchak's name as

21   the buyer/borrower.  The title of the email is "This is the FINAL HUD MONTE when we

22   purchased."

23        Given the above emails, I do not believe that Ms. Vereshchak actually has any real

24   association to this property.  Rather, I have concluded that Defendant Martirosyan and his family

25   live here.  A LexisNexis search run on January 11, 2021 showed Defendant Martirosyan with a

26   listed address of 15416 Monte Street, Sylmar, CA 91342.  A United States Postal Service check

27   on August 8, 2020 verified that Defendant Martirosyan and his family members receive mail at

28   this address.

1         4.     **931 University Avenue, Burbank, CA 91504** has an assessor's parcel #2470-026-

2  004 (Los Angeles County).  A Zillow estimate search shows the property to have a value of

3  approximately $1,279,470.  This is the same property that is mentioned in Counts 65 and 82 of

4  the indictment.  According to the Accurint report run on April 15, 2021, the listed owner is

5  Osbaldo Velasquez.  Based on my investigation however, I do not believe that Mr. Velasquez

6  owns or lives at this address.  I believe that Osbaldo Velasquez is a synthetic identity that

7  Defendants control.  I further believe that Defendant Tatoian may reside at this house.

8         Osbaldo Velasquez is the same name and identity that appears in Counts 14, 45, 65-75, and

9  82-84 of the indictment.  The Grand Jury found Defendants used this property and Mr.

10  Velasquez's identity to perpetuate their fraudulent criminal activity.

11         Count 65 details the expansive control that Defendants have over Mr. Velasquez's identity.

12  More specifically, with respect to 931 University Avenue, the Grand Jury found the following to

13  be true.  On April 22, 2018, Defendant Tatoian sent Defendant Dadyan a residential purchase

14  agreement for 931 University Avenue in the name of Osbaldo Velasquez.  On June 19, 2018,

15  Defendant Martirosyan emailed Defendant Dadyan Wells Fargo bank statements in Mr.

16  Velasquez's name with the subject line "Osbaldo University."  On June 29, 2018, Defendant

17  Dadyan emailed lending and escrow agents an addendum for the University property and wrote

18  that the buyer (Mr. Velasquez) and the seller agreed to drop the purchase price to $1,100,000.

19  The Grand Jury also found, as elaborated upon in Count 82, that in July 2018 Defendants

20  fraudulently took a loan out from Supreme Lending for $990,000 for this property.  I have the

21  reviewed the evidence presented before the Grand Jury that supports these charges.

22         Therefore, I do not believe that Osbaldo Velasquez actually has any interest in this

23  property.  Moreover, I have reviewed email exchanges between Defendant Tatoian and Defendant

24  Dadyan that indicate Defendant Tatoian may live at 931 University Avenue.  On January 4, 2020,

25  Defendant Dadyan sent Defendant Tatoian a message recalling that he texted her in 2012,

26  "Tammy this is Greg from university."  On July 5, 2017, Defendant Dadyan asked Defendant

27  Tatoian if he "called the number as egia for university" for a court date the previous week.

28  "Egia" is another identity that Defendants control and is mentioned in Count 14.  The historical

1  property assessment records from an Accurint report run on January 7, 2021 reveal that Egia

2  Kapemyan was a previous listed owner of this property.

3        Based on a historical property review by the Los Angeles County District Attorney Bureau

4  of Investigation, it appears that Defendant Tatoian was "gifted" this property by Anait Ojenian in

5  2003. Ms. Ojenian was Defendant Tatoian's co-defendant in a federal criminal case in 2000. In

6  2005, Defendant Tatoian "gifted" the property back to Ms. Ojenian. The subsequent events

7  indicate that Defendant Tatoian may live on this property. On August 16, 2018, Defendant

8  Tatoian emailed Defendant Dadyan the card of a Los Angeles District Attorney Senior

9  Investigator that was left for Osbaldo Velasquez at the above address. On June 17, 2019,

10  Defendant Tatoian emailed Defendant Dadyan a loan statement in Mr. Velasquez's name for 931

11  University Avenue.

12       5.   **3520 Ridgeford, Westlake Village, CA 91361** has an assessor's parcel #2057-017-

13  001 (Los Angeles County). A Zillow estimate search shows the property to have a value of

14  approximately $ 1,669,740. This is the same property that is in Counts 14, 24, 25, 100, 101, 112,

15  and 123 of the indictment. According to the Accurint report run on April 15, 2021, the listed

16  owner is Melanya Adamyan. However, I do not believe that Ms. Adamyan actually owns or

17  resides at this address. I believe that Melanya Adamyan is a synthetic identity that Defendants

18  control, and that Victoria Akopyan, an uncharged co-conspirator, lives at this address with her

19  family.

20       Victoria Akopyan is the name and identity that appear in Counts 14, 100-118, and 123 of

21  the indictment. The Grand Jury found Defendants used this synthetic identity (Melanya

22  Adamyan) and property to perpetuate their fraudulent criminal activity.

23       In Count 100, the Grand Jury found that Defendants conspired to commit grand theft using

24  Ms. Adamyan's identity. In Count 112, the Grand Jury found Defendants used Ms. Adamyan's

25  name on a grant deed to transfer 3520 Ridgeford from AAA Electronical Engineering, Inc. to Ms.

26  Adamyan. In Count 101, the Grand Jury found that Defendants used Ms. Adamyan's name for a

27  green home financing loan for 3520 Ridgeford. I reviewed the evidence that was presented in

28

1    front of the Grand Jury that supports these charges.  As such, I do not believe that Melanya

2    Adamyan actually has any real link to this property.

3           Rather, I believe that Victoria Akopyan and her family may live at this address.  Ms.

4    Akopyan is an uncharged co-conspirator and some of her involvement in the criminal activity

5    advanced by Defendants is described in Counts 85 and 123 of the indictment.  On February 23,

6    2019, Defendant Dadyan emailed Ms. Akopyan a photograph of 3520 Ridgeford.  On March 20,

7    2019, Ms. Akopyan sent an email to a moving company confirming her move to 3520 Ridgeford.

8    On April 9, 2019, Ms. Akopyan emailed herself a copy of a utility bill for 3520 Ridgeford that

9    was in the name of one of her relatives who receives mail there.  Finally, a United States Postal

10   Service check on October 8, 2020 confirmed that Victoria Akopyan's children receive mail at

11   3520 Ridgeford.

12                                              **CONCLUSION**

13          I believe Defendants have the ability to and are likely to secret assets addressed by this

14   declaration, and I believe that public disclosure of these documents before their service upon all

15   recipients would jeopardize the Court's ability to preserve assets and property.

16          Furthermore, I believe that the value of the assets listed above will not exceed $47,036,034.

17   The five real properties have an approximate value of $7,280,225.  The amount of money in the

18   financial accounts will likely not be more than $39,755,809.  During the course of my

19   investigation, I have learned that money flowed quickly between the accounts in **Exhibits 2 and**

20   **3**.  Not all of the accounts always had money or a significant amount of money in them.

21   Defendants opened and closed financial accounts quickly.  Indeed, four of the financial accounts

22   listed in the indictment are now closed.  Therefore, I anticipate that many of the financial

23   accounts in **Exhibits 2 and 3** may no longer have money in them and/or may not contain a

24   significant amount of money.

25          If this Court sees fit to sign the TEMPORARY RESTRAINING ORDER FOR

26   PROTECTIVE RELIEF NECESSARY TO PRESERVE PROPERTY AND ASSETS AND

27   ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION PURSUANT TO PENAL

28

1  CODE SECTION 186.11, allied agencies or I will serve the documents now being filed with the

2  Court upon all relevant parties.

3      I believe that allied agencies and I can complete the process of serving the aforementioned

4  documents related to this declaration not later than 10 days after that date of issuance of the

5  TEMPORARY RESTRAINING ORDER FOR PROTECTIVE RELIEF NECESSARY TO

6  PRESERVE PROPERTY AND ASSETS AND ORDER TO SHOW CAUSE RE:

7  PRELIMINARY INJUNCTION PURSUANT TO PENAL CODE SECTION 186.11.

8      I declare under penalty of perjury that the foregoing is true and correct.

9  Executed this ___26___ day of April, 2021 in Los Angeles, California.

10

11  Lyle Barnes (Declarant)

12  Detective
   Los Angeles Police Department

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14