Ashwin J. Ram (SBN 277513)
*aram@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

*Attorney for Defendant*
Imaad Shah Zuberi

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:19-cr-00642-VAP<br>No.: 2:20-cr-00155-VAP |
| Plaintiff, | **DECLARATION OF ASHWIN J. RAM** |
| v. | *[Opposition to Government's Application for an Order Modifying Mr. Zuberi's Conditions for Release, Declaration of David A. Warrington, and Declaration of Angel E. Reyes concurrently filed herewith]* |
| IMAAD SHAH ZUBERI, | |
| Defendant. | Judge: Hon. Virginia A. Phillips |

DECLARATION OF ASHWIN J. RAM

I, Ashwin J. Ram, declare as follows:

1.     I am an attorney licensed to practice law in the State of California.  I am admitted to the U.S. District Court for the Central District of California.  I am a partner with Steptoe & Johnson LLP ("Steptoe"), and one of several counsel for Defendant Imaad Shah Zuberi in this matter.

2.     On Thursday, April 29, 2021, I learned that one of my clients ("client R.A."), was arrested at approximately 5:00 a.m. by state authorities.  Later in the day, I was advised that client R.A.'s presumptive bail was approximately $4,750,000.  As a result, I spent the majority of the day assisting client R.A.'s family, who were attempting to secure his release from custody.

3.     During the evening of Thursday, April 29, 2021, Imaad Zuberi learned of client R.A.'s presumptive bail amount, sympathized, and immediately offered to commit up to $100,000 towards client R.A.'s bail.  Because client R.A. was not a flight risk, I understood that his bond would eventually be exonerated, and all bond commitments would be returned when any bond was exonerated.

4.     Shortly thereafter, on Thursday, April 29, 2021, I learned from bail-related documentation that bond premium payments (as opposed to collateral posted to support a bond) were not refundable even when a client's bond is later exonerated. Notwithstanding this information, Mr. Zuberi continued his commitment to help client R.A., who was arrested by state authorities while defending against federal charges.

5.     On Friday, April 30, 2021, at the arraignment of client R.A., I spoke to a prosecutor with the California Attorney General's Office, Deputy Attorney General Kristopher Young (DAG Young), who is responsible for the state prosecution of client R.A.  During the conversation, we discussed the release of client R.A., and various bail sources, including Mr. Zuberi.

6.     On Monday, May 3, 2021, a Steptoe & Johnson LLP associate ("the Steptoe associate) emailed DAG Young additional bail-related materials.

7.      On Tuesday, May 4, 2021, DAG Young emailed state counsel for client R.A. (David Diamond) and me, stating without explanation that the state would contest the bail package proffered for client R.A.  In a follow-up email, the Steptoe associate asked DAG Young "are there particular individuals that you are objecting to, or for which you require additional documentation."  DAG Young responded that there are "too many issues with several of the individuals as we are running out of time."  I then emailed DAG Young to at least identify "which individual(s) you have an issue with for bail funds/collateral."  DAG Young then responded that he would object to Mr. Zuberi and another individual, while "continuing our due diligence with respect to the others."

8.      At 6:00 p.m. the same day (on May 4, 2021), I responded to DAG Young as follows:

> Kris:  As you identified an unspecified objection to Mr. Zuberi as a source of bail, we pulled his February 2021 sentencing transcript where the federal government argued that Mr. Zuberi has $30 million in real estate in California that can be used to discharge his financial obligations owed to the federal government (relevant portion of the sentencing transcript attached).   The federal government made this same argument in their sentencing position papers independent of the Court hearing as well.  All of this is publicly available information.

> We are also attaching a recent letter evidencing that Mr. Zuberi is on top of his financial obligations with respect to the federal government.

> This should squarely resolve any source of funds issue with respect to Mr. Zuberi, but let us know if you will still require his presence tomorrow.

Attached to the email were excerpts from Mr. Zuberi's sentencing transcript and an April 29, 2021 letter from me to the U.S. Department of Justice, detailing payments Mr. Zuberi had made to the IRS and Department of Financial Services (Clerk of the Court).

DECLARATION OF ASHWIN J. RAM

9.     As a result of DAG Young's May 4, 2021 request, Mr. Zuberi understood that the government was requesting his appearance at the bail hearing and would be entitled to inquire into the source of funds that Mr. Zuberi was offering to contribute towards bail.

10.     On May 5, 2021, at client R.A.'s bail hearing, his bail was reduced to $500,000.  Prior to the source of funds portion of the hearing scheduled for the afternoon, I again asked DAG Young what, if any, issue he had with Mr. Zuberi, who would be contributing approximately $50,000 towards client R.A.'s bail.  I also told DAG Young that Mr. Zuberi was present outside the courtroom in the hallway (with other bail witnesses) if DAG Young really had any questions for him.  DAG Young responded to the effect that he had nothing to talk to Mr. Zuberi about, but would continue to stand on his objection.

11.     In the afternoon, on May 5, 2021, the Court conducted a hearing to address the state's objections to client R.A.'s bail package.  During the hearing, it was made clear that Mr. Zuberi had no connection with client R.A., other than sharing common counsel, was contributing to his bail as a good Samaritan, and had never received funds from or paid funds to client R.A.

12.     During the hearing, DAG Young made various comments admitting that he had coordinated with certain Assistant United States Attorneys who had prosecuted Mr. Zuberi in preparation for the state court hearing.

13.     Even after the court advised DAG Young that the relevant inquiry with respect to "source of funds" was whether the witness had received funds related to the charged conduct in the state indictment, DAG Young proceeded to inquire about Mr. Zuberi's federal charges.  After the Court again interjected, DAG Young further represented to the Court that he had spoken to two AUSAs who had prosecuted Mr. Zuberi and that these AUSAs had advised DAG Young to the effect that Mr. Zuberi did not have a "single dollar" that was not "feloniously obtained."

14.     Given the line of inquiry related to Mr. Zuberi's federal charges, I attempted to interject and the Court eventually called a side bar to discuss the examination.  After the side bar, I moved to withdraw and strike Mr. Zuberi's testimony in its entirety.  The Court granted the request with no objection from DAG Young.

15.     As Mr. Zuberi was withdrawn as a witness, he did not contribute any funds to the bail bondsman who posted bail for client R.A. later that same day.

16.     On May 7, 2021, at approximately 9:50 a.m., I was contacted by U.S. Pretrial Services/Probation Officer Joey Trabucco, who inquired whether any recent changes had been made to Mr. Zuberi's bond conditions.  I told Officer Trabucco that there was a May 3 hearing about Mr. Zuberi's report date, which had been extended to June 18, 2021.  I also shared that, in addition to ordering Mr. Zuberi not transfer assets out of the country, the Court had requested (pending) briefing on whether to further modify bail conditions.

17.     At approximately 11:20 a.m., on May 7, 2021, I called back Officer Trabucco to learn more about Mr. Zuberi's bail conditions and monitoring.  We had a brief call of approximately five minutes.  When I asked USPO Trabucco about whether he was recommending any modification to Mr. Zuberi's bond conditions, he said that he could not speak to the financial conditions, which he described as beyond his purview, but said that "no physical conditions need to be changed."   When I asked about electronic monitoring, USPO Trabucco referred me to U.S. Pretrial Services/Probation Officer Joe Torres.

18.     At approximately 11:25 a.m., on May 7, 2021, I spoke to USPO Torres over the telephone and requested more information about Mr. Zuberi's monitoring. USPO Torres explained generally that there was "easier overall supervision" for individuals who have set curfews, consistent patterns of movement, and set parameters or locations of travel given the applicable technology currently in use.  USPO Torres further slotted Mr. Zuberi into the "very simple" category of supervisees, who falls into the "basic self-surrender case," given his set curfew, consistent pattern of movement,

and his travel limitations to Orange and Los Angeles Counties.  I also asked USPO Torres whether he would recommend any modification to Mr. Zuberi's location monitoring, curfew, or travel parameters.  In response, USPO Torres said "not necessarily."

19.     Both Officers Trabucco and Torres were courteous and helpful in explaining issues relevant to Mr. Zuberi's bond conditions and supervision.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 7th day of May 2021 in Los Angeles, California.

/s/ *Ashwin J. Ram*
Ashwin J. Ram

DECLARATION OF ASHWIN J. RAM