**KUTAK ROCK LLP**
David A. Warrington
*David.warrington@kutakrock.com*
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219
Telephone: (202) 828-2438
Facsimile: (202) 828-2400

*Attorney for Defendant Imaad Shah Zuberi*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IMAAD SHAH ZUBERI,<br><br>Defendant. | Case No.: 2:19-cr-00642-VAP<br>No.: 2:20-cr-00155-VAP<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR RELEASE PENDING APPEAL**<br><br>The Honorable Virginia A. Phillips<br><br>[[*Proposed] Order; and Ex Parte Application to Be Heard on Shortened Time filed concurrently herewith*]<br><br>Current Date:   June 7, 2021<br>Requested Date:   May 26, 2021<br>Time:   9:00 a.m.<br>Ctrm:   8A |

## NOTICE OF MOTION AND MOTION FOR

## RELEASE PENDING APPEAL

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on June 7, 2021 at 9:00 a.m. in Courtroom 8A of this Court at 350 West 1st Street, Los Angeles, CA 90012, Defendant Imaad Shah Zuberi will and hereby moves this Court to continue his continued release pending appeal under 18 U.S.C. § 3143(b)(1) and Federal Rule of Criminal Procedure 46(c).

Zuberi moves for this continued release on the grounds that release pending appeal is warranted where (1) the defendant does not pose a flight or safety risk, and (2) the appeal is not for purpose of delay, but instead raises a substantial question of law or fact that, if resolved in defendant's favor, is likely to result in reversal, a new trial, a non-prison sentence, or a reduced prison term shorter than the expected appeal. *See* 18 U.S.C. § 3143(b)(1). Zuberi satisfies these requirements.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities; any reply Defendant may make; the pleadings and records in this action; and any other such matters, evidence, and arguments as may be presented at or prior to the hearing.

Dated: May 10, 2021                           Respectfully submitted,

**KUTAK ROCK LLP**

By: *David A. Warrington*
David A. Warrington

*Counsel for Defendant*
*Imaad Shah Zuberi*

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL


# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ........................................................1

**DISCUSSION** ..........................................................3

I.    Zuberi is neither a flight nor safety risk ............................3

II.   Zuberi's appeal will raise substantial questions that, if resolved in his
      favor, would likely result in reversal, a new trial, a non-prison sentence,
      or a term of imprisonment shorter than the appeal....................3

      A.    The government violated *Brady* by suppressing information
            material to sentencing and to waiver of trial and guilty plea...........4

      B.    Zuberi's counsel had an undisclosed actual conflict of interest ......9

      C.    Zuberi's plea agreement should be set aside based on the
            government's fraudulent inducement and its contradictory
            argument regarding deletion of emails............................13

            1.    The government induced Zuberi's plea by misrepresentation
                  ................................................................14

            2.    The government's obstruction position was inconsistent with
                  facts the government conceded............................21

      D.    Under Zuberi's plea agreement for the remaining SDNY
            obstruction count, the agreed advisory guidelines range will likely
            result in no imprisonment .............................................23

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland,*
373 U.S. 83 (1963)...............................................................*passim*

*Brady v. United States,*
397 U.S. 742 (1970)........................................................11, 12, 15

*Cuyler v. Sullivan,*
446 U.S. 335 (1980)..........................................................9, 11, 13

*Dillon v. United States,*
307 F.2d 445 (9th Cir. 1962) ....................................................19

*Gall v. United States,*
552 U.S. 38 (2007)....................................................................20

*Holloway v. Arkansas,*
435 U.S. 475 (1978).......................................................10, 11, 13

*Mabry v. Johnson,*
467 U.S. 504 (1984).......................................................14, 15, 20

*Mickens v. Taylor,*
535 U.S. 162 (2002).....................................................9, 10, 11, 13

*Old Chief v. United States,*
519 U.S. 172 (1997)..................................................................23

*Puckett v. United States,*
556 U.S. 129 (2009).............................................................*passim*

*Rosales-Mireles v. United States,*
138 S. Ct. 1897 (2018)..............................................................21

*Sanchez v. United States,*
50 F.3d 1448 (9th Cir. 1995) ...............................................8, 9, 1

*Santobello v. New York,*
404 U.S. 257 (1971)......................................................14, 15, 20

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

*United States v. Bautista,*
   989 F.3d 698 (9th Cir. 2021) ...................................................................20

*United States v. Blueford,*
   312 F.3d 962 (9th Cir. 2002) ...................................................................21

*United States v. Bryant,*
   398 Fed. App'x. 561 (11th Cir. 2010) .......................................................19

*United States v. Bundy,*
   968 F.3d 1019 (9th Cir. 2020) ......................................................7, 8, 10

*United States v. Camarillo-Tello,*
   236 F.3d 1024 (9th Cir. 2001) ...............................................................20

*United States v. Davis,*
   854 F.3d 601 (9th Cir. 2017) ..................................................................24

*United States v. De La Fuente,*
   8 F.3d 1333 (9th Cir. 1993) ..............................................................17, 21

*United States v. Franco-Lopez,*
   312 F.3d 984 (9th Cir. 2002) ................................................16, 17, 19, 20

*United States v. Garcia,*
   340 F.3d 1013 (9th Cir. 2003) ...................................................................4

*United States v. Handy,*
   761 F.2d 1279 (9th Cir. 1985) ...................................................................4

*United States v. Hopper,*
   27 F.3d 378 (9th Cir. 1994) ...............................................................18, 19

*United States v. Olson,*
   988 F.3d 1158 (9th Cir. 2021) .................................................................12

*United States v. Quinn,*
   537 F. Supp. 2d 99 (D.D.C. 2008)...................................................4, 7, 8

*United States v. Rodgers,*
   278 F.3d 599 (6th Cir. 2002) ...................................................................18

*United States v. Ruiz-Alvarez,*
   211 F.3d 1181 (9th Cir. 2000) ................................................................24

iii

*United States v. Sung,*
     740 F. App'x 878 (9th Cir. 2018)...............................................................4, 7

*United States v. Walter-Eze,*
     869 F.3d 891 (9th Cir. 2017) ...........................................................9, 10, 11

**Statutes**

18 U.S.C. § 3142(b)(1) ...............................................................................3

18 U.S.C. § 3143(b)(1) ..........................................................................1, 3, 4

18 U.S.C. § 3143(b)(1)(B) .........................................................................3, 4

18 U.S.C. § 3553(a) .............................................................................3, 4, 11

18 U.S.C. § 3553(a)(6) ...............................................................................4, 7

U.S.S.G. § 3C1.1 .....................................................................................16, 18

U.S.S.G. § 3E1.1 ................................................................................*passim*

U.S.S.G. § 3E1.1(a) ......................................................................................19

U.S.S.G. § 3E1.1 App. Note 4 ..............................................................2, 16, 19

U.S.S.G. § 5C1.1(d)......................................................................................24

U.S.S.G. § 5C1.1(e) .....................................................................................24

**Other Authorities**

Fed. R. Crim. P. 11(d)(2)(B)......................................................................12, 13

Fed. R. Crim. P. 32(e) .................................................................................16

Fed. R. Crim. P. 32(f) .................................................................................16

Fed. R. Evid. 201(b)(2) ...................................................................................6

Fed. R. Evid. 201(c)(2) ...................................................................................6

Fed. R. Evid. 201(d)........................................................................................6

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

Lebanese-Nigerian Billionaire and Two Associates Resolve
    Federal Probe into Alleged Violations of Campaign Finance
    Laws, U.S. Attorney's Office for Cent. Dist. of Cal. (March 31,
    2021), https://bit.ly/3gjFOYN ..............................................................5, 6. 7, 12

Political Donor Sentenced to 12 Years in Prison for Lobbying and
    Campaign Contribution Crimes, Tax Evasion, Obstruction of
    Justice, U.S. Attorney's Office for Cent. Dist. of Cal. (Feb. 18,
    2021), https://bit.ly/3vOVtnk ..............................................................7

Prisons, *Prioritization of Home Confinement As Appropriate in
    Response to COVID-19 Pandemic* (March 26, 2020),
    https://www.bop.gov/coronavirus/docs/bop_memo_home_confi
    nement.pdf ..............................................................25

U.S. Const. amend. VI ..............................................................11, 12

United States Courts, Federal Court Management Statistics—
    Summary, September 2020,
    https://www.uscourts.gov/statistics-reports/federal-court-
    management-statistics-september-2020 ..............................................................24

*United States v. Arsan*, Deferred Pros. Agm.,
    https://bit.ly/3ao5HCX ..............................................................5, 6, 9, 10

*United States v. Baaklini*, Deferred Pros. Agm.,
    https://www.justice.gov/usao-cdca/press-
    release/file/1382086/download ..............................................................5, 6

*United States v. Chagoury*, Deferred Pros. Agm.,
    https://bit.ly/32p3kO ..............................................................5, 6, 12

*United States v. LaHood*, Non-Prosecution Agm.,
    https://bit.ly/3o0oBp0 ..............................................................6

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## <u>INTRODUCTION</u>

Release pending appeal is warranted where (1) the defendant does not pose a flight or safety risk, and (2) the appeal is not for purpose of delay, but instead raises a substantial question of law or fact that, if resolved in defendant's favor, is likely to result in reversal, a new trial, a non-prison sentence, or a reduced prison term shorter than the expected appeal. *See* § 3143(b)(1).

Zuberi satisfies these requirements. He poses no flight or safety risk, and his appeal will raise at least three substantial questions under § 3143(b)(1).

*First*, the government violated *Brady* by withholding information material to punishment: the prosecution did not disclose that at the same time it was urging a twelve-year sentence for Zuberi, it was granting deferred- and non-prosecution agreements to others charged with strikingly similar offenses. That information directly rebutted the prosecutor's sentencing argument against Zuberi, and was material to preventing unwarranted sentencing disparities. It was also material to Zuberi's decision to waive trial and plead guilty: had Zuberi known the same U.S. Attorney's Office was granting non-prosecution dispositions to foreign nationals charged with the same FECA offense, he would not have pled guilty with an agreed 12-year guideline range.

*Second,* Zuberi's counsel had an undisclosed conflict of interest: one of his lead attorneys also represented one of the defendants who received deferred prosecution. Despite knowing of the 12-year disparity between dispositions offered by the same USAO, and that the deferred prosecution agreements directly rebutted the prosecution's argument here, that attorney never said a word to Zuberi, and never raised those arguments on Zuberi's behalf.

*Third*, the government induced Zuberi's plea agreement by misrepresen-

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1    tation—promising to recommend credit for acceptance of responsibility, but in-

2    stead only using that promise as leverage to try to force concession of greater

3    offense conduct than Zuberi pled to, without granting such credit.  Immediately

4    after the plea, the government revealed its Catch-22: demanding that Zuberi ei-

5    ther stipulate to obstruction of justice (which under the government's interpreta-

6    tion would preclude credit for acceptance of responsibility), or else be punished

7    for falsely or frivolously denying obstruction—which would result in losing

8    credit for acceptance of responsibility.  After being called out, the government

9    claimed it intended to recommend credit only for "extraordinary" acceptance

10   under U.S.S.G. § 3E1.1 App. Note 4.  But that requirement is not spelled out

11   anywhere in the government-drafted agreement, which states instead it does not

12   include any promises or understandings not contained in the written agreement.

13       The government's reason for denying credit was also erroneous—it de-

14   nied acceptance credit based on pre-plea obstructive conduct that it knew of

15   when it entered the plea agreement, in violation of precedent holding that such

16   known pre-charge, pre-plea conduct does not preclude credit where the defend-

17   ant took responsibility for it in the plea and did not commit any such miscon-

18   duct thereafter.  An additional basis for the government's refusal was its claim

19   that Zuberi obstructed justice by deleting potentially relevant emails. But on in-

20   formation and belief, the government conceded in sealed proceedings that

21   Zuberi was directed to delete emails by an agency of the United States—a con-

22   cession squarely at odds with its narrative that Zuberi obstructed justice.[1]

23       Each of these issues independently warrants setting aside Zuberi's plea

24

25

26

27   [1] Although one of Zuberi's counsel has received a security clearance,
counsel has not yet been given access to the sealed record as of the filing of this

28   motion. A supplement filing may be necessary after reviewing those materials.

2

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1   agreement for the three counts charged in this District. The remaining obstruc-

2   tion count, transferred from the Southern District of New York, is governed by

3   a separate plea agreement containing an agreed guidelines level of 12 (Zone C),

4   which under the advisory Guidelines allows 5-8 months in jail and 5-8 months'

5   intermittent or home confinement.  Considering all of the circumstances and the

6   § 3553(a) factors, including the need to avoid unwarranted disparities, an appro-

7   priate sentence on that count would be probation or a short term of home con-

8   finement. Continued release on bail is thus appropriate under § 3142(b)(1).

9                                    **DISCUSSION**

10  **I.    Zuberi is neither a flight nor safety risk**

11         Zuberi poses no flight or safety risk: his current release conditions are

12  sufficient to assure his surrender. The government necessarily conceded as

13  much by proposing voluntary surrender on those conditions.[2] Though the gov-

14  ernment recently voiced purported flight risk concerns,[3] it again proposed only

15  modifications to release conditions, while continuing to consent to self-surren-

16  der.[4] This Court's permitting Zuberi to remain on release tacitly found his mod-

17  ified conditions sufficient to assure reporting under § 3143(b)(1).[5]

18  **II.   Zuberi's appeal will raise substantial questions that, if resolved in his
19         favor, would likely result in reversal, a new trial, a non-prison sen-
           tence, or a term of imprisonment shorter than the appeal**

20         To obtain release pending appeal, a defendant must show his appeal

21  "raises a substantial question ... likely to result in" reversal, a new trial, a non-
22

23  ───────────────

24         [2] *See* Dkt 350-1 at 2; Dkt. 359 at 6. Unless otherwise noted, all docket
    references are to the docket in No. 19-00642-VAP.
25         [3] *See* Dkt. 351 at 8-9 (quoting Dkt. 328). The government's claim was
26  based in part on a claim that recent property sales left Zuberi with $7.5 million
    in cash, 5/3/2021 Tr. 13, a figure off by a factor of ten, Dkt. 367 at 1, 3-5.
27         [4] *See* Dkt. 365, at 2, 7; *see also* Dkt. 359 at 6.
28         [5] *See* Dkt. 359 at 6.

                                          3
                    DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
                           RELEASE PENDING APPEAL

1    prison sentence, or a prison term shorter than the appeal. § 3143(b)(1)(B).

2         A "substantial question" is one that is "fairly debatable" or "fairly doubt-

3    ful" —"of more substance than would be necessary to a finding that it was not

4    frivolous." *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985). "The

5    question may be new and novel. It may present unique facts not plainly covered

6    by the controlling precedents....The application of well-settled principles to the

7    facts of the ... case may raise issues that are fairly debatable." *Id.*

8         The phrase "'likely to result in reversal [or] an order for a new trial'"

9    does *not* require showing a likelihood of success on appeal. *Id.* at 1280-81. In-

10   stead, the question must be one that, "*if decided in the defendant's favor*, would

11   likely result in reversal or could satisfy one of the other conditions." *United

12   States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003) (emphasis added).

13   Nor does this Court need to find likely error: release pending appeal is proper

14   even if the Court "would affirm on the merits." *Handy*, 761 F.2d at 1281.

15        Zuberi's appeal will raise at least three fairly debatable questions that, if

16   decided in his favor, would likely result in qualifying relief under § 3143(b)(1).

17        **A.    The government violated *Brady* by suppressing information**
18        **         material to sentencing and to waiver of trial and guilty plea**

19        Due Process requires the government to disclose, irrespective of request,

20   any evidence "both favorable to the accused and 'material either to guilt or to

21   punishment.'" *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Here, that includes

22   information directly rebutting the government's sentencing arguments, as well

23   as information that could be used to support an argument regarding unwarranted

24   sentencing disparity under 18 U.S.C. § 3553(a)(6).[6]

25

26        [6] *See* Dkt. 5 ¶ 23 (expressly leaving § 3553(a) factors, including (a)(6),
27   open for litigation); *United States v. Sung*, 740 F. App'x 878, 880 (9th Cir.
     2018) (vacating sentence for failure to consider disparity); *United States v.*
28   *Quinn*, 537 F. Supp. 2d 99, 117-18 (D.D.C. 2008) (government violated *Brady*

4

In its final sentencing brief, the government told this Court that a 10-to-12.5 year sentence was necessary because:

> Clandestine foreign efforts to subvert U.S. democratic processes in recent years have caused a significant portion of the body politic to lose faith in our public institutions.... A sentence within the guide-line range is necessary to deter other would-be FARA and FECA offenders from compromising our elections and institutions with foreign cash.[7]

What the government did not tell Zuberi or the Court was that two weeks after it signed Zuberi's plea agreement, and two days before docketing it, the same U.S. Attorney's Office entered, under seal, a deferred-prosecution agreement with another "would-be FECA offender" charged with "compromising our elections and institutions with foreign cash."[8] The day after submitting the above argument to this Court, the prosecutors granted deferred prosecution to a second "FECA offender" charged with the same conduct.[9] Two weeks after Zuberi's sentencing, they granted deferred prosecution to a third co-schemer.[10]

---

by not disclosing contemplated no-incarceration plea deal with co-conspirator).

[7] Dkt. 233 at 2 (Nov. 9, 2020); *accord id.* at 7.

[8] *See Lebanese-Nigerian Billionaire and Two Associates Resolve Federal Probe into Alleged Violations of Campaign Finance Laws*, U.S. Attorney's Office for Cent. Dist. of Cal. (March 31, 2021), https://bit.ly/3gjFOYN (announcing Oct. 20, 2019 deferred-prosecution agreement with Gilbert Chagoury); *United States v. Chagoury*, Deferred Pros. Agm. at 2, https://bit.ly/32p3kO.

[9] *See* USAO Press Release, note 8, *supra* (announcing Nov. 10, 2020 deferred-prosecution agreement with Joseph Arsan); *United States v. Arsan*, Deferred Pros. Agm., https://bit.ly/3ao5HCX.

[10] *See* USAO Press Release, note 8, *supra* (announcing March 1, 2021 deferred-prosecution agreement with Joseph Baaklini); *United States v. Baaklini*, Deferred Pros. Agm., https://www.justice.gov/usao-cdca/press-release/file/1382086/download.

Zuberi respectfully requests that the Court take judicial notice of these deferred- and non-prosecution agreements, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned":

5

Like Zuberi, these individuals were charged by the Public Corruption and Civil Rights Section of this U.S. Attorney's Office with "compromising our elections and institutions with foreign cash," in violation of FECA. Chagoury, a foreign national, was charged with making illegal foreign contributions, including conduit contributions, in a six-figure amount to U.S. presidential and congressional candidates.[11] Arsan and Baaklini, foreign nationals, were charged with aiding and abetting those contributions by sending reimbursements to the conduit contributors.[12] Arsan's agreement also resolved a multi-year criminal tax investigation.[13] In a separate transaction, Baaklini wrote a $50,000 personal check to then-U.S. Secretary of Transportation Ray LaHood, who accepted the money understanding it came from Chagoury.[14]

Unlike Zuberi, for whom the government urged more than a decade in prison, these "would-be FECA offenders" received secret agreements freeing them from prosecution, *even though they paid $50,000 directly to a sitting Cabinet member to use for "home repairs."*[15]  The agreements were announced only

_____

the agreements themselves, which were publicly disseminated by the U.S. Attorney's Office itself through its own press release. *See* Fed. R. Evid. 201(b)(2). "The [C]ourt may take judicial notice at any stage of the proceeding," Fed. R. Evid. 201(d), including on appeal, and "must take judicial notice if a party requests it and the [C]ourt is supplied with the necessary information." Fed. R. Evid. 201(c)(2); *see In re Icenhauer*, 755 F.3d 1130, 1142 (9th Cir. 2014).

[11] USAO Press Release, note 8, *supra*; Chagoury Deferred Pros. Agm. Ex. B (Statement of Facts), note 8, *supra*.

[12] *See* Arsan Def. Pros. Agm. Ex. B (Statement of Facts), note 9, *supra*; Baaklini Def. Pros. Agm. Statement of Facts, note 10, *supra*.

[13] *See* USAO Press Release, note 8, *supra*; *compare* Arsan Def. Pros. Agm. ¶ 2, note 9, *supra* (resolving investigation of "Arsan's tax violations in tax years 2012-2016")*, with* Zuberi Plea Agm ¶ 3 (resolving IRS closing agreements for tax years 2012-2015).

[14] *See* USAO Press Release, note 8, *supra*, at 2; *United States v. LaHood*, Non-Prosecution Agm. Ex. A (Statement of Facts), https://bit.ly/3o0oBp0 .

[15] LaHood Agm. Ex. A, Statement of Facts, note 14, *supra*.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1    after Zuberi's sentencing. Secretary LaHood, accused of failing to disclose the

2    payment on ethics disclosure forms, falsely denying the payment to the FBI,

3    then characterizing it as a "loan" whose terms he could not remember and

4    which he did not repay, was not prosecuted.[16]

5          Furthermore, Chagoury was given his secret deal in part because of his

6    "unique assistance to the U.S. government."[17]  It is undisputed, and well-known

7    to the prosecution, that Zuberi provided extensive assistance to the United

8    States government for almost two decades.  He was entitled to know at least the

9    broad contours, and to tell the court, how his assistance stacked up against Cha-

10   goury's.[18]

11         To be sure, individual facts may differ, and prosecutors have discretion to

12   reach different dispositions in different cases. But prosecutors are not free to

13   withhold such information when it is favorable to the defense and bears directly

14   on guilt or punishment. Its suppression is a patent *Brady* violation.[19]

15         The government cannot credibly claim it did not know this information.

16   These cases were prosecuted by the same Public Corruption and Civil Rights

17   Section that prosecuted Zuberi.[20] There can be no serious doubt that AUSA

18   O'Brien, the Deputy Chief of that unit, knew of these agreements, yet willfully

19

20

21         [16] *See id.*

           [17] USAO Press Release, note 8, *supra*.

22         [18] *See* 18 U.S.C. § 3553(a)(6); *Kwon Woo Sung*, 740 F. App'x 878, 880

23   (9th Cir. 2018) (vacating defendant's sentence for, among other reasons, district
     court's failure to consider the need to avoid unwarranted sentence disparities).

24         [19] *See Quinn*, 537 F. Supp. 2d at 117-18; *see also United States v. Bundy*,

25   968 F.3d 1019, 1032-37, 1038-45 (9th Cir. 2020) (government's withholding
     evidence rebutting prosecution's arguments was flagrant *Brady* violation).

26         [20] *Compare* USAO Press Release, note 8, *supra*, *with Political Donor

27   Sentenced to 12 Years in Prison for Lobbying and Campaign Contribution
     Crimes, Tax Evasion, Obstruction of Justice*, U.S. Attorney's Office for Cent.

28   Dist. of Cal. (Feb. 18, 2021), https://bit.ly/3vOVtnk.

1  kept them from the defense.[21] The reason is obvious: they destroyed the argu-

2  ment that only a decade-plus in prison for Zuberi could deter such individuals

3  from "compromising our elections and institutions with foreign cash."[22]

4       This information was also material to Zuberi's waiver of trial and guilty

5  plea.  "[A] defendant can argue that his guilty plea was not voluntary because it

6  was made in the absence of withheld *Brady* material." *Sanchez v. United States*,

7  50 F.3d 1448, 1453 (9th Cir. 1995). "[T]he issue in a case involving a guilty

8  plea is whether there is a reasonable probability that but for the failure to dis-

9  close the *Brady* material, the defendant would have refused to plead and would

10 have gone to trial." *Id.* The test "is an objective one that centers on 'the likely

11 persuasiveness of the withheld information.'" *Id.* Here, objectively, it is un-

12 likely that if Zuberi had known his prosecutors were giving deferred prosecu-

13 tion to foreign nationals accused of the same foreign-contribution offenses he

14 faced (including, for Arsan, a related five-year tax investigation), he would

15 have pled guilty under guidelines factors that could yield up to 15 years in

16 prison. At the very least, that likelihood is fairly debatable or fairly doubtful.

17      A decision to waive trial and plead guilty is not intelligent and voluntary

18 if *Brady* information is withheld.  *Sanchez*, 50 F.3d at 1453. "Moreover, if a de-

19 fendant may not raise a *Brady* claim after a guilty plea, prosecutors may be

20 tempted"—as the prosecutor was here—"to deliberately withhold [favorable

21 material] information as part of an attempt to elicit guilty pleas." *Id.* Thus, a

22 *Brady* claim is a basis for challenging the voluntariness of the guilty plea, under

---

[21] *Compare Bundy*, 968 F.3d at 1038-40.

[22] *See supra* at 5; *compare Bundy*, 968 F.3d at 1032-37.  Notably, the USAO's description of its post-plea Brady obligations acknowledged only the duty to turn over "exculpatory evidence," not evidence material to punishment. Dkt. 54, at 10. This is the argument rejected in *Quinn*, 537 F. Sup. 2d at 117 (holding that a co-conspirator's no-jail plea deal was *Brady* information).

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1   both *Sanchez* and Zuberi's plea agreement (*see* Dkt. 5 ¶ 27).

2        Zuberi's *Brady* claim is a "fairly debatable" question that if resolved in

3   his favor would likely result in withdrawal of his plea and a new trial.

4       **B.**    **Zuberi's counsel had an undisclosed actual conflict of interest**

5        Despite the prosecutor's concealment, one person on the defense knew of

6   at least one of these deferred prosecution agreements: Zuberi's lawyer, Evan

7   Davis. Davis knew because he was also Joseph Arsan's lawyer.[23] Arsan's

8   agreement was signed November 10, 2020—the day after AUSA O'Brien urged

9   ten to twelve years for Zuberi, to "send a message" to those such as Arsan. (*See*

10  Dkt. 233, at 2, 7.)  Despite knowing that Arsan's agreement squarely contra-

11  dicted that argument, Davis *never said a word to his client, Zuberi, or this*

12  *Court*. That is a stark, undeniable conflict of interest.

13       "[A] criminal defendant has the right to be represented by counsel whose

14  loyalties are undivided." *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir.

15  2001) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)).  "Defense counsel

16  have an ethical obligation to avoid conflicting representations and to advise the

17  court promptly when a conflict of interest arises." *Cuyler v. Sullivan*, 446 U.S.

18  335, 346 (1980). Where counsel does not alert his client or the Court, the client

19  "must demonstrate that an actual conflict of interest adversely affected his law-

20  yer's performance" to obtain relief.  *Id.* at 348; *Lockhart*, 250 F.3d at 1230.

21       "A showing of 'adverse effect' is not the same as showing prejudice."

22  *United States v. Walter-Eze*, 869 F.3d 891, 901 (9th Cir. 2017). Indeed, "a de-

23  fendant who shows that a conflict of interest actually affected the adequacy of

24  his representation need not demonstrate prejudice." *Mickens v. Taylor*, 535 U.S.

25  162, 171 (2002). Thus, "a defendant need not 'show actual harm,' but just 'ac-

26

27  ———————————————

28     [23] *See* Arsan Def. Pros. Agm., note 9, *supra*, at 14.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1  tual conflict,'" *Walter-Eze*, 869 F.3d at 901, that is, conflict that "adversely af-
2  fected his counsel's performance." *Mickens*, 535 U.S. at 174. The central ques-
3  tion is what the lawyer was "compelled to *refrain* from doing, not only at trial
4  but also as to possible pretrial plea negotiations [or] in the sentencing process."
5  *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978). The right to counsel is vio-
6  lated when the "advocate's conflicting obligations have effectively sealed his
7  lips on crucial matters." *Id.*; *accord Mickens*, 535 U.S. at 168.

8      Here, Davis's conflicting duty to Arsan "sealed his lips" about the de-
9  ferred-prosecution agreements.[24] Because the USAO kept those agreements se-
10 cret, Davis could not reveal them in Zuberi's case, out of duty to Arsan.[25] That
11 failure adversely affected Davis's advocacy on behalf of Zuberi: it kept him
12 from directly rebutting AUSA O'Brien's argument that a decade in prison was
13 necessary to deter "would-be FECA offenders" like Arsan from "corrupting the
14 fabric of our democracy in exchange for foreign cash." Dkt. 233 at 7.[26] It also
15 "sealed his lips" from arguing the vast and unwarranted disparity between 12
16 years for Zuberi and no prosecution for Arsan—an issue expressly reserved
17 (Dkt. 5 ¶ 23) and vigorously litigated in this case (*see* Dkt. 233 at 15-18; Dkt.
18
19

20      [24] At a minimum, Davis knew of Arsan's agreement—he appears on it.
21 *See* Arsan Def. Pros. Agm., note 9, *supra*, at 14. In fact, he likely knew of all
22 three. Arsan participated personally in reimbursing $150,000 of the $180,000 in
   illegal foreign contributions at issue in all three deferred prosecutions. *See*
23 Arsan Plea Agm. Ex. B (Statement of Facts); USAO Press Release, note 8, *su-*
   *pra*. Because those cases were investigated and charged together for the same
24 scheme, Davis likely knew of all three deferred-prosecution agreements (if not
25 from the USAO, then from his client Arsan).
26      [25] Zuberi did not learn of Arsan's case, or Davis's representation of
   Arsan, until after the government's March 31, 2021 press announcement.
27      [26] *Cf. Bundy*, 968 F.3d at 1036, 1039-40 (noting importance of withheld
28 evidence that would have directly rebutted government arguments).

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

255 at 39-46) with no mention of this USAO's lenience to the other contemporaneously charged FECA offenders.

With that adverse effect on Davis's advocacy established, the Court does not inquire further into prejudice. *Mickens*, 535 U.S. at 166; *Sullivan*, 446 U.S. at 349-50; *Walter-Eze*, 869 F.3d at 900. The question is not whether Davis's impaired advocacy made a difference in Zuberi's sentence. Because Davis *did not even make the arguments*, prejudice is presumed.

Davis's conflict infected Zuberi's plea as well as his sentencing. To be knowing, intelligent, and voluntary, a guilty plea must be counseled. *Brady v. United States*, 397 U.S. 742, 749 & n.6 (1970). An attorney whose conflict adversely affects his advocacy does not satisfy the Sixth Amendment. *E.g., Holloway*, 435 U.S. at 490. Such an actual conflict is a basis for challenging the plea, under both the law, *e.g., id.*, and Zuberi's plea agreement (Dkt. 5 ¶ 27).

Here, Davis represented Zuberi on his plea agreement (Dkt. 5 at 20) and at his plea hearing (Dkt. 36 at 2-3). Davis certified he had "carefully and thoroughly discussed every part of th[e] agreement" with Zuberi, had fully "advised [Zuberi] of his rights, ... [and] of the sentencing factors set forth in 18 U.S.C. § 3553(a)," and that Zuberi's "decision to enter into this agreement is an informed and voluntary one." Dkt. 5 at 21-22. The agreement highlighted the importance of the § 3553(a) factors, *id.* ¶ 19, and reserved Zuberi's right to argue those factors, including deterrence and unwarranted disparity, *id.* ¶ 23.

Yet Davis never disclosed to Zuberi, and never argued to the Court, that the Public Corruption Section was granting deferred-prosecution agreements to foreign nationals charged with six-figure conduit-contribution offenses, while insisting on 10 to 12.5 years for Zuberi to "send a message" to such offenders. Nor did Davis reveal that one of those agreements resolved his other client's tax investigation for the same years for which Zuberi faced investigation.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1    As noted, it is overwhelmingly likely that Davis knew not only of

2    Arsan's agreement, but of Chagoury's as well.  Chagoury's agreement was en-

3    tered October 20, 2019[27]—two weeks after Davis and Zuberi signed Zuberi's

4    agreement (Dkt. 5 at 20-21), and two days before the government filed it with

5    the Court (*id.* at 1).  Yet Davis's "full[] and thorough[]" discussion with Zuberi

6    did not include the fact that while Zuberi's agreement called for a guidelines

7    level of 26 (63-78 months) under FECA, and an overall level of up to 34 (151-

8    188 months), Chagoury was receiving deferred prosecution.  Had Davis so in-

9    formed him, Zuberi would not have agreed to his plea deal.[28]

10   Even if, *arguendo*, Davis did not know of Chagoury's deferred-prosecu-

11   tion agreement in November 2019 when Zuberi changed his plea (on Davis's

12   advice), he almost certainly knew of it by the time Arsan entered his deferred

13   prosecution agreement on November 10, 2020.[29] At that time, Davis still repre-

14   sented Zuberi in his upcoming sentencing proceedings, and Zuberi could still

15   have moved to withdraw the plea based on a fair and just reason. *See* Fed. R.

16

17

18

---

19   [27] Chagoury Plea Agm. at 18, note 8, *supra*.

20   [28] The Ninth Circuit's recent decision in *United States v. Olson*, 988 F.3d
     1158 (9th Cir. 2021), holding that the Sixth Amendment right to counsel does

21   not attach to purely pre-indictment plea bargaining, does not bar Zuberi's con-

22   flict-of-interest challenge here. Whether or not the Sixth Amendment right to
     counsel attaches to pre-charge plea bargaining, it unquestionably attaches with

23   the filing of charges, *see id.* at 1162 (quoting *Kirby v. Illinois*, 406 U.S. 682,
     688 (1972)), and applies to waiver of rights at a plea hearing, *see Brady*, 397

24   U.S. at 748-49 & n.6. Here, Zuberi pled guilty at a Nov. 22, 2019 hearing (Dkt.

25   34), after the filing of the Information (Dkt. 1), the advisement of the right to
     counsel (Dkt. 13), and the arraignment (Dkt. 17). He was represented by Davis

26   at the plea hearing (Dkt. 36, at 2-3), and had an unquestioned right for that rep-

27   resentation to be conflict-free.

28   [29] *See* note 24, *supra*.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1  Crim. P. 11(d)(2)(B). Yet Davis took no action to advocate for Zuberi based on
2  Arsan's or Chagoury's lenient agreements: He did not move to withdraw
3  Zuberi's plea or suggest doing so; nor did he suggest using such a possibility to
4  modify the agreement or negotiate any sentencing concessions. Instead, loyal to
5  Arsan, he stayed silent to Zuberi, doing nothing to challenge or modify Zuberi's
6  agreement or plea. Davis's "struggle to serve two masters could not seriously be
7  doubted." *Sullivan*, 446 U.S. at 349.

8      Because of Davis's actual conflict of interest, Zuberi need not show prej-
9  udice—that is, he need not show that but for the conflict he likely could have
10 withdrawn his plea. "[T]o assess the impact of a conflict of interest on the attor-
11 ney's opinions, tactics, and decisions in plea negotiations would be virtually im-
12 possible." *Holloway*, 435 U.S. at 490-91. For that reason, prejudice is pre-
13 sumed. *Mickens*, 535 U.S. at 166-68, 173-74, 175; *Sullivan*, 446 U.S. at 349.

14     On this motion for bail pending appeal, the question is not whether an ac-
15 tual conflict has been shown (though it has), much less whether it would result
16 in plea withdrawal (though it would). It is only whether the question of an ac-
17 tual conflict is substantial, *i.e.*, fairly debatable. On this record, it is more than
18 fairly debatable. Zuberi is entitled to remain on bail pending appeal.

19 **C.    Zuberi's plea agreement should be set aside based on the**
20 **government's fraudulent inducement and its contradictory**
   **argument regarding deletion of emails**

21     Zuberi's plea agreement was premised on Zuberi timely pleading guilty
22 and admitting his offense conduct, and the government recommending credit
23 for acceptance of responsibility. Zuberi waived indictment or trial, pled guilty
24 to specified offenses, admitted his offense conduct in an agreed statement of
25 facts, and did so in time for the government to avoid preparing for trial. *See*
26 *generally* Dkt. 36 (plea hearing). The government, for its part, agreed to:

27     b.    Abide by all agreements regarding sentencing contained in
28

13
DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1  this agreement[; and]

2  c.    Provided that defendant demonstrates an acceptance of re-
3  sponsibility for the charged offenses as defined in U.S.S.G.
   § [3]E1.1, including as further explained in its application notes
4  and in particular Note 1(A), recommend a two-level reduction in
5  the applicable Sentencing Guidelines offense level, pursuant to
   U.S.S.G. § 3E1.1, and, if necessary, move for an additional one-
6  level reduction if available under that section.

7  Dkt. 5 ¶ 5.b, c.  But the government did not recommend acceptance-of-respon-

8  sibility credit, nor does it appear it ever intended to.  Within days of the agree-

9  ment, the government demanded that Zuberi either concede obstruction of jus-

10 tice—an issue specifically reserved under the plea agreement—or lose ac-

11 ceptance-of-responsibility credit for falsely or frivolously denying it. When

12 Zuberi declined to concede, the government refused to recommend credit for

13 acceptance, both on the threatened false-or-frivolous-denial ground, and also on

14 the ground that obstruction of justice was "antithetical" to acceptance of respon-

15 sibility under U.S.S.G. § 3E1.1, Application Note 4.  Dkt. 120 at 1-2.

16     This pre-planned strategy—laid out in one of the government's first post-

17 plea filings to this Court (Dkt. 54)—shows the government's promise of ac-

18 ceptance-of-responsibility credit was illusory, and Zuberi's agreement was thus

19 induced by misrepresentation. One of the government's chief arguments for ob-

20 struction of justice—deletion of emails—was also likely based on facts the gov-

21 ernment knew to be contradictory. The government insisted to this Court that

22 Zuberi obstructed justice by deleting relevant emails, even while likely conced-

23 ing that Zuberi had done so at the direction of the United States government.

24     **1.    The government induced Zuberi's plea by**
25         **misrepresentation**

26     "[T]he conditions for a valid plea 'presuppose fairness in securing agree-

27 ment between an accused and a prosecutor." *Mabry v. Johnson*, 467 U.S. 504,

28

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

509 (1984) (quoting *Santobello v. New York*, 404 U.S. 257, 261-62 (1971)). "'A plea of guilty made by one fully aware of the direct consequences, including the actual value of any commitments made to him by the ... prosecutor, ... must stand unless induced by ... misrepresentation (including unfulfilled or unfulfillable promises).'" *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). "It follows that when the prosecution breaches its promise ..., the defendant pleads guilty on a false premise.'" *Id.*

In *Puckett v. United States*, 556 U.S. 129 (2009), the Supreme Court qualified the above statements, holding that the prosecution's failure to fulfill a promise that induced a guilty plea does not render the plea involuntary, but rather voidable as a result of the government's breach. *Id.* at 137. Misrepresentation "requires an intent *at the time of contracting* not to perform." *Id.* at 138 n.1 (citing Williston). Here, unlike in *Brady*, *Mabry*, or *Puckett*, the prosecution's conduct shows intent not to perform—not to credit Zuberi for acceptance of responsibility, and certainly not to do so if Zuberi exercised his right to litigate the issues expressly reserved in the agreement.

The government executed Zuberi's plea agreement on October 8, 2019. Dkt. 5 at 20. As it explained to this Court, it did not get what it wanted in the agreement: the government's view of Zuberi's offense conduct was vast, Dkt. 54 at 3-4, but "defendant's admissions in the plea agreement were significantly limited in scope. Defendant only pleaded guilty to (a) a single FARA violation for lobbying work on behalf of Sri Lanka, (b) an unspecified subset of the FECA violations alleged in the information, and (c) tax evasion resulting in a loss[] somewhere [between] $3.5[] and $9.5[] [million]". *Id.* at 4.

Accordingly, *beginning a week after filing the plea agreement*, the government demanded that Zuberi stipulate to obstruction of justice, or face "the impact

---

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1  a frivolous denial of relevant conduct would have on ... acceptance of responsi-

2  bility." Dkt. 54 at 6-7. When the defense declined to stipulate, the government

3  "filed its position on obstruction on December 13, 2019" (*id.* at 7)—just three

4  weeks after Zuberi's November 22, 2019 change of plea (Dkt. 36), and well be-

5  fore probation had issued a presentence report or the parties had objected to its

6  accuracy.[30] When Zuberi did contest the government's position on obstruction—

7  as was his right under the plea agreement (Dkt. 5 ¶¶ 22.e, 36; *see* Dkt. 54 at 4),

8  the government followed through, arguing that because Zuberi had (in the gov-

9  ernment's view) falsely and frivolously denied the government's allegations—an

10  argument not adopted by this Court, Sent. Tr. 40—he should not receive credit

11  for acceptance of responsibility.  *See* Dkt. 229 at 1-3; Dkt. 120 at 2-4.

12  In addition to its "frivolous denial" argument, the government also ar-

13  gued that under U.S.S.G. § 3E1.1 App. Note 4, an "obstruction enhancement

14  (U.S.S.G. § 3C1.1) is ordinarily antithetical to a reduction for acceptance." Dkt.

15  120 at 1-2.[31] This argument reveals the government's post-plea ultimatum to be

16  a Catch-22: Zuberi could stipulate to the obstruction-of-justice enhancement un-

17  der § 3C1.1, which under Application Note 4 would mean no credit for ac-

18  ceptance. Or he could decline to stipulate, and contest the enhancement, in

19  which case, in the government's view, his false and frivolous denial would re-

20  sult in no credit for acceptance under Application Note 1(A). Heads the govern-

21  ment wins; tails Zuberi loses. Inducing a guilty plea "based on such an illusory

---

23  [30] *See* Fed. R. Crim. R. 32(e), (f).  Probation issued the initial presentence
24  report January 24, 2020 (Dkt. 58), Defendant filed his objections March 23,
2020 (Dkt. 90), and the government responded April 13, 2020 (Dkt. 106).

25  [31] Application Note 4 provides: "Conduct resulting in an enhancement
26  under §3C1.1 (Obstructing ... Justice) ordinarily indicates that the defendant has
not accepted responsibility for his criminal conduct. There may, however, be
27  extraordinary cases in which adjustments under both §§3C1.1 and 3E1.1 may
28  apply."

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1    promise would be a violation of due process," *United States v. Franco-Lopez*,

2    312 F.3d 984, 991 (9th Cir. 2002), and would fall below "the high standard of

3    fair dealing" expected from prosecutors. *United States v. De La Fuente*, 8 F.3d

4    1333, 1340 (9th Cir. 1993).

5         Disclaiming any such trap, the government insists it was willing all along

6    to recommend credit under Application Note 4's exception for "extraordinary

7    cases," if Zuberi's acceptance rose to an extraordinary level—by, among other

8    things, paying his entire $16 million in restitution before sentencing, and mak-

9    ing additional FARA filings conceding FARA violations beyond the one to

10   which he pled guilty. *See* Dkt. 229 at 2-3; Dkt. 120 at 2. The lead prosecutor

11   submitted a declaration detailing his claimed repeated warnings to defense

12   counsel of what Zuberi had to do to obtain credit. *See* Dkt. 229 at 2.

13        The first problem for the government is that those warnings and under-

14   standings are not contained in the plea agreement. The agreement recites that all

15   of its terms are contained in the four corners of the instrument, with "no prom-

16   ises, understandings, or agreements" outside the written agreement.  Dkt. 5

17   ¶ 38. At the plea hearing, the Court confirmed Zuberi's understanding, and the

18   government's representation, that the written agreement was the entire agree-

19   ment. Dkt. 36 at 10-11. That agreement says nothing about extraordinary cir-

20   cumstances under Application Note 4; Application Note 4 is not even men-

21   tioned. *See* Dkt. 5 at 4-5.

22        Instead, the agreement says only that defendant must "demonstrate an ac-

23   ceptance of responsibility for the charged offenses as defined in U.S.S.G.

24   § [3]E1.1, including as further explained in its application notes and in particu-

25   lar Note 1(A)." *Id.* Note 1(A) simply describes the first indicium of acceptance:

26   "truthfully admitting the conduct comprising the *offense(s) of conviction,* and

27   truthfully admitting or not falsely denying any additional relevant conduct for

28

---

17

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1  which the defendant is accountable under § 1B1.3 (Relevant Conduct)."

2  § 3E1.1 App. Note 1(A) (emphasis added). That conduct, even under

3  § 1B1.3(a)(1), is limited to the offense of conviction.  "[A] defendant is not re-

4  quired to volunteer, or affirmatively admit, relevant conduct beyond the offense

5  of conviction in order to obtain a reduction ...." App. Note 1(A). Moreover, a

6  defendant who contests the government's allegations does not thereby become

7  ineligible if the Court rules against him: "the fact that a defendant's challenge is

8  unsuccessful does not necessarily establish that it was either a false denial or

9  frivolous." *Id.* This Court did not rule that Zuberi's challenges regarding ob-

10  struction of justice were false or frivolous. Sent. Tr. 40.

11        The second problem with the government's argument about Note 4 is its

12  mistake about the timing of obstructive conduct. In the Ninth Circuit,

13        the relevant inquiry for determining if a case is an extraordinary
14        case within the meaning of Application Note 4 is whether the de-
           fendant's obstructive conduct is *not inconsistent* with the defend-
15        ant's acceptance of responsibility. Cases in which obstruction is
           not inconsistent with an acceptance of responsibility arise when a
16        defendant, *although initially attempting to conceal the crime*, even-
17        tually accepts responsibility for the crime and abandons all at-
           tempts to obstruct justice."
18

19  *United States v. Hopper*, 27 F.3d 378, 383 (9th Cir. 1994) (emphasis added).

20  Cases applying this distinction focus on the timing of the charging document

21  and the decision to plead: a defendant who obstructs justice before his indict-

22  ment, but subsequently accepts responsibility by pleading guilty and does not

23  obstruct justice after his plea, may receive the two-point obstruction enhance-

24  ment under § 3C1.1, *see* 27 F.3d at 382, but that does not disqualify him from

25  receiving credit for acceptance of responsibility under § 3E1.1, *see id.* at 383.[32]

26

27  ────────────────

28  [32] Other circuits are in accord.  *See United States v. Rodgers*, 278 F.3d

18

1      Here, the conduct that the government argued was obstruction of jus-

2   tice—deletion of emails (Dkt. 42 at 24-30), and payments to overseas individu-

3   als that the government claimed were payoffs to stay outside the U.S. and not

4   testify (*id.* at 6-27) —were all pre-plea conduct, known to the government when

5   it entered into the plea agreement. That conduct may have been used to support

6   the two-point guidelines enhancement for obstruction, *Hopper*, 27 F.3d at 382,

7   but it was not inconsistent with acceptance of responsibility in the plea, nor was

8   it a bar to credit for acceptance under § 3E1.1 and App. Note 4. *See id.* at 383.

9      The government's promise that induced Zuberi's plea was unfulfilled.

10   And the government's explanation of its strategy (Dkt. 54 at 6-7; Dkt. 229 at 1-

11   3) confirms that was the government's intent from the time of the plea agree-

12   ment. "[T]he inducement to enter a guilty plea based on such an illusory prom-

13   ise [was] a violation of due process," *Franco-Lopez*, 312 F.3d at 991 (following

14   *Dillon v. United States*, 307 F.2d 445, 449 (9th Cir. 1962)), and rendered

15   Zuberi's plea agreement voidable, *Puckett*, 556 U.S. at 137-38 & n.1.

16      Although Zuberi's counsel pointed out the government's obligation under

17   the plea agreement to recommend and move for acceptance-of-responsibility

18   credit (*see* Dkt. 136 at 14), he did not move to withdraw the plea.  Because prior

19   counsel sought specific performance rather than rescission of the plea agreement,

20   the appellate court may review for plain error.  *Puckett*, 556 U.S. at 133-38. That

21   standard is satisfied here.

22

23   _____

24   599, 601 (6th Cir. 2002) ("[T]he relevant time period for acceptance of respon-

25   sibility does not begin until the date that the federal authorities indict the de-
     fendant and he becomes aware that he is subject to federal investigation and

26   prosecution.") (citation omitted); *United States v. Bryant*, 398 Fed. App'x. 561,

27   565 (11th Cir. 2010) (adopting a "bright line rule that a district court should not
     deny the two-level USSG § 3E1.1(a) reduction on the basis of pre-federal-

28   charge conduct").

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1    *First*, the error was plain or obvious: Plea agreements are contracts, *id.* at

2    137, and inducing a plea by a false promise, knowing or intending the promise

3    will not be fulfilled, is both a contractual violation warranting rescission, *id.* at

4    138 n.1 (citing 26 Williston § 69.11), and a due process violation of the most

5    basic sort, *see Santobello*, 404 U.S. at 262; *Mabry*, 467 U.S. at 509; *Franco-*

6    *Lopez*, 312 F.3d at 990-91. Whether the agreement should be rescinded or spe-

7    cifically enforced is up to the defendant. *See Buckley*, 441 F.3d at 699 n.11

8    ("[A] defendant may, if he so chooses, elect instead to rescind the agreement").

9    These principles have been clearly established since *Santobello* fifty years ago.

10   *Second*, Zuberi's rights were substantially affected: as to his sentence,[33]

11   the government's refusal to recommend acceptance of responsibility made a

12   difference of three levels in the advisory guidelines range, the sentencing start-

13   ing point.  *See* § 3E1.1; *Gall v. United States*, 552 U.S. 38, 49 (2007).  An error

14   in the guidelines level "can, and most often will, be sufficient to show a reason-

15   able probability of a different outcome absent the error." *United States v. Bau-*

16   *tista*, 989 F.3d 698, 702 (9th Cir. 2021) (quoting *Molina-Martinez v. United*

17   *States*, 136 S. Ct. 1338, 1345 (2016)).  This Court did not, like the *Puckett*

18   court, rule that acceptance of responsibility was unheard of because the defend-

19   ant had continued a "life of crime" after his plea. *Cf.* 556 U.S. at 143; *see id.* at

20   132-33. Instead, the Court accepted the government's argument and followed

21   its recommendation. Had the government recommended credit for acceptance

22   of responsibility, in "unified front" with Zuberi, *see United States v. Camarillo-*

23   *Tello*, 236 F.3d 1024, 1028 (9th Cir. 2001), that recommendation likely would

24

25

26   [33] In *Puckett*, the Supreme Court held that "the question with regard to
     prejudice is not whether [the defendant] would have entered the plea had he
27   known about the future violation," but instead, "the 'outcome' he must show to
     have been affected is his sentence." 556 U.S. at 142 n.4.
28

20

1  have made a difference.[34]

2  *Finally*, the government's inducing a guilty plea by making a promise it

3  knew or intended to be illusory "seriously affect[s] the fairness, integrity or

4  public reputation of judicial proceedings." *Rosales-Mireles v. United States*,

5  138 S. Ct. 1897, 1906 (2018) (citation omitted). Though the *Puckett* court re-

6  jected *per se* rules that a certain type of violation will surpass that threshold in

7  every case, and required application of this prong on a case-specific basis, 556

8  U.S. at 142, there are no "countervailing factors" here that excuse the govern-

9  ment's sharp dealing. *See Rosales-Mireles*, 138 S. Ct. at 1909 & n.4.  On the

10 contrary, the "cynicism and bad faith implicit in negotiating an agreement under

11 which [the government] persuaded [Zuberi] to [plead guilty] by offering what

12 appeared to be a reduced sentence but in fact offered him no benefit" fell be-

13 neath "the high standard of fair dealing" expected from prosecutors.[35]

### 2.     The government's obstruction position was inconsistent with facts the government conceded

14
15
16 "An attorney for the government is a 'representative not of an ordinary

17 party to a controversy, but of a sovereignty whose obligation ... in a criminal

18 prosecution is not that it shall win a case, but that justice shall be done.'" *United*

19 *States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002) (quoting *Berger v. United*

20 *States*, 295 U.S. 78, 88 (1935)). "'The prosecutor's job isn't just to win, but to

21 win fairly, staying well within the rules.'" *Id.* (quoting *United States v.*

22 *Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993)). "It is certainly within the bounds

23 ────────────────

24 [34] If prejudice as to the plea, not the sentence, is required (*but see Puck-*
25 *ett*, 556 U.S. at 142 n.4), the issue is not whether the defendant subjectively
   "would have entered the plea had he known about the future violation," *id.*, but
26 instead objectively whether knowledge that the government's promise was illu-
   sory would have led a reasonable defendant to reject the plea. *See Sanchez*, 50
27 F.3d at 1453. It would have.

28 [35] *De La Fuente*, 8 F.3d at 1340.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1  of fair advocacy for a prosecutor, like any lawyer, to ask the [factfinder] to

2  draw inferences from the evidence that the prosecutor believes in good faith

3  might be true. But it is decidedly improper for the government to propound in-

4  ferences that it knows to be false, or has very strong reason to doubt." *Id.* (cita-

5  tion omitted).

6        Here, the government's position on obstruction of justice, and consequent

7  lack of acceptance of responsibility, rested heavily on the argument that Zuberi

8  deleted emails that were potentially relevant to the government's investigation,

9  and that he did so specifically intending to obstruct that investigation. *See* Dkt.

10  42 at 24-30; Dkt. 233 at 10; Dkt. 228 at 27.  This Court accepted that argument,

11  and based its findings of obstruction of justice and lack of acceptance of respon-

12  sibility in significant part on that inference. *See* Sent. Tr. 14, 16, 25-26.

13        But in September 2020, the prosecution became aware from the defense

14  that during meetings with the defendant, an agency of the United States deleted

15  electronic communications potentially relevant to the government's investiga-

16  tion from devices owned or used by Zuberi. That same agency directed Zuberi

17  to delete other emails, knowing that Zuberi was under criminal investigation.

18  These actions and directions from the U.S. government led to deletion of emails

19  that were potentially relevant to the investigation and helpful to the defendant.

20        The government was not required to credit the defense information at

21  face value. But on information and belief,[36] we understand that the government

22

23

24  _____

25        [36] No member of the defense team has yet had access to review the por-

26  tion of the sentencing record that is sealed for CIPA-related reasons.  We are

submitting this motion now because of its urgency in light of Zuberi's impend-

27  ing report date. When we are able to review the entire record we will supple-

28  ment this briefing as appropriate.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

1  did accept that information as true, to avoid producing evidence about the gov-

2  ernment's involvement in the deletion of emails.[37] If the government conceded

3  that a government agency had directed Zuberi to delete emails, it was then no

4  longer free to argue without reservation that Zuberi deleted emails all on his

5  own with obstructive intent.      Maintaining that conflicting position crossed

6  the line from permissible inference to urging a theory contrary to the facts as

7  the government set them on the record. Such advocacy violated the govern-

8  ment's duty to put truth and justice before simple pursuit of punishment.

9      Both the government's inducement of Zuberi's plea with an illusory

10  promise and its persistence in arguing Zuberi obstructed justice by deleting

11  emails even after conceding he did so at the government's direction support

12  withdrawal of Zuberi's plea.  On this motion, the question is not whether Zuberi

13  has established those challenges to a certainty or even a likelihood. Instead, it is

14  whether the questions are substantial, that is, fairly debatable. They are.

15      **D.    Under Zuberi's plea agreement for the remaining SDNY**
16      **obstruction count, the agreed advisory guidelines range will**
      **likely result in no imprisonment**

17      As shown above, Zuberi's appeal will present fairly debatable questions

18  that, if resolved in his favor, are likely to result in vacatur of his conviction and

19  withdrawal of his plea on the three counts charged in this District.

20

21

---

22  [37] Such stipulation-to-avoid-evidentiary-challenge unfairly kept Zuberi

23  from being able to present his sentencing mitigation case, based on his coopera-
   tion with that government agency, in the most natural and forceful way possible.

24  *See*, *e.g.*, *Old Chief v. United States*, 519 U.S. 172, 187 (1997) ("[M]aking a case
   with testimony and tangible things not only satisfies [legal formalities], but tells

25  a colorful story with descriptive richness....  Evidence ... has force beyond any

26  linear scheme of reasoning, and as its pieces come together a narrative gains mo-
   mentum, with power not only to support conclusions but to sustain the willing-

27  ness of the [factfinder] to draw the inferences, whatever they may be, necessary

28  to reach" an accurate assessment).

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR
RELEASE PENDING APPEAL

His conviction on the single count transferred from the Southern District of New York might remain. When a single overall sentence is imposed as a package sentence on multiple counts, as here, and multiple counts are reversed or vacated on appeal, the case is remanded for resentencing on the remaining count(s). On remand, the sentencing package is unbundled, so that the Court may reach an appropriate sentence only on the undisturbed count.[38]

Here, the SDNY count is governed by a separate plea agreement, which contains an agreed Guidelines level of 12, corresponding to an advisory Guidelines range of 10-16 months.[39] With the California pleas and convictions vacated, Zuberi will be presumed innocent of those charges unless and until he is tried and convicted on them. The remaining stipulated Level-12 offense falls within Zone C of the Sentencing Table. Under U.S.S.G. § 5C1.1(d) and (e), such a sentence may be satisfied by substituting half of the term of imprisonment with intermittent confinement, community confinement, or home detention—yielding a potential sentence of 5-8 months in prison, less than the expected more than 12.5-month duration of the appeal.[40] After *Booker*, the Court is not bound by § 5C1.1 or Zone C, and may vary downward to home confinement or probation.

---

[38] "When a defendant is sentenced on multiple counts and one of them is later vacated on appeal, the sentencing package comes 'unbundled.'" *United States v. Ruiz-Alvarez*, 211 F.3d 1181, 1184 (9th Cir. 2000). In these circumstances, the sentence is vacated "to allow the district court 'to put together a new package' reflecting appropriate punishment for the remaining offense. *United States v. Davis*, 854 F.3d 601 (9th Cir. 2017) (citation omitted).

[39] Case No. 2:20-cr-00155-VAP, Dkt. 5 at 9.

[40] As of September 30, 2020, the median time from notice of appeal to disposition for Ninth Circuit appeals was 12.5 months. United States Courts, Federal Court Management Statistics—Summary, September 2020, https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-september-2020. The appeal here, involving CIPA challenges and a sealed record, will likely take substantially longer.

24

1    Home confinement or probation would be appropriate for the backdating

2    of a single check during the SDNY's investigation into the 2017 presidential in-

3    auguration committee. Home confinement or probation would be appropriate for

4    a first-time, nonviolent offender, particularly one with Zuberi's medical compli-

5    cations, during the ongoing pandemic. A sentence of one year or less would not

6    be served in a federal BOP facility, but instead in a contract, state or local facility

7    that may have higher infection rates, and less stringent protocols, than federal

8    BOP facilities. At a time when the BOP is under direction from the DOJ to reduce

9    the prison population in order to reduce transmission of COVID in prison,[41] a

10   slight downward-varied sentence of home confinement or probation on a single

11   count of having backdated a single $50,000 check makes perfect sense.[42] That

12   short sentence satisfies § 3143(b)(1), and warrants continued release on bail

13   pending appeal.

14   Dated: May 10, 2021                          Respectfully submitted,

15                                                **KUTAK ROCK LLP**

16                                                By: */s/ David A. Warrington*
                                                  David A. Warrington

17

18                                                *Counsel for Defendant*
                                                  *Imaad Shah Zuberi*

19

20

21   _____

22   [41] *See* Office of the Attorney General, Memorandum for Director of Bu-
reau of Prisons, *Prioritization of Home Confinement As Appropriate in Re-*
23   *sponse to COVID-19 Pandemic* (March 26, 2020), https://www.bop.gov/coro-
navirus/docs/bop_memo_home_confinement.pdf.
24
     [42] By comparison, former Secretary LaHood, who faced charges for ac-
25   cepting a $50,000 payment for personal expenses *while he was a sitting Cabinet*
26   *Secretary*, failing to disclose it on required transparency forms, and making
misleading statements to the FBI about it, was given a non-prosecution agree-
27   ment by the same Public Corruption unit of the same U.S. Attorney's Office at
28   the same time Zuberi entered his plea.