1

**KUTAK ROCK LLP**

2

David A. Warrington

*David.warrington@kutakrock.com*

3

901 East Byrd Street, Suite 1000

4

Richmond, Virginia 23219

Telephone: (202) 828-2438

5

Facsimile: (202) 828-2400

6

*Attorney for Defendant Imaad Shah Zuberi*

7

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

UNITED STATES OF AMERICA,

          Case No.: 2:19-cr-00642-VAP

No.: 2:20-cr-00155-VAP

11

       Plaintiff,

12

    v.

          *Hon. Virginia A. Phillips*

13

IMAAD SHAH ZUBERI,

          **DEFENDANT'S REPLY IN**

14

          **SUPPORT OF MOTION FOR**

          **RELEASE PENDING APPEAL**

       Defendant.

15

16

          Hearing Date:  June 7, 2021

17

          Time:  9:00 a.m.

Ctrm:  8A

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REPLY ISO OF MOTION FOR RELEASE PENDING APPEAL

# TABLE OF CONTENTS

**Page**

I.     Zuberi is not a flight risk ...............................................................1

II.    The government distorts the standard of review ........................1

III.   The government distorts the basis for the sentence on the Southern District of New York obstruction count .....................................3

IV.    The deferred-prosecution agreements were *Brady* information................6

V.     Zuberi's counsel had an undisclosed actual conflict of interest................8

    A.     Zuberi's right to counsel had attached ...........................8

    B.     Zuberi's counsel had an actual conflict............................9

VI.    Zuberi's plea agreement should be set aside ...........................11

    A.     The government induced Zuberi's plea by an illusory promise ....11

    B.     The government's factual position regarding obstruction was contradictory.................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brady v. United States*, 397 U.S. 742 (1970) ................................................*passim*

*Cuero v. Cate*, 827 F.3d 879 (9th Cir. 2016) ........................................................6

*Hill v. United States*, 368 U.S. 424 (1962) ......................................................1, 2

*Johnson v. Knowles*, 541 F.3d 933 (9th Cir. 2008) ...............................................2

*Kyles v. Whitley*, 514 U.S. 419 (1995)..................................................................7

*Missouri v. Frye*, 566 U.S. 134 (2012) .................................................................9

*Noguera v. Davis*, 290 F. Supp. 3d 974 (C.D. Cal. 2017)................................10

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ...........................................................9

*Sanchez v. United States*, 50 F.3d 1448 (9th Cir. 1995)..................................3, 8

*Schlup v. Delo*, 513 U.S. 298 (1995) ....................................................................2

*United States v. Allen*, 831 F.2d 1487 (9th Cir. 1987) ........................................3

*United States v. Baker*, 790 F.2d 1437 (9th Cir. 1986) ...................................1, 2

*United States v. Davis*, 854 F.3d 601 (9th Cir. 2017) ......................................5, 6

*United States v. Hayes*, 231 F.3d 663 (9th Cir. 2000) (en banc)........................9

*United States v. King*, 257 F.3d 1013 (9th Cir. 2011) .........................................2

*United States v. Martinez-Martinez*, 69 F.3d 1215 (1st Cir. 1995)....................2

*United States v. McClain*, 133 F.3d 1191 (9th Cir. 1998)...............................4, 5

*United States v. Nagra*, 147 F.3d 875 (9th Cir. 1998)...............................2, 3, 8

*United States v. Olson*, 988 F.3d 1158 (9th Cir. 2021) ....................................8, 9

*United States v. Ortega-Ascanio*, 376 F.3d 879 (9th Cir. 2004) ........................8

*United States v. Ruiz-Alvarez*, 211 F.3d 1181 (9th Cir. 2000) ...........................5

DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL

**Statutes**

18 U.S.C. § 1512(c) ........................................................................5

18 U.S.C. § 3553(a) ........................................................................4

22 U.S.C. § 618(a)(2) ......................................................................5

26 U.S.C. § 7201 .............................................................................5

28 U.S.C. § 2255.........................................................................1, 2

52 U.S.C. § 30109(d)(1)(A)(i) ........................................................5

**Sentencing Guidelines**

U.S.S.G. Chapter 3, Part D ..............................................................4

U.S.S.G. § 5G1.2 .........................................................................4, 5

**Other Authorities**

Fed. R. Crim. P. 11, adv. comm. notes, 1983 amendment ...................2

Fed. R. Crim. P. 11(d)(2)..............................................................3, 8

Fed. R. Crim. P. 11(h)......................................................................2

Fed. R. Crim. P. 51(b)......................................................................3

DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL

Defendant Imaad Shah Zuberi, through counsel, respectfully submits this reply in support of his motion for release pending appeal (Dkt. 368) ("Mot.").[1]

## I.   Zuberi is not a flight risk

When the government proposed, and the Court ordered, voluntary reporting on modified conditions, the government tacitly conceded, and the Court tacitly found, that those conditions are sufficient to prevent flight.  Mot. 3; Dkt. 350-1 at 2; Dkt. 359 at 6.  That has remained true through two post-sentence modifications of conditions and the extension of Zuberi's report date.

The flight-risk question is unrelated to any supposed reason for release, and does not account for monitoring resources (Opp. 2-4).[2]  On the only relevant question—whether the release conditions are sufficient to assure reporting—the Court rejected recent requests for a higher bond amount or new curfew or travel restrictions (other than 24-hour notice for trips to Orange County). Dkt. 373 ¶¶ 2-4.  Nothing in the government's rehash (Opp. 3-4 & n.3) shows a changed circumstance establishing flight risk.

## II.   The government distorts the standard of review

The government begins by claiming Zuberi must show "manifest injustice," *i.e.*, that he is "innocent of the crimes charged."  Opp. 5.  This claim distorts the standard it invokes, based on cobbled quotations from inapposite cases.

For the "manifest injustice" standard, the government quotes *United States v. Baker*, 790 F.2d 1437 (9th Cir. 1986), which applied the standard for collateral § 2255 motions.  *Id.* at 1438 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  Assuming (without conceding) that that collateral-motion

---

[1] The government's opposition brief ("Opp.") is Dkt. 377.  Unless otherwise noted, all docket references are to the docket in No. 19-00642-VAP.

[2] A probation officer responsible for Zuberi's monitoring stated it generally falls into the "very simple" category, given his set curfew, consistent pattern of movement, and travel restrictions.  *See* Dkt. 367-4 ¶ 18.

1

standard applies to this direct appeal,[3] it is easily satisfied here.  The standard is disjunctive—met by *either* a "a fundamental defect which inherently results in a complete miscarriage of justice," *or* an "omission inconsistent with the rudimentary demands of fair procedure."  The "miscarriage of justice" prong is associated with factual innocence.[4]  The "rudimentary demands of fair procedure" prong includes the types of constitutional violations presented here: *Brady*, conflicted counsel, and inducement of a plea through an illusory promise.  The government's claim that Zuberi cannot obtain relief unless he contends he is actually innocent (Opp. 5) aims at the wrong prong of the *Baker/Hill* standard.

The government's cases focus on the factual innocence prong in circumstances divorced from Zuberi's constitutional claims.  *United States v. King*, 257 F.3d 1013 (9th Cir. 2011), involved no constitutional claim, only an effort to withdraw a plea because defendant "was unhappy with his sentence."  *Id.* at 1024.  In *Baker*, the fraudulent inducement claim was not a *Santobello* claim, like Zuberi's, contending the plea was induced by an illusory promise.  Baker contended only that he pled after a prosecutor's false statement about how many witnesses would implicate him—a statement the court found not false when made.  *See* 790 F.2d at 1438.  Although *United States v. Nagra*, 147 F.3d 875 (9th Cir. 1998), involved *Brady* claims, the court ruled those allegations did

---

[3] *Baker*'s application of *Hill*'s § 2255 standard to a direct appeal has been questioned, *see United States v. Martinez-Martinez*, 69 F.3d 1215, 1219-20 (1st Cir. 1995), and is at odds with Rule 11(h)'s prescription of harmless-error review.  *See* Fed. R. Crim. P. 11, adv. comm. notes, 1983 amendment, Rule 11(h) (stating "the *Hill* standard is obviously inappropriate" on direct appeal).  This Court need not resolve that difficulty, because this appeal easily meets the second prong of the *Baker*/*Hill* standard.

[4] *See, e.g., Johnson v. Knowles*, 541 F.3d 933, 935-37 (9th Cir. 2008) (discussing *Schlup v. Delo*, 513 U.S. 298 (1995)).

2

DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL

1  "not involve information unavailable to Appellants." *Id.* at 881. *Nagra*'s dis-
2  cussion of factual innocence did not address the fair procedure prong. *See id.*

3       Zuberi's opening brief explained his constitutional claims. Both a *Brady*
4  violation and an undisclosed actual conflict of interest can render a guilty plea
5  not voluntary. *See* Mot. 8, 11. The government's inducement of a guilty plea
6  by illusory promises violates Due Process. *See id.* at 14-17, 19. The govern-
7  ment's blindered focus on factual innocence ignores that these constitutional vi-
8  olations fall squarely within the "rudimentary demands of fair procedure"
9  prong.[5] The *Baker/Hill* "manifest injustice" standard is no obstacle to review.

10       The government further implies that Zuberi has conceded all his chal-
11  lenges are subject to plain-error review. Opp. 4-5. This too is a distortion.
12  Only Zuberi's third appellate issue—that his plea agreement should be set aside
13  for fraudulent inducement—is reviewable for plain error. *See* Mot. 19-22. The
14  *Brady* and conflict-of-interest issues are constitutional claims reviewed de
15  novo. *See Sanchez*, 50 F.3d at 1453; *United States v. Allen*, 831 F.2d 1487,
16  1494 (9th Cir. 1987). Those issues go to the voluntariness of the plea itself, fall
17  within that exception to the plea agreement's appeal waiver (Dkt. 5 ¶ 27), and
18  do not require rescinding the plea agreement. Moreover, because they were un-
19  disclosed, Zuberi's counsel had no opportunity to object, and he may not be rel-
20  egated to plain-error review for failure to object. *See* Fed. R. Crim. P. 51(b).

21  **III.    The government distorts the basis for the sentence on the Southern**
22  **District of New York obstruction count**

23       The government argues that even if Zuberi is successful he will still be
24  imprisoned longer than the appeal, because "the tax offense alone resulted in a

---

[5] It is also difficult to see how factual innocence could ever be shown in a
direct appeal after a guilty plea, given the restriction to the plea record. Yet
Rule 11(d)(2) plainly allows direct-appeal challenges to guilty pleas.

3

1    Sentencing Guideline range of 97 to 121 months imprisonment," and the sen-

2    tence on the Southern District of New York obstruction count is 84 months.

3    Opp. 6-7.  The first contention misconceives Zuberi's appeal.  The second

4    grossly distorts the basis of the sentence on the SDNY count.

5         Had he known the USAO was giving no-conviction dispositions for simi-

6    lar allegations, Zuberi would hardly have refused only a FECA plea while still

7    pleading to a tax offense under ten-year Guidelines (Opp. 6).  That is especially

8    true where his lawyer's undisclosed other client resolved both the FECA allega-

9    tions *and a related five-year criminal tax investigation* with no conviction, and

10   Chagoury was given such treatment because of his "unique assistance to the

11   U.S. government."  *See* Mot. 5-7 & nn.9, 13, 17.  Recognizing that Zuberi's

12   plea to all three counts rises or falls together, the government asserts that if

13   Zuberi prevailed on those claims, he would still face 84 months on the SDNY

14   obstruction count.  Opp. 6-7.  This utterly baseless contention ignores the basis

15   for the current sentence, the government's representations to this Court, and the

16   terms of the SDNY plea agreement.

17        Zuberi's current sentence is a single sentence of 144 months, covering

18   four counts of conviction.  As the Guidelines direct, it was derived by calculat-

19   ing the offense level for each of the California counts, selecting the highest one,

20   then adjusting it under the rules for Multiple Counts set out in U.S.S.G. Chapter

21   3, Part D.  The highest-level offense was the Tax count (level 30), which was

22   adjusted upward to level 32 under the Multiple Count rules, yielding a range of

23   121 to 151 months.  Sent. Tr. 14-16.  Considering the non-Guidelines FARA of-

24   fense and the 18 U.S.C. § 3553(a) factors, the Court sentenced Zuberi to a total

25   sentence of 144 months, Sent. Tr. 28, 31, 55, then apportioned those 144

26   months among the four counts under U.S.S.G. § 5G1.2. Sent. Tr. 55.

27        That 144-month sentence was a "single, unified sentence."  *United States*

28

DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL

*v. McClain*, 133 F.3d 1191, 1193 (9th Cir. 1998). "When a defendant is sentenced on multiple counts and one [or more] of them is later vacated on appeal, the sentencing package comes 'unbundled,'" and the district court sentences anew on the count(s) that remain. *United States v. Ruiz-Alvarez*, 211 F.3d 1181, 1185 (9th Cir. 2000); *United States v. Davis*, 854 F.3d 601, 606 (9th Cir. 2017); *McClain*, 133 F.3d at 1193.

The government's claim that the sentence on the remaining SDNY count is 84 months is a fiction. Seven years is not this Court's considered judgment about the right punishment for backdating a single check refunding a $50,000 contribution to the 2017 presidential inaugural committee—the entirety of the SDNY offense conduct.[6] Instead, that 84 months is simply an arithmetic building block, used to stack all four counts to reach the total sentence.[7] The actual portion of the current sentence that is *substantively* attributable to the SDNY obstruction count is: *not a single day.* The Court did not consider or impose any time tied to the SDNY count, because *the government told it not to*—assuring the Court the SDNY count "*makes no difference to the sentence .... It has*

---

[6] *See* Plea Hrg. Tr. 19-20, Dkt. 31; Plea Agm. ¶ 9, Dkt. 5 (both in No. 20-cr-00155-VAP).

[7] Under U.S.S.G. § 5G1.2, the default rule is to impose the total punishment on each count, concurrently. *See* §§ 5G1.2(b), (c), (d). But if such concurrent sentencing does not reach the total punishment, then the Court is to stack counts consecutively, "but only to the extent necessary to produce a combined sentence equal to the total punishment." § 5G1.2(d).

Here, the statutory maximum on each of the California counts was 60 months. *See* 22 U.S.C. § 618(a)(2) (FARA); 26 U.S.C. § 7201 (Tax Evasion); 52 U.S.C. § 30109(d)(1)(A)(i) (FECA). The Court ran those counts concurrently. Sent. Tr. 55. Then, to reach the total term of 144 months, the Court imposed 84 months on the SDNY count, to run consecutively to the 60 months. *See id.* Those seven years were allocated to the SDNY count because that statute's 20-year maximum allowed it, *see* 18 U.S.C. § 1512(c); U.S.S.G. § 5G1.2(d), not because of any connection to the SDNY offense conduct.

DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL

1  *no impact.*" Sent. Tr. 48 (emphasis added).

2      Thus, *every day* of the current 144-month sentence was imposed based on

3  the three California counts.  If Zuberi's challenges to those counts are resolved

4  favorably to him, that entire sentence will be vacated, and remanded for sen-

5  tencing anew with specific performance of the SDNY plea agreement and count

6  alone.  *See Davis*, 854 F.3d at 606.

7      That sentencing will start from scratch.[8]  The starting point would be the

8  agreed factual basis (the backdating of a single $50,000 check, *see* note 6, *su-*

9  *pra*), the "to wit" clause of the Information's statutory charging paragraph, Dkt.

10  1 ¶ 12 (same), and the agreed offense level of 12.  Dkt. 5 ¶ 12; Mot. 24.  Zuberi

11  would be entitled to specific performance of that plea agreement,[9] which would

12  yield a Zone C range allowing 5 months' imprisonment and 5 months' home

13  confinement—already shorter than the expected appeal—with room for a down-

14  ward variance to home confinement or probation.  *See* Mot. 24-25.  Though the

15  Court would also be free to vary upward, it would be sentencing only on the

16  SDNY count, not the vacated counts.  *See, e.g., Davis*, 854 F.3d at 606.  The

17  government's position that the Court would simply reimpose 84 months—a

18  525% upward variance—has no basis in reality.

19  **IV.   The deferred-prosecution agreements were *Brady* information**

20      The government's argument that DPAs in unrelated cases do not bear on

21  defendant's guilt (Opp. 7-8) misses the point.  Zuberi's argument is that they

22  bore on sentencing, because they could be used to directly rebut one of the gov-

23  ernment's central sentencing arguments, and to argue unwarranted disparity,

24  Mot. 4, and they were material to Zuberi's decisions whether to enter the plea

25

26      [8]  Neither the Probation Department, nor the parties, nor this Court have
   ever addressed that count, because the government assured the Court it was un-
27  necessary.  *See* Plea Hrg. Tr. 14-15, 28, No. 20-cr-00155-VAP (June 30, 2020).
28      [9] *See, e.g., Cuero v. Cate*, 827 F.3d 879, 890 & n.14 (9th Cir. 2016).

DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL

1   agreement and whether to plead or to withdraw the plea, *id.* at 8.

2       The government's ipse dixit that someone else's DPA "bears no rele-

3   vance ... to the punishment that the defendant should receive," and therefore

4   was not mitigating, blinks reality.  In the real world, where a prosecutor argues

5   that "[c]landestine foreign efforts to subvert U.S. democratic processes in recent

6   years have caused a significant portion of the body politic to lose faith in our

7   public institutions," and that a decade-plus sentence is therefore "necessary to

8   deter other would-be FARA and FECA offenders from compromising our elec-

9   tions and institutions with foreign cash," Dkt. 233, at 2, it would be a powerful

10  response for either the defense or the Court to ask: "If a decade in prison is nec-

11  essary to deter such individuals, how is it that your office, right now, is granting

12  deferred prosecution—no conviction or penalty at all—to foreign nationals who

13  funneled hundreds of thousands of dollars in foreign cash into the same U.S.

14  election cycles for which you are prosecuting Mr. Zuberi?"[10]

15      Here, the Court echoed the government's argument at sentencing, stating

16  that low voter turnout due to perceptions of a money-corrupted system "illus-

17  trates or demonstrates how important this case is," and shows the need "to deter

18  others who might be inclined to commit these kinds of offenses."  Sent. Tr. 27,

19  28, 29; *cf.* Dkt. 233, at 7.  This resonance suggests at least a reasonable likeli-

20  hood that the prosecution's suppression of the DPAs might have affected the

21  Court's consideration.  *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

22      Even if suppression of the DPAs did not affect the sentence, it affected

23  Zuberi's decision to plead, and not to seek withdrawal when he could have.

24

25      [10] The government's suggestion that the Deputy Chief who made this ar-

26  gument might not have known of the DPAs (Opp. 8 n.6) stretches credulity.  In
    any event, the government now makes clear that the Chief of the same section,

27  who personally oversaw the Chagoury/Arsan matter, also personally partici-

28  pated in Zuberi's case.  *See* Opp. 12-13; Lucero Decl. Ex. 1, at 2.

7

The issue is "whether there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead." Mot. 8 (quoting *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995)). Here, it is objectively unlikely that if Zuberi had known of this USAO's no-conviction dispositions, he would have pled guilty under agreed Guidelines factors calling for a decade or more in prison. At the very least, that likelihood is fairly debatable or fairly doubtful. Mot. 8.

## V.   Zuberi's counsel had an undisclosed actual conflict of interest

### A.   Zuberi's right to counsel had attached

The government argues that because Zuberi's plea negotiations preceded his formal charge, his right to counsel had not attached. Opp. 9-10. Even if that were true, Zuberi's right to counsel unquestionably attached before his plea hearing, where he was represented by the same counsel. Mot. 12 n.28. By that time he had been charged (Dkt. 1, Oct. 22, 2019), advised of his right to counsel (Dkt. 13, Oct. 30, 2019), and arraigned (Dkt. 17). In the month between his October 22 charge and his November 22 plea, he could have declined to plead. And in the fourteen months between his plea and sentencing, he could have moved to withdraw it for a fair and just reason (Fed. R. Crim. P. 11(d)(2)(B))—a standard that is "applied liberally," *Nagra*, 147 F.34d at 880, and does not require that the plea be invalid. *United States v. Ortega-Ascanio*, 376 F.3d 879, 884-85 (9th Cir. 2004). He did none of those things, because his attorney did not inform him of the DPAs, out of loyalty to his other client. *See* Mot. 10-13.

Moreover, Zuberi had a right to counsel even during the pre-charge plea negotiations, as two of the three judges in *United States v. Olson* acknowledged. Chief Judge Thomas, concurring in the judgment, noted that "there is a pre-indictment Sixth Amendment right to counsel" where, as here, the government has signified "a sufficient commitment to prosecute." 988 F.3d 1158, 1164-67

DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL

(9th Cir. 2021).  Judge Berzon, concurring in part, noted that such a commitment to prosecute "is inherent" where, as here, "the government makes a specific pre-indictment plea offer."  *See id.* at 1168.  Further, the Ninth Circuit's bright-line rule in *United States v. Hayes*, 231 F.3d 663 (9th Cir. 2000) (en banc) cannot be reconciled with the Supreme Court's recognition in *Padilla v. Kentucky*, 559 U.S. 356 (2010) and *Missouri v. Frye*, 566 U.S. 134 (2012) that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."  *Frye*, 566 U.S. at 141 (quoting *Padilla*, 559 U.S. at 373); *accord id.* at 143.  Even the *Olson* per curiam opinion recognized that "in criminal cases today, plea negotiations are 'almost always the critical point' at which a defendant's fate is sealed."  988 F.3d at 1163 (quoting *Frye*, 566 U.S. at 144).

To the extent *Olson* reluctantly held otherwise, it recognized the issue is ripe for en banc review.  *See* 988 F.3d at 1161 (per curiam); *id.* at 1168 (Thomas, C.J., concurring in the judgment); *id.* at 1170 (Berzon, J., concurring) (urging en banc review "at the first opportunity").  Zuberi maintains and will preserve this position for further review.  As the three opinions in *Olson* demonstrate, this question alone is "fairly debatable." *See* Mot. 3-4.

## B.    Zuberi's counsel had an actual conflict

While acknowledging the governing law, Opp. 10-11, the government claims there is no actual conflict because Zuberi's case is neither factually related nor adverse to Arsan's or Chagoury's.  Opp. 11-13.  But the conflict for Zuberi's lawyer, Davis, was simple:  Zuberi had an interest in knowing that, at the same time the government was insisting he plead and agree to guidelines calling for a decade or more in prison, the *same section of the same USAO* was granting no-conviction dispositions to foreign nationals also accused of funneling foreign cash in six-figure sums into U.S. political campaigns (and, in

DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL

1  Arsan's case, resolving a related five-year criminal tax investigation).  Arsan,

2  Davis's other client, had precisely the opposite interest: keeping the DPAs se-

3  cret.  After all, the prosecutors were not revealing them, and Arsan was receiv-

4  ing an enormous benefit from the prosecutors—escaping prosecution. He had a

5  powerful interest not to upset that cart.  Davis, lawyer to both Arsan and Zuberi,

6  could not faithfully serve both.  He chose to serve Arsan, and stay silent.  His

7  advocacy for Zuberi was thereby impaired.  *See* Mot. 10-12.

8      It does not matter that Arsan's and Zuberi's matters were separate, or that

9  their merits interests were not adverse.  A lawyer's representation of clients in

10  different matters creates a conflict if his duty to one impairs his representation

11  of the other.  *See, e.g., Noguera v. Davis*, 290 F. Supp. 3d 974, 1010-11 (C.D.

12  Cal. 2017) (attorney who represented son in murder case and mother in her di-

13  vorce had actual conflict, because his duty of confidentiality to mother impaired

14  any mitigation defense for the son).  Just so here: Arsan's interest was in keep-

15  ing his DPA confidential; Zuberi's interest was in knowing about it, which

16  would have informed his decision whether to plead.  That conflict is enough.

17      And that conflict—undisclosed and unwaived—impaired Davis's repre-

18  sentation.  Davis did not fully inform Zuberi of all he knew that could inform

19  Zuberi's decisions—whether to enter into the plea agreement the USAO of-

20  fered; whether to plead guilty, and to maintain that plea at a time when he could

21  withdraw it (either freely before his plea hearing, or for fair and just reason be-

22  fore sentencing).  Nor did he use his knowledge to advocate for Zuberi—either

23  in negotiating his plea agreement; refusing to agree or plead; withdrawing the

24  agreement or plea; or using the information as leverage to obtain a better deal.

25  Such "sealing his lips" was enough.  Mot. 10.[11]

26

27      [11] It does not matter that Davis sought a DPA for Zuberi, what AUSA

28  O'Brien's response was (Opp. 12), or even (*arguendo*) whether he secretly used

DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL

1   Because Davis's advocacy was compromised, prejudice is presumed.

2   Mot., at 9-11.[12]  Zuberi's right to conflict-free counsel was impaired, and with

3   it, so was the plea's voluntariness.  Mot. 11; *Brady v. United States*, 397 U.S.

4   742, 749 & n.6 (1970).  At a minimum, the question is substantial.

5   **VI.   Zuberi's plea agreement should be set aside**

6       **A.   The government induced Zuberi's plea by an illusory promise**

7       The government insists it negotiated a bespoke bargain for above-and-be-

8   yond acceptance of responsibility, and that it always fully intended to hold up

9   its end.  The government vigorously waves the prosecutor's declarations, both

10  then and now, detailing the government's account of behind-the-scenes ex-

11  changes between counsel.  Opp. 14-17 (invoking Dkt. 267 & Dkt. 377 at 30).

12      There are two problems with the government's position.  The first is that

13  all of these details of this alleged bespoke agreement are outside the plea agree-

14  ment, which provides that "there are no promises, understandings, or agree-

15  ments" outside the written agreement.  Dkt. 5 ¶ 38; *see* Mot., at 17-18.

16      The second is timing.  The government laid out its dissatisfaction with

17  Zuberi's plea agreement, and its strategy for rectifying that, in one of its first

18

19  _____

20  the fact of Chagoury's or Arsan's DPA as part of such advocacy.  Nor does

21  counsel's submission of a sentencing disparity argument based on statistical

    surveys of sentences imposed in unrelated cases matter (*id.*).  That argument

22  could not have had the force with this Court that comparison to other disposi-

23  tions being given at the *same time* by the *same office* headed by the *same Chief*

    and Deputy Chief.  Nor does it matter that the prosecutors credited others' co-

24  operation and acceptance of responsibility, while refusing to credit Zuberi's

25  (Opp. 14).  Zuberi was entitled to compare their cooperation in his own defense

    and to have a loyal and zealous advocate make that case for him.

26      [12] Thus, it does not matter if the DPAs would have changed the unwar-

27  ranted disparity ruling (Opp. 13) or the ultimate sentence (Opp. 8 n.7).  What

    matters is that Davis *did not even make these arguments*, or share his

28  knowledge that would have let Zuberi decide whether to make them.

DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL

post-plea filings with this Court.  *See* Dkt. 54 at 6-7 (Jan. 10, 2020).  That sub-mission detailed the government's demands of the defendant in the weeks fol-lowing Zuberi's October 2019 plea agreement.  *See* Mot. 15.  Only after the de-fense called out the government's trap (Dkt. 136, June 16, 2020) did the prose-cutor submit his declaration claiming this had all been well understood between counsel behind the scenes.  *See* Dkt. 267 (O'Brien Decl. dated Nov. 9, 2020).  A comparison between the written terms of the plea agreement (which does not contain the detailed understanding for extraordinary acceptance the government claims, *see* Dkt. 5 ¶ 5.c), the government's description of its position in its early, candid submission (Dkt. 54, Jan. 10, 2020), and the positions the govern-ment ultimately took (Dkt. 229, Nov. 9, 2020; *see also* Dkt. 120, May 18, 2020) reveal that from the beginning the government never intended to grant credit for acceptance.  *See* Mot. 15-19.  The government's May 2020 fig-leaf assurances ("*at this time*," Dkt. 120, quoted in Opp. 15) do not hide that intention.

### B. The government's factual position regarding obstruction was contradictory

When Zuberi filed his motion, his counsel had not yet been cleared to re-view the full record.  Accordingly, his argument regarding the government's position on email deletion was submitted on information and belief (Mot. 22-23).  On May 19, the government submitted a Classified Opposition.  *See* Dkt. 379.  Zuberi will submit his reply to that Classified Opposition under seal.

Dated: May 24, 2021

**KUTAK ROCK LLP**
By: */s/ David A. Warrington*
David A. Warrington
*Counsel for Defendant Imaad Zuberi*

DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL